AO 472 (Rev. 11/16; DC 1/19) Order of Detention

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | |
|---|---|
| United States of America ) | |
| v. ) | |
| John Harold Rogers ) | Case No.   25-cr-33 |
| ) | |
| *Defendant* ) | |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☐ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or
☒ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:
  ☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):
    ☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**
    ☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**
    ☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**
    ☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**
    ☐ **(e)** any felony that is not otherwise a crime of violence but involves:
      **(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**
  ☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**
  ☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**
  ☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

AO 472 (Rev. 11/16; DC 1/19) Order of Detention

❒ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

   ❒ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

   ❒ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

   ❒ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

   ❒ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

   ❒ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

❒ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

   ❒ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis, with the evidence or argument presented by the defendant summarized in Part III.C.

   ❒ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted for the reasons summarized in Part III.

   **OR**

   ❒ The defendant has not presented sufficient evidence to rebut the presumption. Moreover, after considering the presumption and the other factors discussed below, detention is warranted for the reasons summarized in Part III.

### Part III - Analysis and Statement of the Reasons for Detention

A. After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

   ❒ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

   ☑ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

B. In addition to any findings made on the record at the hearing, the reasons for detention include the following:

   ☑ Weight of evidence against the defendant is strong
   ☑ Subject to lengthy period of incarceration if convicted
   ❒ Prior criminal history
   ❒ Participation in criminal activity while on probation, parole, or supervision

- ❐ History of violence or use of weapons
- ❐ History of alcohol or substance abuse
- ❐ Lack of stable employment
- ❐ Lack of stable residence
- ❐ Lack of financially responsible sureties
- ❐ Lack of significant community or family ties to this district
- ☑ Significant family or other ties outside the United States
- ❐ Lack of legal status in the United States
- ❐ Subject to removal or deportation after serving any period of incarceration
- ❐ Prior failure to appear in court as ordered
- ❐ Prior attempt(s) to evade law enforcement
- ❐ Use of alias(es) or false documents
- ❐ Background information unknown or unverified
- ❐ Prior violations of probation, parole, or supervised release

**C. OTHER REASONS OR FURTHER EXPLANATION:**

The defendant's evidence/arguments for release:

See addendum.

Nature and circumstances of offense:

See addendum.

The strength of the government's evidence:

See addendum.

The defendant's history and characteristics, including criminal history:

See addendum.

The defendant's dangerousness/risk of flight:

See addendum.

## Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date:  02/05/2025 *nunc pro tunc*

United States Magistrate Judge

# *U.S. v. John Harold Rogers*
# 25-cr-33
# Detention Order Addendum

In this case, John Harold Rogers is charged by indictment with Conspiracy to Commit Economic Espionage Damage in violation of 18 U.S.C. § 1831(a)(5) and Making False Statements in violation of 18 U.S.C. § 1001. According to the indictment, Mr. Rogers is accused of "conspir[ing] with individuals located in the People's Republic of China [("PRC")]… to work to benefit the PRC by carrying away, sending, mailing, and obtaining—all without authorization—trade secrets of the Federal Reserve Board of Governors and the Federal Reserve Open Market Committee in the United States, intending or knowing that the theft would benefit the PRC, agents of the PRC, and PRC instrumentalities and their agents." The indictment separately charges Mr. Rogers with making false statements to the Federal Reserve Board Office of Inspector General ("OIG").

The Government sought Mr. Rogers' pretrial detention under 18 U.S.C. § 3142(f)(2)(A) (serious risk of flight). After careful consideration of the parties' memoranda in support of and in opposition to detention, the Government's proffer, and the arguments of counsel during a hearing on February 5, 2025, the Court issued its ruling from the bench at the conclusion of the hearing.

This addendum supplements the Court's oral ruling and the rationale provided at that time.

\*   \*   \*

The Bail Reform Act creates a presumption that an individual should be released pending trial unless the court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e); *United States v. Salerno*, 481 U.S. 739, 755 (1987).

In cases involving certain offenses, the Bail Reform Act imposes a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance and safety of the community. In this case, the Government does not argue that any presumption applies, and the Court does not independently find that to be the case.

As a result, the government's ultimate burden is to prove that no condition or combination of conditions of release can assure that the defendant will appear and to assure the safety of the community. In the words of the D.C. Circuit, a more straightforward way of describing this inquiry in "common parlance" is whether "the defendant is a flight risk or a danger to the community." *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021).

