**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 25-cr-033 (DLF)** |
| **JOHN HAROLD ROGERS,** | |
| **Defendant.** | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### I. AS APPLIED TO THE FEDERAL RESERVE, THE DEFINITION OF "TRADE SECRET" UNDER 18 U.S.C. § 1839(3) IS VOID FOR VAGUENESS.

In *Johnson v. United States*, 576 U.S. 591 (2015), Justice Scalia wrote for the Court as it held that the portion of a definition of a "violent felony" under the Armed Career Criminal Act of 1984 that included any felony that "involves conduct that presents a serious potential risk of physical injury to another" violated Due Process because it was void for vagueness. The Court reasoned in part that "[The residual clause leaves grave uncertainty about how to estimate the risk posed by a crime. It ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id*. at 597. The application of 18 U.S.C. §1839(3) as applied to the Federal Reserve also leaves great uncertainty as to what is a trade secret. As Professor Swanson states in his declaration (paragraph 12): "Based on my experience working with Federal Reserve entities, my opinion is that Federal Reserve researchers would not have had fair notice prior to the filing of this case as to what qualifies as a trade secret. Other than the "Class I, Class II, Class III, unclassified" distinction, there is no additional information that would let a Federal Reserve employee know whether some information was 'economically valuable' or not."

Justice Marshall explained the rationale for the void for vagueness doctrine in his opinion for the Court in *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972) (footnotes omitted):

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to "'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked."

Attached to this motion is a declaration from Dr. Eric T. Swanson, a professor in the Economics Department at the University of California, Irvine, but more importantly a former Federal Reserve advisor and economist with a working knowledge about what the Federal Reserve does and how it does it, including the Federal Reserve's classification system:

> 8. The Federal Reserve is not a private business and does not really derive value from keeping things secret. The only reason the Federal Reserve keeps economic things secret is to 1) protect the confidentiality of internal deliberations and opinions from public and political scrutiny and influence, and 2) to avoid moving financial markets unnecessarily.
>
> 9. The Federal Reserve also keeps bank regulatory information secret to protect the identities and potential problems of banks from being revealed to their counterparties and customers, which could be extremely destructive to the bank if it were revealed. But bank regulation isn't an issue in this case.
>
> 10. The Federal Reserve does not derive any independent economic/monetary value from Class II information being kept secret. The reason why the Federal Reserve keeps Class II information secret is the two reasons I gave in paragraph 8, above, which are not economic/monetary reasons. Put differently, if the Federal Reserve were to publish all of its Class II information today, the Federal

> Reserve would continue to make profits (or losses in some years) at exactly the same rate as it always does. The Federal Reserve's profits from managing the money supply and holding its portfolio of securities is independent of whether that Class II information is publicly known or not.
>
> 11. According to the definition in 18 U.S.C. §1839(3), I think it's hard to call almost anything that is Class II a "trade secret" of the Federal Reserve.
>
> 12. Based on my experience working with Federal Reserve entities, my opinion is that Federal Reserve researchers would not have had fair notice prior to the filing of this case as to what qualifies as a trade secret. Other than the "Class I, Class II, Class III, and unclassified" distinction, there is no additional information that would let a Federal Reserve employee know whether some information was "economically valuable" or not.
>
> 13. Based on my experience working with Federal Reserve entities, I have found that no one at the Federal Reserve talks about "trade secrets." I have never heard anyone at the Federal Reserve ever refer to any information at the Federal Reserve in those terms. The only terms people at the Federal Reserve use are "Class I", "Class II', "Class III." In some rare cases, I've heard people talk about "Secret" or "Top Secret" material, which is material that comes from intelligence agencies like the CIA, and those intelligence agencies use those classifications. But the Federal Reserve does not use the "Secret" or "Top Secret" classifications for itself and Federal Reserve staff do not ever refer to "trade secrets" in my experience.

Dr. Swanson has explained a Federal Reserve researcher like Dr. Rogers would not have had fair notice as to whether any information at the Federal Reserve was a trade secret. Prosecuting him in view of the vagueness of the term "trade secret" as applied to the Federal Reserve implicates the three values identified by Justice Marshall in *Grayned*, *supra*: trapping the innocent, arbitrary or discriminatory enforcement, and freedom of speech and association.

