UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No.:  25-cr-00033 (DLF) |
| v. : | |
| : | |
| JOHN HAROLD ROGERS, : | |
| : | |
| Defendant. : | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The United States respectfully submits this memorandum in opposition to the defendant's motion to dismiss Count One of the Indictment on grounds that (1) the definition of "trade secret" under 18 U.S.C. § 1839(3) is void for vagueness; and (2) the defendant could not conspire to communicate Federal Reserve trade secrets because neither the defendant nor any Federal Reserve researcher had reason to believe that the Federal Reserve creates trade secrets.  (Defendant's Motion to Dismiss ¶ 1-2, *available at* ECF 32).  The defendant bears the burden on a vagueness challenge, and it is a "stringent standard."  *United States v. Sandlin*, 575 F. Supp. 3d 16, 30 (D.D.C. 2021).  To prevail, the defense must show that the statute "specif[ies] no standard of conduct . . . at all."  *Id.* (quoting *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017)).

Here, there is no vagueness problem.  The statutory definition of a "trade secret" is well articulated, and challenges to the statute on vagueness grounds have consistently failed.  *See, e.g.*, *United States v. Howley*, 707 F.3d 575, 581 (6th Cir. 2013)*; United States v. Krumrei,* 258 F.3d 535, 539 (6th Cir. 2001); *United States v. Ward,* 2013 WL 12203098, at *5 (E.D. Wash. Jan. 18, 2013); *United States v. Chung*, 2009 WL 10680757, at *3 (C.D. Cal. Apr. 21, 2009); *United States v. Case,* 2008 WL 1932403, at *7 (S.D. Miss. Apr. 25, 2008), *rev'd in part on other gnds,* 309 Fed. Appx. 883 (5th Cir. 2009); *United States v. Genovese,* 409 F. Supp. 2d 253, 257-258 (S.D.N.Y.

1

2005); *United States v. Hsu,* 40 F. Supp. 2d 623, 627-631 (E.D. Pa. 1999); *see also United States v. Yang,* 281 F.3d 534, 544 n. 2 (6th Cir. 2002) (addressing vagueness issue in a footnote). In its motion, the defense fails to raise any argument that warrants a different outcome. The motion and supporting memorandum consist of conclusory statements and assertions of fact that contravene the allegations in the Indictment. On a motion to dismiss, mere factual assertions made by the defense that contradict the allegations in an indictment should not be considered. *See Genovese*, 409 F. Supp. 2d at 255-256 (S.D.N.Y. 2005) (rejecting challenges to the Economic Espionage Act for vagueness and overbreadth). Stripped of its factual assertions, the defense's motion rests wholly on unsupported conclusory statements, and such conclusory statements are insufficient to meet the "stringent standard" to prevail on a vagueness challenge. *Accord Sandlin*, 575 F. Supp. 3d at 30. For these reasons, and as explained more fully below, the motion to dismiss must be denied.

## BACKGROUND

The defendant is charged with one count of Conspiracy to Commit Economic Espionage, in violation of 18 U.S.C. § 1831(a)(5), and one count of False Statements, in violation of 18 U.S.C. § 1001. As alleged in the Indictment, the defendant is a U.S. citizen with a Ph.D. in economics who worked at the Federal Reserve Board of Governors (the "FRB") from 2010 to 2021 as a Senior Advisor in the Division of International Finance. Indictment ¶ 8. The defendant "exploited his employment with the FRB by soliciting or otherwise seeking trade-secret information regarding proprietary" information. *Id.* ¶ 9. He then conveyed such "sensitive, trade-secret information belonging to the FRB and the FOMC [Federal Reserve Open Market Committee]" to his coconspirators, who worked for the intelligence and security apparatus of China. *Id.*

2

As alleged in the Indictment, the defendant created a false cover story that he was teaching "classes" to Ph.D. students in China when, in fact, these were ad-hoc meetings in hotel rooms where he would convey trade secrets to his coconspirators. *Id.* ¶ 16(f)-(g). The defendant further attempted to conceal his illegal conduct by communicating with coconspirators using encrypted messaging applications and making false statements to federal authorities. *Id.* ¶ 16(b) & (k). He also requested that the coconspirators make their meetings with him appear more like classes so the meetings would appear "legitimate in the eyes of the Fed." *Id.* ¶ 17(o) (quoting the defendant). The defendant even put the word "class" in quotes when he communicated with his coconspirators, further evidencing that the ad-hoc meetings were a ruse to conceal the defendant's illegal conduct. *Id.* ¶ 17(hh).

