# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 25-cr-033 (DLF)** |
| **JOHN HAROLD ROGERS,** | |
| **Defendant.** | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S FIRST MOTION IN LIMINE

### I.    Fed. R. Evid. 401, 402, and 403: Irrelevant and Prejudicial Testimony Regarding the PRC and Its Agents

Count 1 of the indictment charges the Defendant with violating 18 U.S.C. § 1831(a)(5), which provides as follows:

> (a) In General.—Whoever, *intending or knowing* that the offense will benefit any foreign government, foreign instrumentality, or foreign agent, knowingly—
> (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains a trade secret;
> (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys a trade secret;
> (3) receives, buys, or possesses a trade secret, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;
> (4) attempts to commit any offense described in any of paragraphs (1) through (3); or
> (5) conspires with one or more other persons to commit any offense described in any of paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy,
> shall, except as provided in subsection (b), be fined not more than $5,000,000 or imprisoned not more than 15 years, or both.

> (Emphasis added).

Paragraph 1 of the indictment alleges in relevant part the crux of the Government's case:

> Beginning as early as in or around May 2013 through on or about January 30, 2025, Defendant . . . conspired with individuals located in the People's Republic of China ("PRC" or "China"), whose identities are known and unknown to the grand jury, to work to benefit the PRC by carrying away, sending, mailing, and obtaining—all without authorization—trade secrets of the Federal Reserve Board of Governors ("FRB") and the Federal Reserve Open Market Committee ("FOMC") in the United States, *intending or knowing* that the theft would benefit the PRC, agents of the PRC, and PRC instrumentalities and their agents.

(Emphasis added).

It is clear that both the statute and the indictment are focused on Defendant's knowledge and intent. The Government is not required to prove that the information the alleged conspirators intended to misappropriate was, in fact, a trade secret. What is required, however, is proof beyond a reasonable doubt that the defendant and at least one other member of the conspiracy knowingly agreed to misappropriate information that they reasonably or firmly believed was a trade secret and did so for the benefit of a foreign government or foreign instrumentality. This is because the defendant's guilt or innocence on this charge depends on what he believed the circumstances to be, not what they actually were. *See United States v. Liew*, 856 F.3d 585, 594, 600 (9th Cir. 2017); *United States v. Nosal*, 844 F.3d 1024, 1044-45 (9th Cir. 2016).

Defendant concedes, and will do so at trial, that if he stole what he believed were trade secrets from the FRB and/or the FOMC and he knowingly agreed to provide them to the PRC or its agents, he would have violated the statute. In short, Defendant concedes that he would have intended or known that an agreement to transfer what were reasonably believed to be trade secrets to the PRC or its agents "would benefit the PRC, agents of the PRC, and PRC instrumentalities and their agents."

The defense in this case is that Defendant was fooled by alleged co-conspirators 1 and 2 into believing they were Ph.D. economists -- in the case of co-conspirator 1 was first a graduate Economics Ph.D. student and later an Economics faculty member at a local Chinese university, and co-conspirator 2 was another graduate student.  Defendant believed these individuals were students interested in learning from him about economics and economic trade policy, which had been Defendant's academic area of expertise for decades.  Defendant never knowingly entered into any agreement with them or any other agent(s) of the PRC to provide what Defendant believed to be trade secrets to the PRC, its agents, and its instrumentalities.  Thus, the only disputed issues in the case are (1) whether Defendant stole what he and at least one other co-conspirator reasonably believed were trade secrets, and (2) whether Defendant knowingly entered to an agreement with an individual Defendant reasonably believed was an agent of the PRC to share such trade secrets with the PRC or its agents.

Accordingly, Defendant moves to exclude lay or expert testimony about the motivations of the PRC.  Specifically, he moves to exclude lay or expert testimony about the PRC's global economic ambitions and the value it placed on economic intelligence; how the information allegedly sought by Defendant's alleged co-conspirators would have benefitted the PRC and/or its instrumentalities; and the value to the PRC of the information sought from and allegedly provided by Defendant to his co-conspirators and the PRC.

Defendant contends that such testimony is irrelevant to whether he violated the statute, and therefore inadmissible.  Fed. R. Evid 402 ("Irrelevant evidence is not admissible.").  The test for relevant evidence is whether the evidence "has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid 401.  He also contends that such testimony would be unfairly prejudicial under Fed.

