UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN HAROLD ROGERS,<br><br>Defendant. | Case No. 25-cr-033 (DLF) |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S SECOND MOTION IN LIMINE**

      In his first Motion in Limine Defendant moved to exclude the proposed expert testimony of Robert W. Greene, Scott Kistler, and Dr. Bradley W. Setser in their entirety for the reasons stated in a Memorandum of Law filed in support of that motion. Defendant continues to move that their testimony be excluded in their entirety.[1]

      If the court permits any testimony from these witnesses, then Defendant moves the following:

- Mr. Robert W. Greene's disclosure fails to comply with Fed. R. Crim. P. 16(a)(1)(G), because it fails to identify with sufficient specificity what specific pieces of evidence the Government had provided to Mr. Greene to review in formulating his opinion. Consequently, the court should order the Government to remedy Mr. Greene's disclosure;

---

[1] Defendant is including each of the expert reports and notices as exhibits to the instant filing. Robert W. Green's Disclosure of Opinions dated November 7, 2025, is included as Exhibit A. Scott Kistler's Expert Notice dated November 7, 2025, is included as Exhibit B. Dr. Barry Naughton's Disclosure of Opinions dated November 7, 2025, is included as Exhibit C. Dr. Bradley W. Setser's Expert Notice dated November 7, 2025, is included as Exhibit D.

- Special Agent Scott Kistler's opinions are unhelpful under Fed. R. Evid. 702; SA Kistler is not an economist and nothing in his training would suggest that he may provide an opinion as to what moves markets; and the disclosure fails to provide the bases and reasons for SA Kistler's opinions. Ultimately the court should disqualify SA Kistler as an expert entirely; and

- Dr. Barry Naughton's opinions are irrelevant under Fed. R. Evid. 402 and 403.

I. **THE GOVERNMENT NOTICES UNDER FED. R. CRIM. P. 16(a)(1)(G) ARE DEFICIENT UNDER FED. R. EVID. 402, 403, AND 702.**

Federal Rule of Criminal Procedure 16(a)(1)(G)(iii) requires that each expert witness disclosure contain: a complete statement of all opinions that the government will elicit from the witness in its case-in-chief. . . ; [and] the bases and reasons for them . . . ." Working in tandem with Federal Rule of Evidence 702, the qualified expert "may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

In Robert W. Greene's disclosure, Mr. Greene states "The government has provided me with a document and various WeChat message exchanges that the government alleges Rogers received from one of his co-conspirators and that contain various requests or taskings." Greene Disclosure 10. Mr. Greene does not identify or list out all of the documents that the Government may have provided Mr. Greene so that neither the Defendant nor the court can adequately

2

evaluate whether Mr. Greene's testimony would comply with Fed. R. Evid 702.  Providing this information is otherwise required by Fed. R. Crim. P. 16(a)(1)(G).

The Government's summary of SA Kistler's testimony does not come close to meeting the requirements of Fed. R. Crim. P. 16.  There is no information to suggest that SA Kistler has the requisite knowledge to give any opinion contained in the Government's disclosure.  It does not include SA Kistler's educational history; any publications; or any advanced degrees.  Instead, the document describes SA Kistler as a successful securities trader for eight (8) years, but does not reveal SA Kistler's actual profits and losses, instead relying on an unsupported assertion that SA Kistler's continued employment at the exchange then depended solely on his ability to make money consistently through trading in his account." Kistler Disclosure 1-2.  But SA Kistler no longer works as a trader.

The Government also alleges that "SA Kistler is familiar with the capabilities and methods of individuals who engage in insider trader."  Kistler Disclosure 1.  But here, not only is there no allegation that Defendant provided any trade secret information to the People's Republic of China ("PRC"), but SA Kistler would have no basis to opine as to what a sovereign nation might do in trading on material, non-public information, only what individuals would do in undefined contracts, e.g., "If the rate increase was delayed even further to mid-2020, as predicted by the FRB, it would be reasonable to assume that the European bond yields would drop even further. Therefore, FRB's prediction in contrast to ECB's forecast would have had market-moving potential if made public. An inside trader could have used this information to know in advance that the value of the contract was likely to fall. This inside trader would be able to sell the contracts he held, preventing a significant financial loss for himself, or he could short-sell contracts, thereby securing a significant financial gain for himself."  Kistler Disclosure 4.

A summary of SA Kistler's testimony indicates he would address three issues:

1. The interest rate market products traded on U.S. exchanges and their value;

2. The importance of FOMC meetings and associated press releases, especially their impact on interest rate market products, and how small changes in the announcement can drastically move markets; and

3. How specific trade secrets from this case could have been used by inside traders.

Examining the details of SA Kistler's first and second points reveals that the only point SA Kistler makes is that if someone knows what will happen to an interest rate before the Fed. announces a decision on interest rates, that person could profit on the insider knowledge. A jury does not need any help to understand that point, and therefore testimony should not be allowed under Fed. R. Evid. 702. Other opinions included in the disclosure either lack attribution or any explanation as to the basis of the opinion. For example,

> On June 19, 2019, for example, 92 of the 93 economists surveyed by Bloomberg predicted that the FOMC would leave the federal funds rate unchanged, which it did. But the FOMC, in their statement, announced that it would "act as appropriate" to sustain economic expansion, instead of being "patient," as they had written in the previous release. This change in language caused the markets to respond dramatically, with investors and traders interpreting the new language to mean that the FOMC would be increasingly likely to lower the target federal funds rate in the near future.

