UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No.:  25-cr-00033 (DLF) |
| v. | : | |
| | : | |
| JOHN HAROLD ROGERS, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S BRIEF IN OPPOSITION TO DEFENDANT'S FIRST MOTION IN LIMINE**

The defendant is charged with conspiring to commit economic espionage for the benefit of the government of the Peoples Republic of China ("PRC"), its instrumentalities, and agents. His co-conspirators were PRC intelligence operatives who spotted, assessed, and developed the defendant into a human intelligence asset for the PRC.  They used cover identities as graduate-level economics students and researchers.  And with the defendant, they met surreptitiously in hotel rooms under the pretense of having the defendant teach fake "classes" during which he would convey sensitive information he had stolen from the United States Federal Reserve—all for the benefit of the PRC government and its instrumentalities.

Evidence about the PRC government, its economic policies and motivations, and how it stood to benefit from the defendant's actions are at the heart of this case.  Such evidence is essential to the narrative and highly probative of elements the government must prove at trial. And because such evidence is specific to the offense charged, it does not lure the jury to decide the case on an improper, emotional, or otherwise unfair basis.  The Court, therefore, should reject the defendant's attempt to exclude evidence under Rules 401, 402, and 403.

1

BACKGROUND

A. **Factual Background**

The Indictment charges the defendant with one count of Conspiracy to Commit Economic Espionage, in violation of 18 U.S.C. § 1831(a)(5), and one count of False Statements, in violation of 18 U.S.C. § 1001. Indictment ¶¶ 14-15, 18-19. The object of the charged conspiracy was for the defendant to "obtain, copy, send, possess, and communicate trade secrets belonging to the FOMC [Federal Open Markets Committee] and FRB [Federal Reserve Board], intending or knowing that the theft would benefit the Government of the People's Republic of China (PRC), its agents, and its instrumentalities." Indictment ¶ 15.

As described in the Indictment, the defendant was a human-intelligence asset for the PRC. His co-conspirators—Co-Conspirators 1 and 2 in the Indictment—were PRC government agents who handled the defendant and tasked him to provide sensitive information from the FRB and FOMC. Indictment ¶¶ 9, 12. Co-Conspirators 1 and 2 used cover identities as graduate students in economics to conceal their true identities. Indictment ¶ 9. The defendant met with them under the pretense of teaching "classes" in the PRC. But those "classes" were really just ad-hoc meetings in hotel rooms between the defendant and Co-Conspirators 1 and 2. Indictment ¶ 16f. Co-Conspirators 1 and 2 provided their own "homework assignments" and the defendant would "teach" them about topics of their choosing—which in all cases were topics of immense intelligence value to the PRC. *See, e.g.*, Indictment ¶¶ 9, 17p-s.

The defendant claims he was fooled by Co-Conspirators 1 and 2. Def. Br. at 3 (Dkt. No. 36-1). According to the defendant, he believed they were graduate students and economics researchers and did not know they were PRC intelligence operatives. *Id.* That may or may not be true. Significant evidence at trial will allow the jury to infer the defendant knew full well that he was not dealing with actual graduate students. But in all events, proving the defendant's guilt does

not require proving he had knowledge of his co-conspirators' true identities. The allegations in the Indictment and the government's trial evidence show that the defendant knew Co-Conspirators 1 and 2 were providing information to PRC government entities, even as graduate students. *See,* Indictment ¶ 17nn (defendant told law enforcement that his co-conspirator's research institute did "a lot of reports for the provincial government, they're in Shandong Province.").

### B. Economic Espionage and the Government's Expert Notices

At trial the government will prove that the defendant and his co-conspirators agreed to have the defendant illicitly collect valuable and secret information from the Federal Reserve and convey it to Co-Conspirators 1 and 2 for the benefit of the PRC government, its instrumentalities, or agents. To prove a conspiracy to commit economic espionage, the government must prove (1) two or more persons reached an agreement to commit economic espionage; (2) that the defendant knowingly joined the conspiracy, and (3) a member of the conspiracy performed an overt act in its furtherance. *See* 1 Modern Federal Jury Instructions-Criminal ¶ 19.01; *In re Sealed Case*, 283 F.3d 349, 345 (D.C. Cir. 2002).

