UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN HAROLD ROGERS,<br><br>**Defendant.** | Case No. 25-cr-033 (DLF) |

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION
TO DEFENDANT'S FIRST MOTION IN LIMINE**

I.   18 U.S.C. § 1831(a)(5) HAS CLEAR STATUTORY LANGUAGE.

Count 1 of the indictment charges a violation of 18 U.S.C. § 1831(a)(5), conspiracy to commit economic espionage. The elements the government is required to prove beyond a reasonable doubt are clearly set forth in the statutory language:

> (a) In General.—Whoever, intending or knowing that the offense will benefit any foreign government, foreign instrumentality, or foreign agent, knowingly—
>
> (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains a trade secret;
>
> (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys a trade secret;
>
> (3) receives, buys, or possesses a trade secret, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;
>
> (4) attempts to commit any offense described in any of paragraphs (1) through (3); or
>
> (5) conspires with one or more other persons to commit any offense described in any of paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy . . . .

1

II.      THERE ARE ONLY FOUR ELEMENTS THE GOVERNMENT MUST PROVE IN THIS ECONOMIC ESPIONAGE CONSPIRACY CASE.

These are the elements the government must prove beyond a reasonable doubt:

1. The defendant conspired (i.e., entered into an agreement) with one or more persons;

2. To knowingly steal, appropriate or without authorization obtain a trade secret;

3. Knowing or intending that the offense will benefit a foreign government, foreign instrumentality, or foreign agent; and

4. One or more of these persons did an act to effect the object of the conspiracy, (i.e., an overt act).

III.     THE GOVERNMENT IS NOT REQUIRED TO PROVE THE VALUE OF A TRADE SECRET TO A FOREIGN GOVERNMENT.

In stark and significant contrast to the foregoing elements is what the government is not required to prove: (a) Why a foreign government might want a trade secret and (b) What value the trade secret is to a foreign government, instrumentality, or agent. For this filing, the critical portion of the definition of a trade secret is information that "derives *independent* economic value, actual or potential, from not being generally known . . . ." 18 U.S.C. § 1839(3)(B) (emphasis added). This means that the trade secret at issue must have an economic value by itself, limited to the four-corners of the document. Otherwise, "independent" would be meaningless. *See, e.g.*, *United States v. Wells*, 519 U.S. 482, 492 n.14 (1997) ("our presumption [is] that each term in a criminal statute carries meaning."). Nothing in the definition or in 18 U.S.C. § 1831(a)(5) require that the government establish that a trade secret is more or less valuable to one government or individual or to another government or individual, and showing that the trade secret may be valuable to *a government*, like the PRC, does not support an argument that the trade secret has *independent* economic value. Whether the foreign government might want a trade secret or what that value might be to a specific foreign government, foreign instrumentality, or foreign agent is therefore irrelevant.

If the trade secret is worth anything by itself, then a conspiracy to steal it in order to benefit a foreign government satisfies element 3, above. Moreover, as described in Defendant's First Motion in Limine, (ECF No. 36), the statute focuses on what the defendant knew or intended, and not on what a foreign government might have known or intended.

IV.   THE PROBLEM WITH THE GOVERNMENT'S ARGUMENT IS THAT IT NEEDLESSLY INTERJECTS POLICIES AND POLITICS OF CHINA INTO THIS CASE TO HIGHLY PREJUDICIAL EFFECT.

The problem with the government's opposition is apparent in a single sentence: "The government intends to rely in part on expert testimony to prove elements associated with (1) the economic value—specifically to the PRC—of the information the conspirators stole, and (2) the structure of the PRC government and its control over instrumentalities such as PRC universities." Opposition at 4. Both (1) and (2) are objectionable. As for (1), proof of value to any particular foreign entity or individual is not part of the statute and adds to the confusion that a jury might experience in ascertaining whether a trade secret had independent economic value. Thus, there is no relevance to evidence that the PRC had an interest in illegally obtaining trade secrets. The only reason for offering evidence as to (1) is to put the PRC on trial and make this case something it should not be. The problem with (2) is that the structure of the PRC and its control over various instrumentalities is not anything that addresses the elements of the crime charged.

