UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No.: 25-cr-00033 (DLF) |
| v. : | |
| : | |
| JOHN HAROLD ROGERS, : | |
| : | |
| : | |
| Defendant. : | |

GOVERNMENT'S BRIEF IN OPPOSITION
TO DEFENDANT'S SECOND MOTION IN LIMINE

In its second motion in limine, the defense seeks to exclude all or portions of the testimony of Dr. Barry Naughton and FBI Special Agent Scott Kistler. The defense also moves the Court for an order directing the government to "remedy" the disclosure for Robert Greene. For the following reasons, the motion should be denied.[1]

The relevant factual background and legal standard are laid out in the government's recently filed opposition brief, available at ECF Docket Entry No. 39, which the government hereby incorporates by reference in its entirety.

ARGUMENT

**A. The Expert Notice for Robert Greene Identifies the Bases and Reasons for his Opinions, Sufficient for Fed. R. Crim. P. 16(a)(1)(G).**

The government's notice for expert witness Robert Greene identifies with sufficient specificity the reasons and bases for his opinions. The notice provides a thorough and detailed explanation of the facts that support his expert opinion testimony, including numerous quotations from high-ranking officials in the Chinese government and state-owned banking sector, and it

---

[1] In addition, the defense moves to exclude "All evidence covered by the First Motion in Limine." Def.'s Mot. at 1. Insofar as the defense is incorporating its demand and arguments from that earlier motion, the government has incorporated by reference its corresponding opposition.

contains numerous footnotes with citations to academic articles, evidentiary exhibits, and other sources upon which Mr. Greene has relied.

The defense argues that the expert notice "fails to identify with sufficient specificity what specific pieces of evidence the Government had provided to Mr. Greene…." Def.'s Mem. at 1, *available at* ECF Docket No. 37-1. However, the government's expert notice cites to the evidence that Mr. Greene reviewed, including footnotes to specific Trade Secrets and the relevant page numbers of those documents. *See, e.g.,* Greene Expert Notice n. 22-24, 26-27. The notice also alerts the defense that Mr. Greene was shown WeChat messages between the defendant and one of his coconspirators. *See* Greene Expert Notice at 10. These WeChat messages were provided to the defense in discovery as early as March 20, 2025 (in the "Hot Documents Presentation"). Moreover, Mr. Greene's expert notice identifies key WeChat messages with specificity, even quoting certain messages and providing the dates that the messages were sent. *See* Greene Expert Notice at 10-11. To the extent the defense seeks even greater clarity, the government notes that Mr. Greene reviewed communications contained in the following Bates stamped discovery, which was provided to the defense on March 20, 2025: USA-ROG-0000181 through USA-ROG-0000183; USA-ROG-0000188 through USA-ROG-0000189; USA-ROG-0000183; USA-ROG-0000191; USA-ROG-0000193 through USA-ROG-0000196; USA-ROG-0000201; USA-ROG-0000208; USA-ROG-0000210; USA-ROG-0000214 through USA-ROG-0000215; USA-ROG-0000217; USA-ROG-0000219 through USA-ROG-0000220; USA-ROG-0000222; USA-ROG-0000226 through USA-ROG-0000228; and USA-ROG-0000234. In sum, the government's expert notice for Mr. Greene satisfies the requirements of Rule 16(a)(1)(G), and to the extent that the defense seeks a "remedy," the government has provided that clarification in the instant memorandum. Thus, this aspect of the motion should be denied as moot.

B. **Special Agent Kistler's Noticed Testimony is Relevant and Helpful to the Jury**

FBI Special Agent Scott Kistler's testimony is relevant and will "help a trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a) (Testimony by Expert Witnesses). The defendant is charged in Count 1 with Conspiracy to Commit Economic Espionage. An element of Economic Espionage references trade secrets, the statutory definition of which includes that "the information derives *independent economic value*, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, *another person* who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3) (emphasis added). Agent Kistler will testify that specific trade secrets at issue in this case derived independent economic value from not being generally known to another person—that is, a person willing to engage in insider trading—and that such person can obtain economic value from the use of that information. Moreover, Agent Kistler's testimony involves information that is beyond the ken of the average juror, including but not limited to: defining a 10-year U.S. Treasury note; explaining how the value of a Treasury note is *inversely* related to interest rates (i.e., if rates go up, the value of the note goes down); defining the federal funds rate; and explaining how the announcement of a federal funds rate decision may actually be less impactful on markets than the subtle changes in language that the Federal Reserve includes in a statement explaining its decision. He will also offer his expert opinion concerning how a change to specific wording in a Federal Reserve announcement was generally interpreted by traders and investors, triggering a move in the market. Such information will be helpful to an average juror who, most likely, is unfamiliar with these matters.

