UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN HAROLD ROGERS,<br><br>Defendant. | Case No. 25-cr-033 (DLF) |

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION
TO DEFENDANT'S SECOND MOTION IN LIMINE**

**I.      The "Facts" Upon Which the Government Intends to Rely**

Defendant relies upon the arguments previously made in his two motions in limine and in the Reply he filed in response to the government's opposition to the Defendant's first motion in limine. The government concisely states its theory of the case in the first paragraph of its first opposition to Defendant's first motion in limine:

> The defendant is charged with conspiring to commit economic espionage for the benefit of the government of the Peoples [sic] Republic of China ("PRC"), its instrumentalities, and agents. His co-conspirators were PRC intelligence operatives who spotted, assessed, and developed the defendant into a human intelligence asset for the PRC. They used cover identities as graduate-level economics students and researchers. And with the defendant, they met surreptitiously in hotel rooms under the pretense of having the defendant teach fake "classes" during which he would convey sensitive information he had stolen from the United States Federal Reserve—all for the benefit of the PRC government and its instrumentalities.

Gov. Opp. To Def 1st Mot. Limine p. 1 (ECF No. 39).

We argued in our first Reply to the government's opposition that there is nothing remotely complicated about such a case, and there is simply no reason for expert testimony about the PRC, its goals, its economic holdings, or virtually everything that the government's experts would discuss if permitted.

1

The government repeats in its opposition to Defendant's second motion in limine its intention to offer evidence that is both irrelevant and unduly prejudicial

## II.   Testimony of Scott Kistler

The government summarizes his testimony as follows:

> Agent Kistler will testify that specific trade secrets at issue in this case derived independent economic value from not being generally known to another person—that is, a person willing to engage in insider trading—and that such person can obtain economic value from the use of that information. Moreover, Agent Kistler's testimony involves information that is beyond the ken of the average juror, including but not limited to: defining a 10-year U.S. Treasury note; explaining how the value of a Treasury note is inversely related to interest rates (i.e., if rates go up, the value of the note goes down); defining the federal funds rate; and explaining how the announcement of a federal funds rate decision may actually be less impactful on markets than the subtle changes in language that the Federal Reserve includes in a statement explaining its decision.  He will also offer his expert opinion concerning how a change to specific wording in a Federal Reserve announcement was generally interpreted by traders and investors, triggering a move in the market. Such information will be helpful to an average juror who, most likely, is unfamiliar with these matters.

Gov. Opp. Def. 2nd Mot. Limine p. 3 (ECF No. 43).

The problem with this testimony is it has the potential to suggest to the jury that 10-year Treasury notes have some importance in the case or that the PRC had some special interest in 10-year Treasury notes.

The problematic nature of the testimony is even clearer when the government provides additional details about what it wants Agent Kistler to opine on:

> Agent Kistler's testimony contains multiple pieces of information that are beyond the ken of the average jury, including but not limited to:
>
> • providing examples of interest-rate market products;
>
> • defining a 10-year U.S. Treasury note;
>
> • explaining how the value of a Treasury note is inversely related to

>   interest rates (i.e., if rates go up, the value of the note goes down);
>
>   • defining the federal funds rate; and
>
>   • explaining how the announcement of a federal funds rate decision may actually be less impactful on markets than the subtle changes in language that the Federal Reserve includes in a statement explaining its decision.

*Id.* at 4-5.

The trial is supposed to focus on the allegations in the indictment and not a seminar on economic or monetary policy. Testimony about examples of interest-rate products, defining a 10-year Treasury note, defining the federal funds rate, and explaining how Treasury notes relate to interest rates or how federal funds announcements affect markets gets into economic details that have almost nothing to do with the allegations in the indictment.

The government misstates the defense's objection to Kistler's testimony when it says in its Opposition, the following:

>   Taking a different tack, the defense attempts to oversimplify Agent Kistler's testimony, claiming that he will make only "one point" that is so basic that jurors do not need the help of an expert witness. Def.'s Mem. at 4. The defense's characterization of Agent Kistler's notice creates a rhetorical strawman, stripping the noticed testimony of all its detail.