Here, the Government's memorandum disclaims any argument to detain Mr. Rogers based on dangerousness—and counsel reaffirmed this during the hearing—so the Court's analysis focuses on risk of flight. For those purposes, the Government's burden is to show by a preponderance of the evidence that Mr. Rogers poses a risk of flight that cannot be reasonably mitigated by conditions of release. *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019).

In determining whether the government has met its burden, the statute requires the Court to consider certain factors outlined in Section 3142(g), namely: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

In applying these factors to the particular facts of this case, the Court concludes that the Government met its burden to show that no condition or combination of conditions will reasonably assure Mr. Rogers' further appearance given his risk of flight.

The Court explains its reasoning as to each of the relevant factors in the sections that follow.

**Nature and Circumstances of the Offense**

To start, the Court finds the nature and circumstances of the offenses here to be serious.

The lead charge in the indictment is one for economic espionage under 18 U.S.C. § 1831(a)(5). That charge criminalizes, in broad strokes, the intentional or knowing dissemination of trade secrets to a foreign government, foreign instrumentality, or foreign agent. If found guilty of that charge, Mr. Rogers faces a term of imprisonment of up to fifteen (15) years. Given Mr. Rogers' current age (63), this means that if convicted, he could potentially spend the rest of his life in prison. Thus, even in general terms, the charged offenses here are serious.

And when the Court considers the specific circumstances surrounding the charged offenses here, those circumstances only amplify the seriousness of the offense.

For one thing, Mr. Rogers is not accused of conspiring with just any foreign actors; rather, as the Government points out, the charges here involve the People's Republic of China—a foreign nation that our former FBI Director, Christopher Wray, has publicly described as "the greatest long-term threat to our economic security" and "national security"—specifically, in light of the "counterintelligence and economic espionage threat from China." (ECF No. 11 at 4.)[1] Further, the two co-conspirators are described in the indictment as being involved in the "intelligence and security" apparatus of China. This component of the charge heightens its seriousness.

Moreover, unlike other economic espionage cases involving theft from corporate entities, Mr. Rogers is charged with passing inside information and trade secrets from the Federal Reserve to foreign actors. He was a government insider, as a Senior Advisor at the Federal Reserve, entrusted with protecting sensitive and confidential economic information underlying U.S. policy, and he is charged with abusing that trust. As the Government correctly notes, Federal Reserve policies and announcements literally move markets. And Mr. Rogers is charged with assisting actors associated with a foreign country that former FBI Director Wray described as the "greatest long-term threat to our economic security."

Finally, Mr. Rogers is accused of attempting to perpetuate his unlawful conduct by means of deceit, including by making false statements to OIG officials when questioned about his activity. If true,

---

[1] Christopher Wray, Director, Fed. Bureau of Investigation, Remarks at the Hudson Institute, Video Event: China's Attempt to Influence U.S. Institutions (July 7, 2020).

those allegations render the charged conduct here even more serious. More, after the OIG interview, the indictment at least raises a question as to whether Mr. Rogers persisted with his activity, by setting up additional "classes" with the co-conspirators and requesting additional materials from representatives at the Federal Reserve. In other words, even after he knew—or at least should have known—about the severity and potential criminality associated with his activity, Mr. Rogers is alleged to have carried on with it all the same.

For at least these reasons, the Court agrees that the nature and circumstances of the offenses charged are serious, so this factor points in favor of detention.

**Weight of the Evidence**

This Court believes the weight of the evidence likewise supports detention.

Although the question of Mr. Rogers' ultimate innocence or guilt will be up to a jury to decide—not this Court, and certainly not at this early posture—the Court's assessment of the evidence is still relevant to its pretrial detention assessment. This is so because "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that Defendant will flee to avoid future proceedings … if the government's allegations later prove to be true." *United States v. Blackson*, 2023 WL 1778194, at *10 (D.D.C. Feb. 6, 2023), *aff'd*, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023) (per curiam).

According to the Government, the bulk of its evidence is derived from Mr. Rogers' own communications with the co-conspirators identified in the indictment (and others), including through WeChat, his Federal Reserve email account, and his personal email account.