First, Dr. Rogers had no opportunity to know what qualified as a trade secret. A prosecution risks trapping an innocent man. Second, this prosecution of a Federal Reserve researcher for violating a statute that has not been used against other Federal Reserve employees smacks of arbitrary and discriminatory enforcement. Third, the alleged disclosures of trade secrets arose in the context of oral and written communications and of associations that are presumptively protected by the First Amendment.

## II. DR. ROGERS COULD NOT CONSPIRE TO COMMUNICATE FEDERAL RESERVE TRADE SECRETS, BECAUSE NEITHER DR. ROGERS NOR ANY FEDERAL RESERVE RESEARCHER HAD REASON TO BELIEVE THAT THE FEDERAL RESERVE CREATES TRADE SECRETS.

Count One of the Indictment (Dkt. 1) alleges that the Defendant conspired to communicate trade secrets of the Federal Reserve to Chinese agents under 18 U.S.C. § 1831(a)(5). The critical inquiry is "whether the defendant entered into an agreement to steal, copy, or receive information that he *believed* to be a trade secret . . . ." *U.S. v. Wen Chyu Liu,* 716 F.3d 159, 170 (5th Cir. 2013) (emphasis in original) (discussing conspiracy under 18 U.S.C. § 1832); *see U.S. v. Zheng*, 113 F.4th 280, 298 (2d Cir. 2024) (interchangeably examining conspiracy under 18 U.S.C. § 1831 with § 1832). In *U.S. v. Hsu*, 155 F.3d 189 (3d Cir. 1998), for example, the defendants communicated with an undercover FBI agent for the express purpose of discussing the transfer of technology and to negotiate a specific price for the acquisition of Bristol-Myers's trade secrets. *U.S. v. Hsu*, 115 F.3d 189, 192 (3d Cir. 1998); *e.g.*, *U.S. v. Yang,* 281 F.3d 534, 543-44 (6th Cir. 2002) ("The Yangs believed that the information Lee was providing was trade secrets belonging to Avery.").

While the case law suggests that legal impossibility is not a defense to conspiracy, the issue at bar is whether Dr. Rogers believed he was acquiring trade secrets from the Federal Reserve not whether Dr. Rogers actually could. *See e.g.*, *U.S. v. Williams*, 553 U.S. 285, 300 (2008) ("As with other inchoate crimes—attempt and conspiracy, for example—impossibility of completing the crime

because the facts were not as the defendant believed is not a defense.") As an over-twenty year veteran at the Federal Reserve, Dr. Rogers and other Federal Reserve researchers had no reason to believe that they had access to "trade secrets." As Dr. Swanson has explained, in his opinion the Federal Reserve does not create trade secret information, generally, particularly at the Class II level for which Dr. Rogers had access, specifically. Thus, Dr. Rogers had no reason to believe that any of his communications involved trade secrets. Dr. Rogers could not conspire to commit economic espionage if he could not manifest a belief that the information could be a trade secret.

The government has not charged Dr. Rogers with any other crime relating to an alleged disclosure or conspiracy to do so of classified information, for example. Consequently, the government cannot overcome the factual reality that the Federal Reserve, at the very least at the Class II level, does not create any trade secrets, and Dr. Rogers did not have access nor did he access any higher information, e.g., Class I material.

Respectfully submitted,

/s/ Stephen A. Saltzburg
Stephen A. Saltzburg (D.C. Bar No. 156844)
2000 H Street, NW
Washington, DC 20052
Tel.: (202) 994-7089
Fax: (202) 994-9811
Email: sasaltz@law.gwu.edu

/s/ Jonathan K. Gitlen
Jonathan K. Gitlen (D.C. Bar No. 990918)
Law Office of Jonathan K. Gitlen PLLC
900 19th Street, NW, Suite 500
Washington, DC 20006
Tel.: (202) 568-5788
Fax: (202) 301-8556

Email: jonathan.gitlen@jgitlenlaw.com

*Counsel for Defendant*