The defendant knew that the information he was sharing was proprietary and could be economically valuable. For example, the Indictment alleges that the defendant asked a colleague for a specific document—a "desi-gov book"—telling the colleague, "Obviously, that's not something I could or would share." *Id.* ¶ 17(y). This document is one of the Trade Secrets the defendant is alleged to have misappropriated as part of the charged conspiracy. *Id.* ¶ 10(a). The first inside-page of the document—i.e., the page immediately after the cover—stated in large-scale font, "Nonpublic Information. FOR YOUR USE ONLY. DO NOT DISSEMINATE." *Id.* ¶ 17(z). The Indictment also alleges that the defendant "received regular training regarding the sensitivity and disclosure" of confidential FRB and FOMC information, thereby demonstrating his knowledge that the information he sought was sensitive and had economic value. *Id.* ¶ 8. This alone is sufficient to survive a motion to dismiss.

However, even if the court were to consider evidence extrinsic to the Indictment at this stage (which it should not), the evidence would show that the FRB's policy statement on use of

3

the Board's IT resources clearly states that "users may not use [FRB's] IT resources to . . . disseminate or otherwise disclose nonpublic Board information (including **trade secrets** . . . .)." Attachment A at 6 (emphasis added). Moreover, as part of the defendant's trainings and experience, he knew that "[t]he FOMC used a tiered system for classifying confidential information depending on its sensitivity"—including classification labels "Class I," "Class II" and "Class III." Indictment ¶ 6. The FRB's Program for Security of FOMC information states, "Access to Class II information . . . must be treated at least as securely as material classified by the [FRB] as 'Restricted (FR).'" Attachment B at 1. "Restricted (FR)" information is defined in pertinent part as "information that, if disclosed to or modified by unauthorized individuals, might result in **the risk of significant monetary loss**, significant productivity loss, or significant embarrassment to the Federal Reserve System." 12 C.F.R. § 268.205 (effective from Apr. 2, 2008 to July 10, 2019).

One of the reasons that the Federal Reserve restricts dissemination of nonpublic information is that release of such information could unjustly enrich the recipient while undermining the work of the FRB. In training materials for FRB employees, the question is posed, "Why would someone want access to confidential FOMC information?" The answer given is that, "Inside FOMC info could make someone a lot of money, even if they had it one minute before the rest of the public." Attachment C. The same slide of the same training material lists three reasons why it is "critical to safeguard FOMC information," including to "[p]rotect the deliberative process as staff and policymakers work on monetary policy." *Id.*

## STATUTORY TEXT

The Economic Espionage Act makes it a crime to conspire to convey a "trade secret" to a foreign government, instrumentality, or foreign agent. 18 U.S.C. § 1831. The term "trade secret" is defined at 18 U.S.C. § 1839(a) as follows:

> the term "trade secret" means **all forms and types** of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner thereof has taken **reasonable measures** to keep such information secret; and
>
> (B) **the information derives independent economic value**, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(a) (emphasis added).

## LEGAL STANDARD FOR MOTION TO DISMISS

"A criminal defendant 'may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits.'" *United States v. Harmon*, 2021 WL 1518344, at *3 (D.D.C. Apr. 16, 2021) (quoting Fed. R. Crim. P. 12(b)(1)). "Such pretrial motion may challenge 'a defect in the indictment or information' if 'the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits.'" *Id.* (quoting Fed. R. Crim. P. 12(b)(3)(B)). "Although a court's supervisory powers provide the authority to dismiss an indictment, 'dismissal is granted only in unusual circumstances.'" *Id.* (quoting *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015)).