R. Evid. 403, because it would shift the focus and confuse any jury to conflate two separate ideas, the Defendant's intent and knowledge for which there is criminal liability with an alleged foreign enemy's malicious intent for which there is not.  *See* Fed. R. Evid. 403; *Old Chief v. U.S.*, 519 U.S. 172, 180 (1997) ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.").

The fear of China, communists, and the PRC has been a dog whistle sounding through our national discourse, enhanced by the media, which has only been heightened in the post-Covid pandemic world such that we have been conditioned to react with distrust, anger, and fear, and the Court should attempt to minimize its clear, prejudicial effect.  See, e.g., Lydia Saad, *Americans Still See China as Nation's Top Foe, Russia Second*, Gallup (March 18, 2024) *available at* https://news.gallup.com/poll/612170/americans-china-nation-top-foe-russia-second.aspx ("Forty-one percent of Americans name China as the United States' greatest enemy today, making it the top perceived U.S. adversary for the fourth straight year.").

In *United States v. Tao*, (D. Kan. Jan. 27, 2022), the District Court recognized this very risk of Sinophobia in considering whether to allow the Government to present expert testimony regarding the Chinese government, its national development goals and industrial policies, the Chinese Communist Party, talent acquisition/recruitment plans, and intellectual property theft.  *See United States v. Tao*, No. 19-20052-JAR, 2022 WL 252019 *6-9 (D. Kan. Jan. 27, 2022) ("This testimony also poses a significant risk of stoking Sinophobia—especially given that Defendant, who is Chinese, faces trial amid increasing reports of anti-Asian discrimination and violence since the outbreak of the COVID-19 pandemic—and evoking exactly the kind of negative emotional response that might lure the jury into declaring guilt on a ground different from proof specific to

the offense charged.") (internal citation omitted). While the *Tao* Court acknowledged that the case was a wire fraud case and not an espionage case, the Court did not reach the issue whether even in an economic espionage case Fed. R. Evid. 403 analysis would reach a different result. *See id.* at *6.

It does not matter under the statute whether the PRC, its agents, or its instrumentalities actually benefited from any trade secret allegedly supplied by Defendant; the statute penalizes any person who transfers what was reasonably believed to be a trade secret *intending or knowing* that the offense will benefit any foreign government, foreign instrumentality, or foreign agent even if there is no benefit to a foreign entity or person. Thus, the motivations of the PRC and its agents are irrelevant.

Shifting the focus of the case to China and the PRC threatens to turn a case that should focus on Defendant's actions and intentions into a referendum on China and the PRC. Defendant believes that the unfair prejudice associated with such a shift is readily apparent. Defendant also contends that testimony about the PRC as an institution will substantially lengthen the trial with evidence concerning the global ambitions of the PRC and its agents that is far removed from the disputed issues in the case: namely, Defendant's conduct and his knowledge and intent. Instead, the Court could take judicial notice of the open hostilities that between the United States and China over the last several years.

Defendant also moves to exclude evidence concerning PRC Universities and research institutes, their control by and coordination with the PRC government and Chinese Communist Party, and the relationships between PRC Universities and American researchers and professors, unless the Government can prove that such evidence was known to Defendant during the alleged conspiracy. Absent proof that Defendant knew about these relationships, they cannot shed light

on his knowledge and intent.  They are irrelevant, and they are also unduly prejudicial because they inject into the trial the entire structure of Chinese educational institutions, which once again puts the Chinese government, the Communist party, and the PRC on trial rather than Defendant.

Defendant also moves to exclude as irrelevant and unduly prejudicial any testimony about the nature and extent of the PRC's holdings of U.S. Treasuries and other securities, how the PRC manages those holdings, the economic value of FRB and FOMC information not at issue in this case, and whether the PRC and its components and instrumentalities traded on any information provided by Defendant.  Defendant reiterates that he does not dispute that if he knowingly entered into an agreement with PRC agents to transfer to them what he believed were trade secrets, such an agreement would have benefited the PRC, agents of the PRC, and PRC instrumentalities and their agents."  Therefore, the focus should be on Defendant's knowledge and intent, not the knowledge and intent of the PRC and its agents.