Kistler Disclosure 3.

There is no basis to determine how SA Kistler would know that the difference in language from "act as appropriate" to "patient" would be the language that investors and traders specifically interpreted as meaning that there would be a lowering of the target federal funds rate. Is this an opinion that SA Kistler has or is it from an unattributed Bloomberg article? There is no way to know.

4

>Similarly, the Government's summary of Kistler's disclosure 4 is inadequate:

>>In summary, on March 7, 2019, ECB forecasted rate increase in early 2020, which was not what the market was expecting because the market, as implied from OIS, was expecting the rate increase to occur in late 2019. This delay in rate increase, as reported in the financial news media, caused the European bond yields to fall following ECB's announcement. If the rate increase was delayed even further to mid-2020, as predicted by the FRB, it would be reasonable to assume that the European bond yields would drop even further. Therefore, FRB's prediction in contrast to ECB's forecast would have had market-moving potential if made public.

On which financial news media is SA Kistler relying? Neither the court nor Defendant knows. For all of these clear deficiencies, the court should disallow SA Kistler from being designated an expert in this case.

In the first Motion in Limine, Defendant reserved the right to address the proposed testimony of Dr. Barry Naughton. Defendant is now moving to exclude portions of Dr. Naughton's testimony for the following reasons:

In paragraph 5 of Dr. Naughton's declaration, he summarizes his proposed testimony as follows:

>>In this case, I expect to testify as to three topic areas: (i) the teaching of economics in Chinese Universities, with an emphasis on foreign, and particularly U.S., citizens teaching in China; (ii) the structure of the Chinese government and Chinese Communist Party, and their relation to the Chinese university system; and (iii) my opinions about the interest of People's Republic of China policymakers in obtaining inside information from the Federal Reserve.

Defendant has no objection to his testimony on topic 1.

Defendant objects to the proposed testimony on topic 2 for the same reasons he objected to the testimony of the other government "experts" in the first Motion in Limine, Dkt. 36. The case is not about the structure of the Chinese government or its relationship to the Chinese University system. The proposed testimony is irrelevant and should be excluded under Fed. R.

Evid. 402 and also excluded under Fed. R. Evid. 403, because it is likely to inject issues into the case that will waste time, confuse the jury as to what is actually charged in the indictment, and be unduly prejudicial because it puts the PRC on trial rather than Defendant.

Defendant objects to his testimony on topic 3. Dr. Naughton goes into great detail about the holdings of Chinese banks and the precise value of their holdings. For example, in paragraphs 35 and 36 of his Declaration he states:

> 35. Finally, large Chinese banks are all state-owned. Some of these banks were explicitly established as "policy banks" to carry out government mandates. The largest of these, the China Development Bank, has a portfolio of (mainly) US dollar denominated loans approaching $800 billion, larger than the loan portfolio of the World Bank. China's state-owned commercial banks have a net surplus of foreign assets (primarily US dollars) of $900 billion, comprising both deposits denominated in USD and US dollar securities. These state-owned commercial banks are not always carrying out government mandates: they provide ordinary banking services to hundreds of millions of clients. However, their economic interests are very much relevant to the Chinese government, which is, after all, their owner.
>
> 36. Putting these government holdings together gives a minimum total holding of $3.5 trillion (Comprised of an absolute minimum of $1.3 trillion in official US dollar reserves; $500 billion in various funds; and another $1.7 trillion in government-controlled banks). This is a conservative estimate. All of these funds are managed to maximize returns and minimize risk and losses. A tiny difference of return of only 0.1% would be worth $3.5 billion dollars. The value of these assets is sensitive to changes in US interest rates and US dollar liquidity. The more insider information available about US monetary policy, the more successfully can these assets be managed.

This proposed testimony is irrelevant in a case in which no one will dispute that China has an interest in obtaining information about U.S. monetary policy or that such information could have value to China. The amount of the value is irrelevant under the statute and under the indictment. Such testimony should be excluded under Fed. R. Evid. 402 and also excluded under

6

Fed. R. Evid. 403, because it is likely to inject issues into the case that will waste time, confuse the jury as to what is actually charged in the indictment, be unduly prejudicial because it puts the PRC on trial.

## II. DEFENDANT RESERVES THE RIGHT TO OPPOSE ANY FED. R. EVID. 404(b) EVIDENCE.

As of the filing of Defendant's Second Motion in Limine, Defendant has not received notice of any intent by the Government to offer Fed. R. Evid. 404(b) evidence. Defendant reserves the right to oppose any such evidence.

November 21, 2025                              Respectfully submitted,

/s/ Stephen A. Saltzburg
Stephen A. Saltzburg (D.C. Bar No. 156844)
2000 H Street, NW
Washington, DC 20052
Tel.: (202) 994-7089
Fax: (202) 994-9811
Email: sasaltz@law.gwu.edu


/s/ Jonathan K. Gitlen
Jonathan K. Gitlen (D.C. Bar No. 990918)
Law Office of Jonathan K. Gitlen PLLC
900 19th Street, NW, Suite 500
Washington, DC 20006
Tel.: (202) 568-5788
Fax: (202) 301-8556
Email: jonathan.gitlen@jgitlenlaw.com


*Counsel for Defendant*