The crime of economic espionage requires a person to (1) knowingly and without authorization obtain, copy, send, possess, or communicate (or one of several other similar verbs) a trade secret, (2) intending or knowing their acts would benefit a foreign government, foreign instrumentality, or foreign agent. *See* 18 U.S.C. § 1831(a); 2 Modern Federal Jury Instructions-Criminal ¶ 49A.02; Indictment ¶ 15. The statute defines "trade secret," in part, as information that "derives independent economic value, actual or potential, from not being generally known." 18 U.S.C. § 1839(3)(B). "[T]he term 'foreign instrumentality' means any agency, bureau, ministry, component, institution, association, or any legal, commercial, or business organization,

corporation, firm, or entity that is substantially owned, controlled, sponsored, commanded, managed, or dominated by a foreign government." *Id*. § 1839(1)

The government intends to rely in part on expert testimony to prove elements associated with (1) the economic value—specifically to the PRC—of the information the conspirators stole, and (2) the structure of the PRC government and its control over instrumentalities such as PRC universities. The government has provided notice of potential testimony from four experts who may testify at trial in furtherance of such proof:

1. **Robert Greene**. Mr. Greene will testify about the PRC's macro-economic and monetary policies and how the PRC would benefit from obtaining trade-secret information from the FOMC and FRB, two components of the U.S. Federal Reserve. As the United States' foremost economic competitor and geopolitical rival, the PRC aims to advance its global economic power and influence in relation to, and at the expense of, the United States. Mr. Greene's Rule 16(a)(1)(G) disclosure is attached as Exhibit A.

2. **Scott Kistler.**[1] Scott Kistler will testify about the value of the trade secret information that the defendant conspired to provide to the PRC. Specifically, he will testify that anyone who possessed such information could use it to profit by trading in the securities markets. Mr. Kistler will explain how the value of certain market instruments—like options linked to U.S. Treasury notes—move in response to public statements made by the FOMC, and how people could make money in the markets by having advance knowledge of FOMC statements before they are made. Mr. Kistler will focus on how market instruments moved after the June 19, 2019 FOMC

---

[1] The government is filing redacted versions of Mr. Greene's and Mr. Kistler's disclosures on the public docket as Exhibits A and B, respectively. The redacted portions of the those exhibit contain sensitive information belonging to the FOMC that the FOMC has not yet authorized for public release. The government will file unredacted versions of those exhibits under seal in the future.

statement—a statement that the defendant previewed for his co-conspirators before the FOMC made it. *See* Indictment ¶¶ 17kk-mm. Mr. Kistler's Rule 16(a)(1)(G) disclosure is attached as Exhibit B.

3. **Dr. Brad Setser.** Dr. Setser will add further context to the micro-economic benefits described by Mr. Kistler and tie those benefits directly to the PRC. Dr. Setser will describe the extent of the PRC's holdings of U.S. Treasuries, how the PRC manages those holdings, and how it would be well positioned to profit from inside information like that provided by the defendant. Dr. Setser's Rule 16(a)(1)(G) disclosure is attached as Exhibit C.

4. **Dr. Barry Naughton.**[2] Professor Naughton will provide testimony about the structure of the PRC government and its instrumentalities, including its control over PRC universities and research institutions. Mr. Naughton has spent years as a researcher in the PRC and will also testify about normal teaching and research practices at PRC academic institutions, how those institutions interact with one another, the nature of their degree programs, and how they typically pay professors. Given his years of experience researching economic and industrial policy in the PRC, Professor Naughton will also testify about the economic benefits the PRC would obtain from obtaining secret information from the FRB and FOMC. Dr. Naughton's Rule 16(a)(1)(G) disclosure is attached as Exhibit D.

## LEGAL STANDARD

Federal Rule of Evidence 401 defines relevant evidence as that "having any tendency to make a fact more or less probable than it would be without the evidence" and "of consequence in

---

[2] In its motion the defense moves to suppress the testimony of the other three experts, apparently in their entirety, and indicates that it will challenge Dr. Naughton's testimony separately. (Def.'s Mot at 2.) However, the defense motion also seeks to suppress broad categories of testimony (*id.* at 1), including topics covered in Dr. Naughton's expert notice, which is why the government has chosen to address Dr. Naughton's testimony in this response brief.

determining the action." Fed. R. Evid. 401.  Relevant evidence is admissible unless otherwise excluded by law or rule.  Fed. R. Evid. 402.  Evidence may be excluded under Rule 403 if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "In determining whether the probative value is *substantially* outweighed by the danger of *unfair* prejudice it is a sound rule that the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged."  *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984).  "Rule '403 does not bar powerful, or even 'prejudicial' evidence.  Instead, the Rule focuses on the 'danger of *unfair* prejudice,' and gives the court discretion to exclude evidence only if that danger '*substantially* outweighs' the evidence's probative value.'"  *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) (quoting *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998)).