V.   THE GOVERNMENT'S EXPERT TESTIMONY HIGHLIGHT THE GOVERNMENT'S INTENT TO RELY ON IRRELEVANT FACTS.

The irrelevance of the government's expert testimony can be clearly shown by analyzing what "facts" the government says it intends to prove. The government concisely states its theory of the case in the first paragraph of its opposition to the motion in limine:

> The defendant is charged with conspiring to commit economic espionage for the benefit of the government of the Peoples (*sic) Republic of China ("PRC"), its instrumentalities, and agents. His co-

        conspirators were PRC intelligence operatives who spotted, assessed, and developed the defendant into a human intelligence asset for the PRC. They used cover identities as graduate-level economics students and researchers. And with the defendant, they met surreptitiously in hotel rooms under the pretense of having the defendant teach fake "classes" during which he would convey sensitive information he had stolen from the United States Federal Reserve—all for the benefit of the PRC government and its instrumentalities.

There is nothing remotely complicated about such a case, and there is simply no reason for expert testimony about the PRC, its goals, its economic holdings, or virtually everything else that the government's experts would discuss if permitted.  If the government in fact can prove these things beyond a reasonable doubt, it will have proved each element of count 1:

1. Defendant misappropriated trade secrets of the Federal Reserve.  Such proof would establish that Defendant knowingly and wrongly obtained information that "derives independent economic value, actual or potential, from not being generally known."

2. Defendant entered into an agreement with PRC intelligence operatives knowing that they were such to provide them the wrongly obtained information.[1]

3. Defendant knew he was providing information of independent economic value to agents of a foreign government.

4. Defendant or his coconspirators held fake classes or took other action to further the conspiracy.

Such proof would establish all necessary elements to convict Defendant.  This is not a matter of stipulation.  It is a matter of law.  Nothing the government's "experts" have to say is required for the government to prove these things.  That is why their testimony is irrelevant, a waste of the Court's

---

[1] The government's opposition at 16 argues that "[t]his is a case about espionage committed on behalf of the PRC," and "[a]s such, it is unavoidable that the jury will need to hear evidence about the PRC." To be clear, Defendant is not seeking in any way to prevent the jury from hearing evidence about Defendant's interactions with individuals whom the government contends are agents of the PRC.  Such evidence is relevant to the elements that the government is required to prove with respect to Count 1 of the indictment.

time, and an invitation to turn a relatively straight-forward trial into a trial of the Chinese government.

VI.     THE GOVERNMENT MISSTATES ITS BURDEN OF PROOF

The government argues in its Opposition, at 7, as follows:

> Proving the conspirators' intent to benefit the PRC government is an essential element the government must prove. See 18 U.S.C. § 1831(a) (requiring intent or knowledge that the offense benefit a "foreign government, foreign instrumentality, or foreign agent."). As a matter of logic and narrative, proving the requisite intent will require evidence and explanation of how the PRC would benefit from secret information from the Federal Reserve. The government could not prove the required intent without such explanation.

With all due respect, this argument makes no sense. If Defendant knowingly turned over trade secrets (information that "derives independent economic value, actual or potential, from not being generally known") to agents of the PRC, then he knowingly and intentionally gave them something of value. Anything of value given to a foreign government is a benefit to that government. The government actually concedes this in its Opposition at 13: "By definition, trade secrets have economic value from being secret. 18 U.S.C. § 1839(3)(B). Anyone who knowingly transfers a trade secret knows—by definition—that they are transferring a thing of value."

The government falsely claims that it has to prove something that is not an element of the crime—i.e., exactly how it would be of benefit. Regardless, a jury here in the District of Columbia will have no difficulty understanding without expert help that anyone, individual or government, is benefited if it receives illegally information concerning Federal Reserve interest rate decision-making and can trade on that information before it is generally known.[2]

---

[2] Defendant made this point in his Memorandum in Support of his Second Motion in Limine, ECF No. 37-1, at 4, with respect to the testimony of Scott Kistler:
> Examining the details of SA Kistler's first and second points reveals that the only point SA Kistler makes is that if someone knows what will happen to an interest rate before the Fed. announces a decision on interest rates, that person could profit on the insider knowledge. A

The government also argues as follows in its Opposition at 7: "[G]iven the circumstances of this case, the economic value of special relevance is the economic value to the PRC government. The government could not prove the case the grand jury indicted without evidence of the value of the stolen information to the PRC government." This misstates the elements of the crime. A trade secret is not defined by its value to any one individual or entity. Whether the information at issue in this case would have been more highly valued by the PRC, the Bank of England, or day traders is irrelevant.

Moreover, the statement that "[t]he government could not prove the case the grand jury indicted without evidence of the value of the stolen information to the PRC government" misstates the charge made by the grand jury in Count 1. The grand jury did not state in the indictment anything about the structure of the PRC, the value of the alleged trade secrets, or anything that the government's experts seek to opine about.