The defense motion argues *both* that Agent Kistler is not sufficiently educated to testify about the information in his expert notice because he is not an economist, Def.'s Mem. at 2, *and*

that his testimony is so basic that any average juror will understand the information without any witness testimony, Def.'s Mem. at 4. In other words, according to the defense, Agent Kistler's testimony is simultaneously highly rarified and totally pedestrian. The defense is wrong on both points.

Agent Kistler is qualified to offer testimony about the information in his expert notice based on his eight years of experience working as a securities trader at the Chicago Mercantile Exchange, followed by 16 years of professional experience working as an FBI Special Agent who investigates insider trading and related crimes. Federal Rule of Evidence 702 expressly states that a witness can be qualified as an expert based on his "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The preceding list is in the disjunctive, meaning that an expert can be qualified based on his knowledge *or* skill *or* experience alone, regardless of education and training. Incidentally, Agent Kistler obtained a B.A. in Business Administration from Trinity University, including taking multiple courses in finance, and beyond that, he has more than 20 years of experience combined as a securities trader and an FBI agent. In sum, he is qualified to offer the noticed testimony.

Taking a different tack, the defense attempts to oversimplify Agent Kistler's testimony, claiming that he will make only "one point" that is so basic that jurors do not need the help of an expert witness. Def.'s Mem. at 4. The defense's characterization of Agent Kistler's notice creates a rhetorical strawman, stripping the noticed testimony of all its detail. Agent Kistler's testimony contains multiple pieces of information that are beyond the ken of the average jury, including but not limited to:

- providing examples of interest-rate market products;
- defining a 10-year U.S. Treasury note;
- explaining how the value of a Treasury note is inversely related to interest rates (i.e., if rates go up, the value of the note goes down);

- defining the federal funds rate; and
- explaining how the announcement of a federal funds rate decision may actually be less impactful on markets than the subtle changes in language that the Federal Reserve includes in a statement explaining its decision.

Here, the defense's claim that Agent Kistler's testimony amounts to just "one point" is plainly incorrect, as is the suggestion that "a jury does not need any help" to understand his testimony. *Id.* at 4. Indeed, "expert testimony commonly is admitted to assist the trier of fact in understanding trading patterns, securities industry practice, . . . and complicated terms and concepts." *S.E.C. v. Johnson*, 525 F. Supp. 2d 70, 77 (D.D.C. 2007) (citing *SEC v. U.S. Envtl., Inc.,* 2002 WL 31323832 at *3 (S.D.N.Y. Oct. 16, 2002); *United States v. Russo,* 74 F.3d 1383, 1394-95 (2d Cir. 1996); *United States v. Cohen,* 518 F.2d 727, 737 (2d Cir. 1975)). Simply put, the information in Agent Kistler's notice is sufficiently specialized that his expert testimony will help the jury understand the evidence and determine facts in issue in the case.

The defense also faults Agent Kistler's expert notice for not "reveal[ing] SA Kistler's actual profits and losses" during his time as a trader. Def.'s Mem. at 3. Federal Rule of Evidence 702 does not require such an accounting of an expert's finances. Read generously, the defense brief could be understood to suggest that Agent Kistler *might* have been unprofitable as trader and that such hypothesized unprofitability *might* indicate an absence of knowledge or skill. Yet, this multi-step argument is not only strained (and not expressly articulated in the defense's brief); this argument also ignores relevant parts of Agent Kistler's notice. The notice states that, while working as a trader, Agent Kistler "would average making a few thousand dollars" on a *daily* basis—a considerable sum of money per year. Kistler Notice at 2. Furthermore, Agent Kistler's continued employment at the exchange depended "solely on his ability to make money consistently through

trading," *id.* at 1-2, and as a profitable trader, he sustained his work at the Chicago Mercantile Exchange for nearly a decade, until becoming a federal agent.

The defense argues that Agent Kistler's testimony should be excluded because "there is no allegation that Defendant provided trade secret information to the People's Republic of China ("PRC")" and because Agent Kistler "would have no basis to opine as to what a sovereign nation might do in trading on material non-public information." Def.'s Mem. at 3. The defense argument is inapposite for two reasons. For starters, the indictment does allege that the defendant conspired to provide trade secret information to the PRC, its instrumentalities, or its agents. Indictment ¶ 1. Therefore, testimony that the alleged trade secrets did indeed have value—consistent with the statutory definition of a trade secret—is relevant. Second, the statutory definition of a trade secret does not depend on how the foreign government (here, China) would benefit from the information. Rather, the relevant prong of the statutory definition of a trade secret refers to the "independent" economic value of the information—value derived from the information not being known to "another person" who can obtain economic value from the use of the information. Agent Kistler's proposed expert opinion testimony speaks directly to the trade secrets in this case and how they could be used by another person (i.e., an insider trader) who could obtain economic value from the use of the information. *See also* 18 U.S.C. § 1839(3)(B) (economic value of a "trade secret" can be actual *or potential* (emphasis added)).