*Id.* at 4.

Defendant does not object to having a government expert testify that if an entity or individual had advance notice of Federal Reserve planned actions that was not publicly available, the individual or entity could use that information to its economic advantage by trading on it. Defendant also does not object to a simple explanation as to how a recipient of a Fed trade secret could make use of it. But there is no need for convoluted testimony as to all the ways that such trading might take place. Surely a D.C. jury can understand that if anyone – whether it is the PRC

or Jane Doe -- received a trade secret, which by definition is something of value, the recipient could use the trade secret to its advantage. In short, the specifics of Kistler's proposed testimony is not "helpful" to the jury and thus fails to satisfy Fed. R. Evid. 702.

### III. Testimony of Dr. Barry Naughton

In its Opposition to Defendant's first motion in limine, the government admitted that there is little need for most of Dr. Naughton's testimony. The government argued that

> In part through the testimony of Dr. Naughton, the government will offer evidence at trial to establish that the universities and research institutions in the PRC are dominated or controlled by the PRC government. Those entities, therefore, qualify as "foreign instrumentalities" under the statute. *See* 18 U.S.C. § 1839(1). Thus, the defendant would still be guilty even if he truly believed that his PRC handlers—Co-Conspirators 1 and 2—were PhD students and not PRC intelligence operatives. Even if the defendant "was fooled by alleged co-conspirators 1 and 2," he still knew they worked for PRC universities and research institutes that were arms of the state.

Gov. Opp. To Def 1st Mot. Limine p. 11 (ECF No. 39).

The government also argued that

> The defendant tacitly admits the relevance of evidence about PRC universities and research institutes. The defendant asserts such evidence is irrelevant "unless the Government can prove that such evidence was known to Defendant during the alleged conspiracy." Def. Br. at 5. The government intends to show exactly that. The defendant and his co-conspirators associated themselves with several universities or research institutes in the PRC. In addition to the fake "classes" he taught to his co-conspirators in hotel rooms, the defendant also engaged in legitimate teaching and research activities at PRC universities during the conspiracy. His resume from 2022, for example, lists Fudan University in Shanghai as his then-current employer. Ex. E. The defendant, who spent substantial time in China, engaged with actual and purported academics there and was well positioned to know that the universities and institutes he dealt with were instrumentalities of the PRC government.

*Id.* at 12.

Defendant has no objection to Dr. Naughton's testifying that universities in China are entities of the PRC. That is undoubtedly relevant to show that if Defendant provided trade secrets to a University in China or to its agents, he would have provided something of value to a foreign government. That is an element the government must prove with respect to Count 1 of the indictment. But it is unnecessary for Dr. Naughton to testify as to the structure of the PRC, its motivations, or the structure of the Chinese government and the Chinese Communist Party.

## IV.   Conclusion

For the reasons stated in Defendant's two motions in limine and in this Reply, Defendant asks this Court to exclude the testimony of Robert Greene, Scott Kistler, and Dr. Brad Setzer, except for one witness's limited testimony as to how an entity or individual with advance notice of non-public Federal Reserve planned actions the individual or entity could use that information to its economic advantage by trading on it. Defendant moves to limit the testimony of Dr. Naughton to avoid the injection of irrelevant and highly prejudicial testimony into the case and the concomitant unnecessary and unwarranted complication of the trial.

December 12, 2025                                                   Respectfully submitted,

/s/ Stephen A. Saltzburg
Stephen A. Saltzburg (D.C. Bar No. 156844)
2000 H Street, NW
Washington, DC 20052
Tel.: (202) 994-7089
Fax: (202) 994-9811
Email: sasaltz@law.gwu.edu

/s/ Jonathan K. Gitlen
Jonathan K. Gitlen (D.C. Bar No. 990918)
Law Office of Jonathan K. Gitlen PLLC
900 19th Street, NW, Suite 500
Washington, DC 20006
Tel.: (202) 568-5788
Fax: (202) 301-8556
Email: jonathan.gitlen@jgitlenlaw.com