As the Government proffers, the Chinese co-conspirators would send Mr. Rogers questions about U.S. economic policy, including specifically as it would bear on China, such as: "What is the Fed's expectation for the future trend of the dollar? What measures is the Fed planning to achieve this expectation? Is there a specific plan and timetable?" Other examples included: "How does the Fed evaluate the trade war with China proposed by Trump? Will the Fed adjust the monetary policy to cooperate with the trade war? What specific measures will the Fed take?" Mr. Rogers would respond with information from the Federal Reserve, whether in email or more commonly through in-person discussions in China that he characterized as "classes."

According to the Government, Mr. Rogers used the guise of "teaching" and "classes" to try to conceal his conduct. At one point, he wrote to one of the co-conspirators: "But there has to be a lot more done to make this legitimate in the eyes of the Fed. Remember, it has to be teaching and not consulting. I am only allowed to teach." He then proposed a series of steps, such as having a course title, having a list of students, "[e]ven if it is only 2 or 3," producing a syllabus, having exams and homework, and giving a grade. Mr. Rogers wrote: "I know this sounds like a lot. But think about what would happen if I was asked to produce information on any of these . . . items and I had no answer. That would cause me a lot of trouble!" In response to this point, in particular, the defense says, essentially, "So what?" They retort that Mr. Rogers was allowed to teach, and these comments just reflect his awareness of ensuring that his activity was truly teaching. Maybe so. But at least at this juncture, considered alongside the other information before it, the Court

3

understands the Government's point. And relatedly, the Government points to messages from Mr. Rogers where he refers to "class" and "grading" in quotation marks, implying that Mr. Rogers knew full well that he was not actually teaching a class or grading anything.

The Government points to at least a few instances when Mr. Rogers would reach out to Federal Reserve colleagues for information, and then forward that same information to his personal email and then along to one of the co-conspirators in China. At least some of this information was designated as sensitive and confidential, according to markings in the transmittal emails or the documents themselves—including, in at least one instance, a briefing book for one of Federal Reserve Board's Governors Designate. On that occasion, in particular, the Federal Reserve colleague from whom Mr. Rogers requested the information asked Mr. Rogers to remove his personal email from the chain; Mr. Rogers did so, but when he later received the materials on his Federal Reserve email account, Mr. Rogers forwarded to his personal account anyway.

As a final example, the Government focuses on Mr. Rogers' conduct surrounding a June 2019 announcement from the FOMC regarding the federal funds rate. When the announcement became public on June 19, 2019, the Government proffers that Mr. Rogers copied it verbatim and sent it, via encrypted message, to one of the co-conspirators, who responded: "Same as you predicted! But there's some slight changes in the statement, like deleting the word 'patient[.]" Mr. Rogers responded, "Exactly!!!!" On this point, the indictment describes a lead-up to this exchange. Less than a week prior, Mr. Rogers printed two documents—alleged to be trade secrets—using his Federal Reserve account; both are alleged to have included "information about the FOMC's thinking in the leadup to its upcoming public announcement on June 19, 2019." The next day, Mr. Rogers flew to Beijing, where he met with one of the co-conspirators—as evidenced in part by Mr. Rogers sending a photograph of himself with that co-conspirator and others in a hotel room. Putting this all together, then, the Government contends that Mr. Rogers shared advanced details about the Federal Reserve's announcement with the co-conspirators in China.

All told, the Court agrees that the evidence here appears relatively strong, at least as proffered by the Government. Mr. Rogers may yet present colorable defenses to the charges—including, as counsel argued at the hearing, that much or all of the information he is accused of accessing and sharing does not qualify as "trade secrets."

But at least at this stage, the Court concludes this factor weighs in favor of detention.

**History and Characteristics of the Defendant**

Turning to Mr. Rogers' history and characteristics, this factor is slightly less decisive.

Starting with the points in Mr. Rogers' favor, he has no criminal history. Moreover, he has meaningful ties to the United States and the greater DC area, including family. The defense memo stresses that he has a 6-year-old daughter for whom he serves as the primary caregiver, including because her mother—his current wife—lives mostly in China. And he has four grown children that would arguably provide some stability here.

But there are considerations that cut the other way.

For one thing, Mr. Rogers has spent substantial time in China over the last several years, including multiple teaching trips for extended periods. For practical purposes, he has essentially lived part-time in China for extended periods of time in recent years. Moreover, his wife, as noted, is a Chinese national (they were married in Hong Kong). And Mr. Rogers has substantial assets in Chinese bank accounts—at least $150,000 by his counsel's own admission, and the Government posits that the amount may be greater.