5

When evaluating a motion to dismiss, a court must accept allegations in an indictment as true and reject contrary assertions of fact made by the defense. *See Genovese*, 409 F. Supp. 2d at 255-256) (rejecting challenges to the Economic Espionage Act for vagueness and overbreadth); *see also Hoskins*, 73 F. Supp. 3d at 166 (denying motion to dismiss as premature until an evidentiary record is developed at trial); *United States v. Sargent*, 2022 WL 1124817, at *2 (D.D.C. Apr. 14, 2022) (stating, in the context of a vagueness and other challenges, that "[w]hen considering a motion to dismiss, the court is limited to reviewing the face of the indictment" and that "[t]he indictment must be viewed as a whole and the allegations must be accepted as true at this stage of the proceedings" (internal quotation marks and citations omitted)).

A.    **Void for Vagueness Standard**

A defendant bears the burden of establishing that the statute is vague as applied to his particular case, not merely that the statute could be construed as vague in some hypothetical situation. *See Krumrei,* 258 F.3d at 537 (citing *United States v. Avant,* 907 F.2d 623, 625 (6th Cir. 1990)). "A law is vague when 'it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement.'" *Sandlin*, 575 F. Supp. 3d at 30 (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)). "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* (quoting *United States v. Lanier*, 520 U.S. 259, 267 (1997)). "This is a stringent standard, as a void-for-vagueness challenge is unavailing when posed to a statute that merely requires a person to conform his conduct to an imprecise but comprehensible normative standard, whose satisfaction may vary depending upon whom you ask." *Id.* (quoting *Harmon*, 2021 WL 1518344 at *4 (internal quotation remarks removed)). "Rather, the statute must 'specif[y] no standard of conduct . . . at all.'" *Id.* (quoting *Bronstein*, 849 F.3d at

6

1107). Applying a statute to "new—even unprecedented—facts 'does not, standing alone, render a statutory application so novel as to be unconstitutional for vagueness.'" *United States v. Nordean*, 579 F. Supp. 3d 28, 47 (D.D.C. 2021) (quoting *Harmon*, 2021 WL 1518344 at *8).

### B.     Vagueness Challenges to the Economic Espionage Act

There have been previous challenges to the Economic Espionage Act on vagueness grounds. All have failed. *See, e.g.*, *Howley*, 707 F.3d at 581*; Krumrei,* 258 F.3d at 539; *Ward,* 2013 WL 12203098 at *5; *Chung*, 2009 WL 10680757 at *3; *Case,* 2008 WL 1932403 at *7; *Genovese,* 409 F. Supp. 2d at 257-258; *Hsu,* 40 F. Supp. 2d at 627-631; *see also Yang,* 281 F.3d at 544 n. 2. As the Sixth Circuit has concluded, "[t]he statute clearly proscribes the attempt or conspiracy to steal trade secrets. We have every confidence that ordinary people seeking to steal information that they believe is a trade secret would understand that their conduct is proscribed by the statute." *Yang,* 281 F.3d at 544 n. 2.

Contrary to the defense's assertion, *see* Defense Memorandum in Support of its Motion to Dismiss at 1, *available at* ECF 32-1 (hereinafter "Def. Mem."), unlike the Armed Career Criminal Act, there is no pattern of "repeated attempts and repeated failures to craft a principled and objective standard" under the Economic Espionage Act. *Johnson*, 576 U.S. at 598. Indeed, the Economic Espionage Act has been applied repeatedly and successfully, and every vagueness challenge to date has failed.

### APPLICATION

Here, the statutory definition of a "trade secret" is not void for vagueness as applied to the Federal Reserve. Rather, the statute provides fair notice to would-be offenders, providing them with a well-established, multi-prong definition of what constitutes a trade secret. A trade secret means "**all forms and types** of financial, business, scientific, technical, economic, or engineering

7

information . . . if—(A) the owner thereof has taken **reasonable measures** to keep such information secret; and (B) **the information derives independent economic value**, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(a) (emphasis added).