Defendant also moves to exclude as irrelevant and unduly prejudicial any testimony as to how the unauthorized disclosure of any trade secrets by Defendant harmed or could have harmed the economic interests of the United States.  The statute neither requires nor makes relevant harm to the United States. Rather, it focuses on benefit to any foreign government, foreign instrumentality, or foreign agent.  And any subsidiary argument as to the definition of trade secret underscores that any alleged trade secret must have "independent economic value, actual or potential, from not being generally known . . . ," meaning that the value of the alleged trade secret is derived from the information itself and not from how the United States might value it.  18 U.S.C. § 1839(3)(B).

Accordingly, Defendant moves to exclude the proposed expert testimony of Mr. Robert W. Green, S.A. Scott Kistler, and Dr. Brad Setzer.  Defendant reserves the right to challenge each

of the identified experts under *Daubert* and/or whether the Government disclosures fail to fulfill

Fed. R. Crim. P. 16(G) pursuant to this Court's scheduling order.

Mr. Green summarizes his proposed testimony as follows:

> In the first part of this statement, I explain how PRC leadership's ambitions to grow as a "financial power" and advance perceived PRC national security interests have resulted in financial sector activities that harm the United States, and why these ambitions have motivated PRC efforts to gather non-public information on U.S. central bank decision-making. In the second part of this statement, I assess the value of the "Trade Secrets" at focus in this case from this perspective. In the third part, I explain why information that was being sought by the co-conspirators in various taskings of interest in this case, as seen in evidence that I was provided, would have been of value to the PRC government and PRC financial institutions.

The PRC's leadership ambitions, its motivations and the value of trade secrets are irrelevant and

unfairly prejudicial for the reasons stated above.

The government summarizes the proposed testimony of Special Agent Scott Kistler as

follows:

> At trial, SA Kistler is expected to testify about:
> 1. The interest rate market products traded on U.S. exchanges and their value;
> 2. The importance of FOMC meetings and associated press releases, especially their impact on interest rate market products, and how small changes in the announcement can drastically move markets; and
> 3. How specific trade secrets from this case could have been used by inside traders.

Testimony about interest rate market products on U.S. exchanges and their value, the

importance of FOMC information, and how inside traders could use information is both

irrelevant and unduly prejudicial for the reasons stated above.

The government has provided the substance of Dr. Setser's proposed testimony as

follows:

1. "Dr. Setser will testify about the keen interest of China's government in the policies of the United States' Federal Reserve Board (the "Fed"), especially information that is not generally known to the public or the financial markets."

2. "China's central government is clearly among the largest, if not itself the largest, holders of U.S. bonds in the global economy."

3. "Accounting for a reasonable estimate of these "hidden" holdings, China's likely holds well over a $1 trillion in U.S. Treasuries and well over $1.2 trillion of U.S. bonds, a sum that would make it the largest single holder of U.S. government bonds."

4. "China has a direct interest in knowledge about the U.S. Federal Reserve Bank for a second reason, as it manages its currency against the U.S. dollar."

5. "Dr. Setser will testify that China's interest in the policies of the Federal Reserve thus go beyond the interest that the world's second largest economy would have in the economic and monetary policies of the world's largest economy."

Defendant submits that this proposed testimony is irrelevant and unfairly prejudicial for the reasons stated above.

## II.    Fed. R. Evid. 404(b) Evidence

As of the filing of Defendant's First Motion in Limine, Defendant has not received notice of any intent by the Government to offer Fed. R. Evid. 404(b) evidence.  Defendant reserves the right to oppose any such evidence.

November 10, 2025                                  Respectfully submitted,


/s/ Stephen A. Saltzburg
Stephen A. Saltzburg (D.C. Bar No. 156844)
2000 H Street, NW
Washington, DC 20052
Tel.: (202) 994-7089
Fax: (202) 994-9811
Email: sasaltz@law.gwu.edu


/s/ Jonathan K. Gitlen
Jonathan K. Gitlen (D.C. Bar No. 990918)
Law Office of Jonathan K. Gitlen PLLC
900 19th Street, NW, Suite 500

Washington, DC 20006
Tel.: (202) 568-5788
Fax: (202) 301-8556
Email: jonathan.gitlen@jgitlenlaw.com

*Counsel for Defendant*