## ARGUMENT

A. **Evidence About the Motivations of the PRC Government and the Value to It of the Sensitive U.S. Economic Information at the Heart of the Conspiracy is Directly Relevant to the Case and Not Unfairly Prejudicial**

Relevant evidence is not unfairly prejudicial under Rule 403 unless it invites the fact-finder to "declar[e] guilt on a ground different from proof specific to the offense charged."  *Old Chief v. United States*, 519 U.S. 172, 180 (1997).  "[U]nfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *Id.*  In this case, evidence about the motivations of the PRC and how it would value the information stolen by the defendant is at issue and specific to the elements of economic espionage.

Consistent with the indictment, the government must prove that the defendant entered into an agreement with PRC-government actors to misappropriate secret U.S. economic-policy

information for the benefit of the PRC.  *See* Indictment ¶ 15.  Proving the conspirators' intent to benefit the PRC government is an essential element the government must prove.  *See* 18 U.S.C. § 1831(a) (requiring intent or knowledge that the offense benefit a "foreign government, foreign instrumentality, or foreign agent.").  As a matter of logic and narrative, proving the requisite intent will require evidence and explanation of *how* the PRC would benefit from secret information from the Federal Reserve. The government could not prove the required intent without such explanation.  *See Old Chief v. United States*, 519 U.S. 172, 189 (1997) ("A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it.").  The government will elicit testimony from its expert witnesses at trial to provide those explanations to the jury.

    The government must also prove that the conspirators intended to misappropriate information they believed was economically valuable.  Proof of a conspiracy to commit economic espionage requires evidence that the conspirators intended to perform at least one of numerous enumerated acts—like copying, sending, possessing, or communicating—with a "trade secret."  *See* 18 U.S.C. § 1831(a); Indictment ¶ 15.  The statute defines "trade secret" in part as information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainably through proper means by, another person who can obtain economic value from the disclosure or use of the information."  18 U.S.C. § 1839(3)(B).  The economic value of the secret Federal Reserve information the conspirators conspired to steal, therefore, is highly probative of an element of the charged crime.  And given the circumstances of this case, the economic value of special relevance is the economic value to the PRC government.  The government could not prove the case the grand jury indicted without evidence of the value of the stolen information to the PRC government.

The defendant asserts (at 5-6) that only his knowledge, intent, and motivations are at issue. Def. Br. at 5-6. According to the defendant, the "motivations of the PRC and its agents are irrelevant." *Id.* at 5. That is incorrect. A conspiracy is proven "if the evidence establishes that each conspirator had the specific intent to further the common unlawful objective." *United States v. Tarantino*, 846 F.2d 1384, 1392 (D.C. Cir. 1988). Here, the defendant conspired *with the PRC government*. As the indictment alleges, the defendant's co-conspirators were agents of the PRC government, acting as agents in their dealings with the defendant. Indictment ¶ 12. There is therefore no daylight between the motivations of the defendant's co-conspirators and the motivations of the PRC government. The motivations of the PRC and its agents (the defendant's co-conspirators) are the objects of the conspiracy: to steal secret U.S. economic information for the benefit of the PRC. The how and the why the conspirators intended to achieve their unlawful objective are relevant to proving that the conspiracy existed. *See United States v. Hitt*, 107 F. Supp. 2d 29, 33 (D.D.C. 2000) ("Since the existence of an 'agreement' is the essential element of the statutory crime of conspiracy, the government must establish a unity of purpose, an intent to achieve a common goal, and an agreement to work together to achieve that common coal in order to convict a criminal defendant of conspiracy." (internal quotation marks, modifications, and citations omitted)).

Even the individualized motives of each conspirator are relevant to prove the existence of the illegal agreement. The existence of the agreement is the "essential element of the statutory crime of conspiracy." *United States v. Treadwell*, 760 F.2d 327, 336 (D.C. Dir. 1985). The personal motives of the defendant's co-conspirators are relevant to showing that they entered into an agreement, and thus, that the agreement existed in the first place. *See, e.g., United States v. Lancaster*, 44 F. 896, 902 (S.D. Ga. 1891) (Conspiracy is "a crime where the evidence of motive

and of circumstances are valuable, as indicating the animating cause of the unlawful combination and the unlawful agreement itself."); *United States v. Madigan*, No. 25-CR-115, 2025 WL 1836050, at *62 (N.D. Ill. July 3, 2025) (evidence was "plainly relevant" to a charged conspiracy count because it "demonstrate[d] the co-conspirators' motives"); *United States v. Hutchings*, No. 19-361, 2021 WL 4589850, at *5 (D.D.C. Oct. 6, 2021) ("The probative value of . . . evidence establishing connections between co-conspirators and their motive to join together is high."). Evidence of, for example, the PRC's global economic ambitions and the value it could obtain from obtaining secret information from the Federal Reserve are relevant to proving that agents of the PRC conspired with Rogers to obtain such information.