The government makes an additional argument regarding Defendant's knowledge of the PRC, Opposition at 9:

> In any event, the actual benefits the PRC could receive from stolen Federal Reserve information are relevant circumstantial evidence of the defendant's own knowledge and intent to confer those benefits. The defendant was a PhD economist and senior advisor to the United States Federal Reserve. He specialized in international financial matters, especially as related to China. He was known within the Federal Reserve as "Mr. China." Given his education and significant experience, the jury could readily infer that the defendant knew about the PRC's economic motives and ambitions, its holdings of U.S. Treasuries, and other matters that the government's experts will testify about.

Running the risk of repetition, the government is clearly trying to make this case about the

---

jury does not need any help to understand that point, and therefore testimony should not be allowed under Fed. R. Evid. 702.

big, bad PRC, seeking to compete with the United States. Just as it is irrelevant whether the information at issue in this case would have been more highly valued by the PRC, the Bank of England, or day traders, the precise value of the information allegedly constituting trade secrets is equally irrelevant. As long as the information was a trade secret, it had value and that is all that matters under the statute.

Moreover, the jury will certainly hear of Defendant's twenty-year experience working for the Federal Reserve and his research on China. It will not need help from an expert to infer that Defendant was quite aware of how trade secrets could be of value to China or any other government.

VII.   THE CASES RELIED UPON BY THE GOVERNMENT ARE DIFFERENT.

In *United States v. You*, 534 F. Supp. 3d 880 (E.D. Tenn. 2021), *aff'd*, 74 F.4th 378 (6th Cir. 2023), the government charged the defendant with conspiracy to commit theft of trade secrets, possession of stolen trade secrets, wire fraud, conspiracy to commit economic espionage, and economic espionage. All of the charges were based on allegations that the defendant, a chemical engineer by education and training, orchestrated the theft of trade secret information from her former employers to use in her applications to two prestigious Chinese government-backed, grant-like award programs, the Thousand Talents Program and the local provincial Yishi-Yiyi Program. The district court rejected a motion to exclude Dr. Naughton, one of the experts the government seeks to rely upon in the instant case, reasoning as follows:

> While the actual talent program applications will be useful in determining the factual circumstances of this case, they are otherwise of little utility to a lay jury without any context. Without any expert testimony, the jury will lack a complete understanding of the talent programs' significance within China, and the talent programs' role and purpose in the PRC's greater goal of cutting-edge technology acquisition. Furthermore, an American jury, while very familiar with our structure of government, might not be as familiar with the inner workings of a modern day one-party Socialist republic, like the PRC, and will find Dr. Naughton's proposed testimony helpful to understand

>   the dynamic between the national governing body and local provincial authorities in the PRC's governmental system.

*Id*., 534 F. Supp. 3d at 883.

Defendant here has not moved to exclude Dr. Naughton's testimony in its entirety and does not argue that limited testimony by Dr. Naughton could not be helpful in this case. Similar to the Court's reasoning in *You*, the Court could permit Dr. Naughton to testify to the relationship of the PRC to provinces and to Universities in China.

The government's citation to *United States v. Wang*, No. 21-CR-6108, 2025 WL 2247144, (W.D.N.Y. Aug. 7, 2025), adds little to its reliance on *You*, since this is the entirety of the court's reasoning in response to the defendant's motion in limine:

>   Defendant's motion may be denied with only brief comment. The Second Circuit has confirmed the relevance of evidence regarding China's governmental structure and economic ambitions in cases such as these. *See United States v. Zheng*, 113 F.4th 280 (2d Cir. 2024). Furthermore, Defendant concedes that Dr. Naughton's testimony has been admitted in criminal trials involving charges like his. *See United States v. You*, 534 F. Supp. 3d 880 (E.D. Tenn. 2021), *aff'd*, 74 F.4th 378 (6th Cir. 2023). Although Defendant purports to identify various improper statements made by Dr. Naughton, *see generally* ECF No. 119; ECF No. 119-1, he does not actually cite the documents or testimony in which those alleged quotations can be found. Having reviewed Dr. Naughton's expert disclosure, ECF No. 96-3, the Court concludes that it stays within the bounds suggested by *Zheng* and *You*. Accordingly, Defendant has failed to offer a persuasive reason for precluding Dr. Naughton's testimony wholesale—or even for holding a *Daubert* hearing—and his motion *in limine* is denied.

*Id*. at *2. Unlike the defendant in *Wang*, Defendant in the instant case has not moved to exclude Dr. Naughton's testimony in its entirety.