Finally, the defense claims there is "no basis to determine" how Agent Kistler "would know that the difference in language [in two different FOMC statements] from 'act as appropriate' to 'patient' would be the language that investors and traders specifically interpreted as meaning that there would be a lowering of the target federal funds rate." Def.'s Mem. at 4. This is an exaggeration. Agent Kistler is basing his testimony on his years of experience as a trader and FBI

agent focused on securities markets (as noted in the expert notice). Inherently, his experience includes his observations of the market, including market reactions to FOMC statements; his years of conversations with colleagues, investors, and other traders; and his efforts to stay current on market trends, including monitoring financial reporting over more than two decades. His testimony is also based on the market's actual response to the FOMC's change in language (as noted in the expert notice) and media reporting (as noted in the expert notice).[2]

In sum, Agent Kistler's expert notice is adequate, and the defense motion to exclude his testimony should be denied.

### C. Dr. Barry Naughton's Noticed Expert Testimony Is Admissible

The defense objects to the portion of Dr. Naughton's proposed testimony that relates to the structure of the Chinese government and the Chinese Communist Party, and their relation to the Chinese university system. This defense objection is based on the same arguments articulated in the defense's first motion in limine. Def.'s Mem. at 5 ("Defendant objects to the proposed testimony on topic 2 for the same reasons he objected to the testimony of the other government 'experts' in the first Motion in Limine"). The government has addressed these arguments in its brief in opposition to the first motion in limine, *see generally* Docket Entry No. 39 *and specifically id.* at 14-16, 11-12, and has adopted by reference that earlier brief. Simply put, evidence about Chinese universities and how they are dominated and controlled by the Chinese government and Chinese Communist Party is relevant to showing how the defendant's conspiracy was meant to benefit a foreign government, its instrumentality, or its agent. *Id.*

---

[2] The Bloomberg analysis that Agent Kistler referred to in his expert notice has been forwarded to the defense as of December 5, 2025.

The defense also objects to the portion of Dr. Naughton's proposed testimony that concerns his "opinions about the interest of the People's Republic of China policymakers in obtaining inside information from the Federal Reserve." Def.'s Mem. at 5 (quoting Dr. Naughton's Expert Notice). The defense argues that this portion of testimony is irrelevant because "no one will dispute that China has an interest in obtaining information about U.S. monetary policy or that such information could have value to China." *Id.* at 6. The government addressed these same arguments as well in its earlier opposition brief, noting that it is "blackletter law that the government is 'entitled to prove its case by evidence of its own choice,'" ECF Docket No. 39 at 12 (quoting *Old Chief v. United States*, 519 U.S. 172, 186 (1997)), and a defendant cannot stipulate his way out of the full force of the government's evidence. They government hereby adopts those portions of its earlier brief by reference. Moreover, the defense is not even offering to stipulate on this matter—which, to be clear, would not save his motion—but rather is proffering merely that "no one will dispute" a certain assertion of fact. Even in the absence of a dispute, the burden still rests with the government. The government must present evidence of the facts supporting its case, and Dr. Naughton is a highly qualified, highly knowledgeable witness who can speak with expertise about China's interest in Federal Reserve information. His testimony is admissible.

Pursuing its argument further, the defense seeks to limit or exclude Dr. Naughton's testimony arguing, in part, that the *degree* to which China values Federal Reserve information is not statutorily relevant. Yet, the degree to which China values the information is highly relevant to motive, and the government is permitted to present evidence of motive. The defense also cites summarily Fed. R. Evid. 403 as another basis for objection, claiming that Dr. Naughton's testimony is likely to inject "issues" that will waste time. Def.'s Mem. at 7. Beyond what has already been addressed, the defense does not identify any such "issues."

The defense challenge to Dr. Naughton's testimony is meritless and should be denied.

## CONCLUSION

For the foregoing reasons, the defense's second motion in limine should be denied in its entirety.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

*/s/ Thomas N. Saunders*
THOMAS N. SAUNDERS
Assistant United States Attorney
N.Y. Bar No. 4876975
National Security Section
601 D Street, NW, Room 5-120
Washington, D.C. 20530
Office: 202-252-7790
Email: thomas.saunders@usdoj.gov

JOHN A. EISENBERG
Assistant Attorney General for National Security

Nicholas O. Hunter
D.C. Bar No. 1022355
Trial Attorney
National Security Division,
U.S. Dep't of Justice
950 Pennsylvania Ave, NW
Washington, D.C. 20530
E-mail: nicholas.hunter@usdoj.gov
Telephone: (202) 353-3434

Yifei Zheng
N.Y. Bar No. 5424957
Trial Attorney
National Security Division,
U.S. Dep't of Justice
950 Pennsylvania Ave, NW
Washington, D.C. 20530
E-mail: yifei.zheng@usdoj.gov
Telephone: (202) 353-0252