The Government also points out that several years ago, Mr. Rogers sold his home and moved into a smaller, 1-bedroom apartment in Virginia; as the Government paints it, this reflects preparatory steps to leave the United States. In response, the defense proffers that Mr. Rogers recently put a *bona fide* offer on a single-family home in Virginia, which shows otherwise. The Court ultimately treats that point as a wash. But the Government did recover approximately $50,000 in cash in Mr. Rogers' apartment around the time of the arrest. Both sides seemed to agree that Mr. Rogers' wife claimed ownership over the cash, not Mr. Rogers. Even still, this is an unusually large amount of cash to keep on hand, and Mr. Rogers would have had access to it—whether through his wife or otherwise—which raises concerns about risk of flight, as detailed more below.

On balance, this factor is at best in equipoise, but it certainly does not strongly favor release.

**Risk of Dangerousness/Flight**

As noted, the Government does not ask the Court to detain Mr. Rogers on dangerousness grounds, but rather strictly on risk-of-flight grounds. In these sorts of cases, the dangerousness factor "has little bearing." *United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013).

The Court instead uses this section to recount the points that demonstrate a risk of flight.

First, Mr. Rogers' connections to China are substantial, as noted already. He essentially lives in China for several months every year, he has an extended travel history to China, his current wife is a Chinese national who he married in Hong Kong, and he holds meaningful monetary assets in China—at least $150,000 in Chinese accounts. Indeed, Mr. Rogers was scheduled to fly to China on February 3, 2025, mere days after his arrest—and the parties advised during the hearing that his young daughter had planned to travel with him.

Second, Mr. Rogers' co-conspirators are alleged to be Chinese nationals in the "intelligence and security apparatus" of China, meaning that they would be incentivized and have the possible resources to assist with any attempt to flee.

Third, the United States has no extradition treaty with China.

Fourth, the weight of the evidence here is reasonably strong and the potential punishment that Mr. Rogers faces is weighty—up to fifteen (15) years incarceration, meaning that he could well spend the rest of his life in prison if convicted. Those factors combined provide an especially strong incentive to flee. *See, e.g., Hong Vo*, 978 F. Supp. 2d at 43 (reasoning that "the serious nature" of the offenses charged and "the punishments Congress has provided for those offenses" provided the defendant—who had substantial ties to a country with which the United States has no extradition treaty—"a substantial incentive to flee the United States.").

Finally, although defense counsel proposes certain conditions to mitigate risk—including surrender of his passport, GPS monitoring, home detention, and others—these conditions will not sufficiently mitigate against the flight risk presented. *See, e.g.*, *United States v. Angwang*, 2020 WL 5947187, at *5 (E.D.N.Y. Oct. 7, 2020) ("Electronic monitoring can alert the authorities to flight, but not prevent it."); *United States v. Benatar*, 2002 WL 31410262, at *3 (E.D.N.Y. Oct. 10, 2002) ("[H]ome detention with electronic monitoring does not prevent flight; at best, it limits a fleeing defendant's head start."); *United States v. Abdulkadir*, No. 2024 WL 342698, at *2 (N.D. Ohio Jan. 29, 2024) ("The fact that [the defendant] has no passport does not automatically alleviate the risk of flight."); *United States v. Jinwright*, 2010 WL 2926084, at *5 (W.D.N.C. July 23, 2010) (holding that voluntary surrender of passport did not overcome presumption that convicted defendant posed a flight risk given his frequent international travel in recent years and access to financial resources). Moreover, although the defense suggested the use of a third-party custodian, no specifics were provided to the Court or vetted by Pretrial Services in advance. Overall, given Mr. Rogers' substantial connections to and resources within China—a country with no extradition treaty—and the fact the Government has credible reasons to believe his contacts in China are involved with the "intelligence" apparatus, the Court finds believes that the proposed conditions are insufficient on the particular facts of this case.

\*   \*   \*

For all these reasons, the Court concludes that the Government met its burden to establish by a *preponderance of the evidence* that Mr. Rogers poses a risk of flight, and so the Court **GRANTS** the Government's motion and will order Mr. Rogers detained pending trial.