### A. Economic Value

The defense circles around the question of whether the alleged trade secrets "derive[ ] independent economic value . . . from not being generally known . . . ," arguing that, in fact, they do not. To make this argument, the defense relies on an affidavit from Dr. Eric Swanson. Dr. Swanson's statements are, in significant part, assertions of fact that the court must disregard on a pretrial motion to dismiss. *See Genovese*, 409 F. Supp. 2d at 255-256 ("Contrary assertions of fact by the defendant[ ] will not be considered [on a motion to dismiss]."); *see also Sargent*, 2022 WL 1124817 at *2 ("the court is limited to reviewing the face of the indictment" and that "[t]he indictment must be viewed as a whole and the allegations must be accepted as true at this stage of the proceedings" (internal quotation marks and citations omitted)). The Indictment alleges that the defendant conspired to steal and share trade secrets with his coconspirators in China. Indictment ¶ 1. At this stage in the proceedings, that is sufficient and the defendant's void for vagueness challenge should be rejected.

However, even if the Court were to consider Dr. Swanson's affidavit, the defense motion still fails because the affidavit does not actually identify unconstitutional vagueness in the statute; it simply raises a factual dispute. Dr. Swanson opines that "The Federal Reserve is not a private business and does not really derive value from keeping things secret," and that "The Federal Reserve does not derive any independent economic/monetary value from Class II information

being kept secret." Def. Mem. at 3 (quoting ¶¶ 8 & 10 of the Swanson Decl.). The affidavit misses the mark for two reasons.

First, the statutory definition of what constitutes a trade secret does not depend on whether the *Federal Reserve* derives economic value. Rather, the statutory definition refers to whether the trade secret *information* derives independent economic value from "not being generally known . . . ." 18 U.S.C. § 1839(a)(B). Thus, Dr. Swanson's focus on whether the Federal Reserve "would continue to make profits," Swanson Decl. ¶ 10, is inapposite. The statutory standard depends on whether the purported trade secret—that is, the information itself—derives actual or potential independent economic value from being secret. Based on the Indictment's allegations, the obvious answer is, yes, it does. The Indictment alleges that the defendant's conspiracy involved specific trade secrets. Indictment ¶ 10. Each of these trade secrets meets the statutory definition of being a trade secret – i.e., it derives independent economic value from not being generally known. Further, the Indictment alleges that some of the information that the defendant conspired to steal is confidential and has economic value, specifically in relation to China, stating that, "Having unauthorized access to [Federal Reserve] confidential information could allow China to manipulate the U.S. market, in a manner similar to insider training," and "Gaining advance knowledge of U.S. economic policy, including advance knowledge of changes to the federal fund rate, could provide China with an advantage when selling or buying U.S. bonds or securities." *Id.* ¶ 7. Though it should not be considered at this stage in the proceedings, evidence at trial will prove the truth of these allegations. Indeed, the Federal Reserve's own training materials indicate as much. *See, e.g.*, Attachment C (Federal Reserve information "could make someone a lot of money, even if they had it one minute before the rest of the public"). The defense motion and Dr.

Swanson's affidavit fail to engage with the actual statutory text or the allegations in the Indictment, and the motion should be denied accordingly.

Dr. Swanson's affidavit also misses the mark because, rather than demonstrate the absence of a comprehensible standard under the Due Process Clause, the affidavit raises a factual dispute about whether the standard is met, which is an issue that should be left for the factfinder at trial to determine. *Accord United States v. Sussmann*, 598 F. Supp. 3d 1, 4 (D.D.C. 2022). For example, the affidavit asserts that the Federal Reserve "does not really derive value from keeping things secret," Def. Mem. at 2, and that "if the Federal Reserve were to publish all of its Class II information today, the Federal Reserve would continue to make profits . . . ," *Id.* at 2-3. Yet, the mere fact that the defense is arguing about whether these alleged trade secrets derive value from being secret is an acknowledgement that, indeed, the statute provides a standard. Thus, there is no vagueness problem. *Accord Sandlin*, 575 F. Supp. 3d at 30 (explaining that, to prevail on a vagueness challenge, the defense must show that the statute "specif[ies] no standard of conduct . . . at all") (quoting *Bronstein*, 849 F.3d at 1107).