In any event, the actual benefits the PRC could receive from stolen Federal Reserve information are relevant circumstantial evidence of the defendant's own knowledge and intent to confer those benefits. The defendant was a PhD economist and senior advisor to the United States Federal Reserve. He specialized in international financial matters, especially as related to China. He was known within the Federal Reserve as "Mr. China." Given his education and significant experience, the jury could readily infer that the defendant knew about the PRC's economic motives and ambitions, its holdings of U.S. Treasuries, and other matters that the government's experts will testify about. *See United States v. Avant*, 275 F.2d 650, 653 (D.C. Cir. 1960) (jury may find knowledge "based on reasonable inferences from concrete facts in evidence" including such facts as "the conduct of the parties" and "the position occupied by the accused."); *United States v. Carr*, 25 F.3d 1194, 1201 (3d Cir. 1994) ("[A] conviction for conspiracy does not require that every element of the crime be proven with direct evidence. Rather, the government can rely entirely on circumstantial evidence to prove that an alleged conspirator had the knowledge and intent necessary to commit the crime."); *United States v.*

*MacDonald & Watson Waste Oil Co.*, 933 F.2d 35, 55 (1st Cir. 1991) ("Knowledge may be inferred from circumstantial evidence, including position and responsibility of defendants such as corporate officers, as well as information provided to those defendants on prior occasions."). Documentary evidence at trial will strengthen that inference by demonstrating the defendant's expertise in PRC economic policy and knowledge of the economic tensions between the United States and the PRC. And testimony from the government's experts—some of whom, like the defendant, are highly knowledgeable about global economic affairs—will demonstrate what is common knowledge in the field.

The defendant also argues for the exclusion of evidence of "how the unauthorized disclosure of any trade secrets by Defendant harmed or could have harmed the economic interests of the United States." Def. Br. at 6-7. The defendant asserts that the espionage statute focuses on intent to benefit a foreign government, not an intent to harm the United States. *Id*. But in the context of this case, harm to the United States is a benefit to the PRC government. They are two sides of the same coin. The United States and the PRC are economic and geopolitical competitors. *See United States v. Kim*, 2021 WL 2955903, at *8 (E.D. Va. July 14, 2021) (referring to the PRC as "one of our Nation's chief economic adversaries"). Especially in the context of espionage, working to confer an illicit benefit on the PRC is the same as working to harm the United States.

Contrary to the defendant's assertion (at 6-7), the government does not intend to elicit evidence about harm to the United States that is not connected to a benefit to the PRC. Mr. Greene framed the few statements in his expert disclosure that mention harm to the United States as linked to a corresponding benefit to the PRC. *See, e.g.*, Ex. A at 6 ("PRC officials have for years articulated financial policy efforts that harm U.S. interests in military-like rhetoric,

describing such actions in the context of 'financial war' or as necessary to advance the PRC's national security interests."); Ex. A at 7 (explaining that PRC access to non-public information from the Federal Reserve could "enable PRC government entities to more effectively advance PRC leadership's industrial and geopolitical ambitions, including by . . . affect[ing] the renminbi's value in unfair ways that harm U.S. interests.").

In sum, the economic motives, intent, and ambitions of the PRC government are directly at issue in this case and highly probative of elements the government must prove at trial. It would be impossible for the government to prove the case that the grand jury indicted without evidence of the motives and intent of the PRC government. Inviting the jury to consider such evidence invites it to consider proof "specific to the offense charged," *Old Chief v. United States*, 519 U.S. 172, 180 (1997). It does not lure the jury to decide the case on an "emotional" or otherwise "improper basis." *Id.*

## B. Evidence about PRC Universities and Research Institutes is Relevant and Not Unfairly Prejudicial

In part through the testimony of Dr. Naughton, the government will offer evidence at trial to establish that the universities and research institutions in the PRC are dominated or controlled by the PRC government. Those entities, therefore, qualify as "foreign instrumentalities" under the statute. *See* 18 U.S.C. § 1839(1). Thus, the defendant would still be guilty even if he truly believed that his PRC handlers—Co-Conspirators 1 and 2—were PhD students and not PRC intelligence operatives. Even if the defendant "was fooled by alleged co-conspirators 1 and 2," he still knew they worked for PRC universities and research institutes that were arms of the state. The defendant admitted as much in 2020 when he told law enforcement that his co-conspirators "do a lot of reports for the provincial government." Indictment ¶ 17nn. Courts in other economic espionage cases have admitted the same sort of evidence. *See, e.g.*, *United States v.*

*Zheng*, 113 F.4th 280, 297 (2d Cir. 2024) (sufficient evidence presented for jury to conclude that PRC universities were "owned by the Chinese government").