As for the Zheng case cited in Wang, the government charged that the defendant worked as an engineer in General Electric's Power division, where he developed seals for GE's steam turbines; while working there from approximately 2016 to 2018 he launched two business ventures in the PRC

8

that also developed seals for aero engines and ground-based turbines; and in an effort to grow his China business, he misappropriated GE trade secrets related to turbine technology by sending the trade secrets through surreptitious means to himself and a co-conspirator in China. It does not appear that the defendant in Zheng objected to the testimony about the PRC in that case, and an examination of the arguments made on appeal indicates that the defendant's arguments were based upon a misreading of the requirements of 18 U.S.C. § 1831(a)(5).

VIII.   THE GOVERNMENT OMITS REFERENCE TO A KEY ASPECT OF *YOU*.

Although the government relies upon *You* in support of Dr. Naughton's testimony, it fails to mention the other motion in limine made in that case. The district court described that motion and its reaction to it as follows:

> Defendant filed an earlier motion in limine to exclude testimony of the government's proposed expert witness, retired Brigadier General Robert S. Spalding, III. [Doc. 142]. In its Federal Rule of Criminal Procedure 16 disclosure, the government offered Gen. Spalding as an expert on the Chinese Communist Party's ("CCP") methods for acquiring technology from foreign sources, and the role that Chinese businesses and the Thousand Talents and the Yishi-Yiyi Programs play in that strategy, as well as the CCP's awareness that these talent programs induce theft of foreign technology and economic damage to the victims of such theft including to the United States and foreign corporations. [Doc. 151-1]. The Magistrate Judge and the undersigned found that Gen. Spalding was qualified as an expert but did not meet the other requirements under the Federal Rules of Evidence to present the testimony detailed in the government's pretrial disclosure. [Docs. 193, 248]. However, this Court explicitly stated that its memorandum opinion was not intended to be a final opinion but *rather the Court stated its concerns about reliability, relevance and potential unfair prejudice of Gen. Spalding's proposed testimony on the record.* [Doc. 248]. The memorandum opinion further stated that the Court would entertain the government's proffer of more limited testimony of another expert witness, but only after a more detailed disclosure, and a non-jury hearing during which the Court would hear the expert's testimony and argument. [Id. at 21-22].
>
> Thereafter, the government withdrew Gen. Spalding as its expert witness and provided a notice of expert testimony that it intended to

> call Dr. Barry Naughton, a university professor of economics with an academic specialization of the economy of the People's Republic of China ("PRC"), to testify about the Chinese government's efforts to obtain foreign technology, the Thousand Talents Program and related local talent programs, and the Chinese government's structure and the extent to which the national-level government exerts direction and control over local governments. [Doc. 249-1 at 2-15].

584 F. Supp. at 883 (emphasis added).

Although the court did not make a final ruling as to the admissibility of Gen. Spalding's proposed testimony, the district court's concerns are the same that support the motion in limine in this case to exclude the government's proposed expert testimony by Robert Greene, Scott Kistler, and Dr. Brad Setzer. The fact that the government did not seek to have the *You* district court make a final ruling as to Gen. Spalding and instead turned to rely exclusively on Dr. Naughton strongly suggests the government knew that testimony "on the Chinese Communist Party's ('CCP') methods for acquiring technology from foreign sources, and the role that Chinese businesses and the Thousand Talents and the Yishi-Yiyi Programs play in that strategy, as well as the CCP's awareness that these talent programs induce theft of foreign technology and economic damage to the victims of such theft including to the United States and foreign corporations" would inject irrelevant issues into that case just as the government seeks to inject them into this case.

IX. CONCLUSION

For the reasons stated in Defendant's two motions in limine and in this Reply, Defendant asks this Court to exclude the testimony of Robert Greene, Scott Kistler, and Dr. Brad Setzer, and to limit the testimony of Dr. Naughton to avoid the injection of irrelevant and highly prejudicial testimony into the case and the concomitant unnecessary and unwarranted complication of the trial.

December 3, 2025                               Respectfully submitted,


                                               /s/ Stephen A. Saltzburg
                                               Stephen A. Saltzburg (D.C. Bar No. 156844)
                                               2000 H Street, NW
                                               Washington, DC 20052
                                               Tel.: (202) 994-7089
                                               Fax: (202) 994-9811
                                               Email: sasaltz@law.gwu.edu


                                               /s/ Jonathan K. Gitlen
                                               Jonathan K. Gitlen (D.C. Bar No. 990918)
                                               Law Office of Jonathan K. Gitlen PLLC
                                               900 19th Street, NW, Suite 500
                                               Washington, DC 20006
                                               Tel.: (202) 568-5788
                                               Fax: (202) 301-8556
                                               Email: jonathan.gitlen@jgitlenlaw.com

                                               *Counsel for Defendant*