**B.     Novel Application**

The defense asserts that the statute is void for vagueness because it "has not been used against other Federal Reserve employees." Def. Mem. at 4. This argument, too, fails. There is nothing in the statute that limits its application to business information. On the contrary, the statute expressly applies to "*all* forms and types of financial, business . . . [or] economic . . . information . . . ." 18 U.S.C. § 1839(3) (emphasis added). The text of the Economic Espionage Act of 1996, its amendments under the Defend Trade Secrets Act of 2016, and the legislative history of the Act, as reflected in the related House Committee Report, reveal that from the Act's inception, Congress

intended for the Act's prohibition against the theft of trade secrets to include certain types of U.S. government information that meet the Act's definition.

Section 1831 proscribes economic espionage in broad terms. Twenty-six verbs capture any form of copying, possessing, and/or conveying trade secrets. *See* 18 U.S.C. §§ 1831(a)(1)-(3). Trade secrets are defined to include any information that has "independent economic value" because it is secret and which the trade-secret owner takes "reasonable measures" to keep secret. 18 U.S.C. § 1839(3). The offense includes its own attempt and conspiracy provisions. *See* 18 U.S.C. §§ 1831(a)(4)-(5). The term "owner" is defined to mean "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." *See* 18 U.S.C. § 1839(4). The House Committee Report that was written when the Act was being considered by Congress reinforces the broad text of the economic espionage offense in Section 1831 and the inclusion of U.S. government trade secrets in the Act. Relevant to the defendant's offense conduct, the House Report explains that the definition of "owner," which is not by its terms limited to inventors or private corporations, includes government owners such as the Federal Reserve:

> The term ''owner'' is defined to include the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret in [sic] reposed. In this case, owner includes both natural persons as well as organizations (such as corporations and partnerships) entitled to own property. It also includes *federal*, state, and local *government* organizations, as well as foreign government organizations.

H.R. REP. NO. 788, 104th Cong., 2d Sess. 13 (Sep. 16, 1996) (emphases added). Applying a statute to "new—even unprecedented—facts 'does not, standing alone, render a statutory application so novel as to be unconstitutional for vagueness.'" *Nordean*, 579 F. Supp. 3d at 47 (quoting *Harmon*, 2021 WL 1518344 at *8). Application of the Economic Espionage Act to the facts of this case fits squarely within the text, history, and purpose of the statute.

### C. Fair Notice

The defense argues that the defendant would not have had "fair notice" that the information referenced in the Indictment were trade secrets *because of the reasons given by Dr. Swanson*. Def. Mem. at 3. He also argues that Dr. Rogers did not have "reason to believe" that the information constituted trade secrets *because of the reasons given by Dr. Swanson*. Def. Mem. at 4-5. Here, again, the defense's argument is based on a factual dispute, rather than identifying a problem of statutory vagueness. Dr. Swanson's affidavit does not explain how the text is impermissibly vague. The affidavit makes factual allegations contrary to the allegations in the Indictment—assertions like, "Based on my experience working with the Federal Reserve entities, I have found that no one at the Federal Reserve talks about 'trade secrets.'" As explained above, such contrary factual assertions cannot be considered on a motion to dismiss. *See Genovese*, 409 F. Supp. 2d at 255-256; *Hoskins*, 73 F. Supp. 3d at 166; *Sargent*, 2022 WL 1124817 at *2. Moreover, such arguments misconstrue the showing that must be made to prevail on a vagueness challenge—they are arguments about whether the standard is met (a jury question) rather than arguments about whether a standard exists.