The defendant tacitly admits the relevance of evidence about PRC universities and research institutes. The defendant asserts such evidence is irrelevant "unless the Government can prove that such evidence was known to Defendant during the alleged conspiracy." Def. Br. at 5. The government intends to show exactly that. The defendant and his co-conspirators associated themselves with several universities or research institutes in the PRC. In addition to the fake "classes" he taught to his co-conspirators in hotel rooms, the defendant also engaged in legitimate teaching and research activities at PRC universities during the conspiracy. His resume from 2022, for example, lists Fudan University in Shanghai as his then-current employer. Ex. E. The defendant, who spent substantial time in China, engaged with actual and purported academics there and was well positioned to know that the universities and institutes he dealt with were instrumentalities of the PRC government.

### C. The Defendant Cannot Stipulate His Way out of the Full Force of the Government's Evidence Against Him

It is blackletter law that the government is "entitled to prove its case by evidence of its own choice." *Id.* at 186; *United States vs. Curtis*, 481 F.3d 836, 838 (D.C. Cir. 2007) ("The government is, in general, permitted to determine how to present its case."). The government has the heavy burden of proving the defendant's guilt beyond a reasonable doubt. To meet its burden and satisfy the jury that a conviction is warranted, the government "may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault." *Old Chief*, 519 U.S. at 188.

The defendant cannot deprive the government or the jury of the full story of his criminal activity by forcing stipulations of facts he does not want the jury to hear. "A defendant's offer to stipulate or concede an element of an offense . . . does not deprive the government's evidence of relevance." *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc). "*Old Chief* establishes that the prosecution cannot be forced to stipulate away the force" of its evidence. *Id.* at 1207.

In any event, the defendant's supposed concession concedes nothing. The defendant purports to concede that "if he stole what he believed were trade secrets from the FRB and/or the FOMC and he knowingly agreed to provide them to the PRC or its agents, he would have violated the statute." Def. Br. at 2. That hypothetical "if" statement is tautology. It states little more than that the defendant would have committed economic espionage if the underlying elements are satisfied. It is little more than a poorly worded proposed jury instruction. It is not a concession, stipulation, or admission of any relevant fact, act, or mental state.

The defendant then offers another, equally vague version of a stipulation (at 2): "Defendant concedes that he would have intended or known that an agreement to transfer what were reasonably believed to be trade secrets to the PRC or its agents 'would benefit the PRC, agents of the PRC, and PRC instrumentalities and their agents.'" Def. Br. at 2. Again, what the defendant "would have intended or known" is a conditional statement. It is not even clear what the condition is. And a concession that a transfer of trade secrets is transfer of a benefit is a tautology. By definition, trade secrets have economic value from being secret. 18 U.S.C. § 1839(3)(B). Anyone who knowingly transfers a trade secret knows—by definition—that they are transferring a thing of value.

### D. Evidence About the PRC Is Essential and Does Not Lure the Jury to Decide Guilt Based on and Improper Basis

The Indictment charges the defendant with conspiring to commit espionage for the PRC. The only difference between this case and a traditional espionage case is that the defendant conspired to steal secret economic information, as opposed to information related to the national defense. *Compare* 18 U.S.C. § 1831 (economic espionage), *with* 18 U.S.C. §§ 793-94 (espionage statutes). The defendant's co-conspirators acted as agents of the PRC government. Whether he understood them to be university researchers or intelligence officers—the charge is the same. The defendant effectively conspired with the PRC itself to steal secret U.S. economic information for the benefit of the PRC. Proving the charged offense thus requires the government to seek admission of all the types of evidence the defendant seeks to preclude. Under the Supreme Court's precedent in *Old Chief*, such highly probative evidence is not "unfairly" prejudicial. Evidence about the PRC invites the jury to declare guilt based on evidence "specific to the offense charged." *Old Chief*, 519 U.S. at 18. That is, economic espionage.