The defendant's arguments about fair notice are further belied by allegations and evidence that the defendant concocted a false cover story about teaching classes—even referring to his "classes" in quotation marks, Indictment ¶ 17(hh), and telling his coconspirators to make the classes appear more "legitimate in the eyes of the Fed," *id.* ¶ 17(o)—and that, later, when law enforcement asked the defendant about his activities, he lied about them. The defendant's cover story and false statement to law enforcement demonstrate that he understood he was engaged in prohibited conduct. As a practical matter, such an understanding precludes a claim that he lacked fair notice here. *See United States v. Krumrei*, 258 F.3d 535, 539 (6th Cir. 2001).

### D. Statute Restricts Conduct, Not Speech

In a single sentence, the defendant also argues that because the Economic Espionage Act is vague, it illegally restricts protected speech. Def. Mem. at 3. Not so. The Act limits its reach to conduct that is done "with intent to convert a trade secret . . . to the economic benefit of anyone other than the owner thereof." 18 U.S.C. § 1832(a)(2). "Such conduct is not protected speech." *Genovese*, 409 F. Supp. 2d at 256 (citing *United States v. Thompson,* 76 F.3d 442, 452 (2d Cir. 1996)) ("A prohibition against corrupt acts 'is clearly limited to . . . constitutionally unprotected and purportedly illicit activity.'" (quoting *United States v. Jeter,* 775 F.2d 670, 679 (6th Cir. 1985))). Courts have rejected similar challenges to other statutes that criminalize conduct that involves speech. For example, in *United States v. Hite*, 896 F. Supp. 2d 17, 21 (D.D.C. 2012), the defendant challenged the constitutionality of a law criminalizing enticement of a minor to engage in prostitution. *Id.* at 17. The defendant framed his challenge in terms of "vagueness." The court rejected the defendant's challenge, noting that the criminal statute in question "criminalizes the *act* of attempting to entice a minor, not speech." *Id.* (emphasis in original). Under that statute, "speech is merely the vehicle through which a pedophile ensnares the victim," but the statute itself regulates conduct, not speech. *Id.* (quoting *United States v. Meek*, 366 F.3d 705, 721 (9th Cir. 2004)). Here, similarly, the Economic Espionage Act criminalizes the act of converting a trade secret to a foreign government or agent, not speech. As the court found in *Genovese* and consistent with the reasoning in *Hite*, the instant challenge does not implicate First Amendment rights. Insofar as the defendant's motion to dismiss is making a First Amendment challenge here, that challenge should be denied.

E.     **"Reason to Believe" Argument**

The defense's "reason to believe" argument fails for the same reasons as its "fair notice" argument. As the defense acknowledges, legal impossibility is not a defense to conspiracy. Def. Mem. at 4. If not an argument about legal impossibility, the "reason to believe" argument is, simply, a factual question—that is, did the defendant have the requisite knowledge to be criminally liable? As explained above, a motion to dismiss is not the appropriate mechanism to resolve factual disputes. Such questions must be resolved at trial, and the motion to dismiss must be denied.

## CONCLUSION

For the foregoing reasons, the motion to dismiss must be denied.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

*/s/ Thomas N. Saunders*
Thomas N. Saunders
Assistant United States Attorney
N.Y. Bar No. 4876975
National Security Section
601 D Street, NW, Room 5-120
Washington, D.C.  20530
Office: 202-252-7790
Email: thomas.saunders@usdoj.gov

*/s/ Nicholas O. Hunter*
NICHOLAS O. HUNTER
D.C. Bar No. 1022355
Trial Attorney
National Security Division,
U.S. Dep't of Justice
950 Pennsylvania Ave, NW
Washington, D.C. 20530
E-mail: nicholas.hunter@usdoj.gov
Telephone: (202) 353-3434

*/s/ Yifei Zheng*
Yifei Zheng

                                               N.Y. Bar No. 5424957  
                                               Trial Attorney  
                                               National Security Division,  
                                               U.S. Dep't of Justice  
                                               950 Pennsylvania Ave, NW  
                                               Washington, D.C. 20530  
                                               E-mail: yifei.zheng@usdoj.gov  
                                               Telephone: (202) 353-0252