Other courts have rejected Rule 403 challenges to similar evidence about the Chinese government in cases involving economic espionage. In *United States v. You*, 534 F. Supp. 3d 880 (E.D. Tenn. 2021), *aff'd*, 74 F.4th 378 (6th Cir. 2023), a defendant sought to exclude testimony from Dr. Naughton—one of the government's experts here—about the structure of the PRC government, its efforts to obtain foreign technology, and its control over local government entities. *Id.* at 886. Like the defendant here, the case involved a charge of conspiracy to commit economic espionage. *Id.* at 883. Noting the test under Rule 403 is "strongly weighted toward admission," the court admitted Dr. Naughton's testimony. *Id.* at 887. The testimony went "directly to the element that the alleged offense 'benefit[ed] any foreign government, foreign

14

instrumentality, or foreign agent,' 18 US.C. § 1831, namely, [Chinese Communist Party] strategy for acquiring technology from foreign sources, the role that Chinese business play in that strategy, and the overall PRC governmental structure." *Id.* at 887-88.  As such, the evidence was "highly probative" and did not have "an undue tendency to suggest a decision on an improper [emotional] basis." *Id.* at 888 (citing Fed. R. Evid. 403 (Advisory Committee Notes)).  The same analysis applies in this case.

Even more recently, the court in *United States v. Wang*, No 21-CR-6108, 2025 WL 2247144, (W.D.N.Y. Aug. 7, 2025), admitted testimony about "China's governmental structure and economic ambitions." *Id.* at *2.  The court summarily rejected that defendant's Rule 403 challenge based on the Second Circuit's decision *Zheng*, 113 F.4th 280 (2d Cir. 2024).  In that case, the court affirmed a conviction based in part on the government's evidence that "the PRC sought to improve its competitive stature within high-tech manufacturing sectors." *Id.* at 295.  Here, the government also intends to present evidence about the PRC's efforts to improve its economic stature on the global stage. *See* Ex. A (Greene Disclosure); Ex. D (Naughton Disclosure).  The *Zheng* court also relied on evidence that universities in the PRC are owned and controlled by the government and therefore qualify as "foreign instrumentalities" under the statute. *Zheng*, 113 F.4th at 297.  Here, the government also intends to present evidence about governmental control over and coordination with PRC universities. *See* Ex. D (Naughton Report).

The defendant ignores all of that on-point precedent in favor of a citation to *United States v. Tao*, No. 19-20052-JAR, 2022 WL 252019 (D. Kan. Jan. 27, 2022).  Def. Br. at 4-5.  That case, however, was a wire-fraud case.  It did not involve economic espionage or any of the elements of economic espionage that make evidence about the PRC government and its policies highly

probative. *Compare* 18 U.S.C § 1343 (wire fraud requires a scheme to defraud and transmission in furtherance of the scheme), *with* 18 U.S.C. § 1831 (economic espionage requires knowledge of or an intent to benefit a foreign government or instrumentality with valuable information). In fact, the court noted that some of the challenged evidence risked "misleading the jury into thinking [the] case is actually an economic espionage or theft of trade secrets case." *Id.* at *6. *Tao* thus supports the government's position. There is no risk of misleading the jury into thinking this is an economic espionage case, because it is an economic espionage case.

## CONCLUSION

This is a case about espionage committed on behalf of the PRC. As such, it is unavoidable that the jury will need to hear evidence about the PRC. The defendant's attempt to exclude any and all evidence about the PRC should be rejected.

Respectfully submitted,

JOHN A. EISENBERG
Assistant Attorney General for National Security

*/s/ Nicholas O. Hunter*
NICHOLAS O. HUNTER
D.C. Bar No. 1022355
Trial Attorney
National Security Division,
U.S. Dep't of Justice
950 Pennsylvania Ave, NW
Washington, D.C. 20530
E-mail: nicholas.hunter@usdoj.gov
Telephone: (202) 353-3434

Yifei Zheng
N.Y. Bar No. 5424957
Trial Attorney
National Security Division,
U.S. Dep't of Justice
950 Pennsylvania Ave, NW
Washington, D.C. 20530

E-mail: yifei.zheng@usdoj.gov
Telephone: (202) 353-0252


JEANINE FERRIS PIRRO
United States Attorney

Thomas N. Saunders
Assistant United States Attorney
N.Y. Bar No. 4876975
National Security Section
601 D Street, NW, Room 5-120
Washington, D.C.  20530
Office: 202-252-7790
Email: thomas.saunders@usdoj.gov