UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No.:  25-cr-00033 (DLF) |
| v. | : | |
| | : | |
| JOHN HAROLD ROGERS, | : | |
| | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S MOTION IN LIMINE TO
### EXCLUDE DEFENDANT'S PROPOSED EXPERT OPINION TESTIMONY

On December 11, 2025, Defendant John Rogers notified the Government pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C) that he intends to call two economics professors, Dr. Eric T. Swanson of the University of California, Irvine, and Dr. Charles M. Engel of the University of Wisconsin, Madison, as trial witnesses to provide expert opinion testimony under Federal Rule of Evidence 702.  As described further below, Defendant's Rule 16 notices fail to satisfy the disclosure requirements of Rule 16.  They do not provide any explanation of the "bases and reasons" for the witnesses' opinions, nor do they state (or identify) any cases in which either witness has testified in the previous four years.  With the January 20, 2026 trial only a few weeks away, Defendant's skimpy notices do not give the Government a "fair opportunity" to prepare for cross examination of the witnesses or to secure opposing expert testimony if needed.  On this basis alone, Defendant's proposed expert opinion testimony should be excluded for failure to comply with Federal Rule of Criminal Procedure 16.

Moreover, the Court should exclude the vast majority of Defendant's proposed expert opinion testimony under Federal Rules of Evidence 403, 702, and 704 because the witnesses are not qualified to offer the proposed opinions, the opinions constitute advocacy masquerading as

1

expert testimony, many of the opinions are impermissible legal conclusions or opinions of Defendant's mental state, and the probative value of the opinions is substantially outweighed by the danger of confusing the issues at trial, wasting time, and misleading the jury. Some of the testimony appears to be Defendant's own personal account, filtered through an acquaintance in the guise of an expert, allowing Defendant to testify through a friend and avoid being cross-examined. At a minimum, the Court should hold a *Daubert* hearing in advance of trial to satisfy its gatekeeping function and ensure that the proposed expert opinion testimony of Professors Swanson and Engel is relevant and reliable. *See United States v. McGill*, 815 F.3d 846, 903 (D.C. Cir. 2016) ("The district court has a gatekeeping responsibility . . . . [T]he court therefore must undertake a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology properly can be applied to the facts in issue.").[1]

## ARGUMENT

**A.      Defendant's Expert Notices Fail to Comply with Rule 16**

Federal Rule of Criminal Procedure 16(b)(1)(C) requires a defendant's expert disclosure to contain, among other information, the "bases and reasons" for the expert's opinions. Defendant's notices for Professors Swanson and Engel, however, provide nearly no details regarding what information or documents Professors Swanson and Engel reviewed to reach their conclusions. *See generally* Defendant's Dec. 11, 2025 Notices (attached hereto as Exhibit A). For example, Professor Swanson opines that, "Fed. Researchers would not have fair notice as to what qualifies as a trade secret, because other than the various classifications, there is no additional information that would let an employee know whether some information was 'economically valuable' or not."

---

[1] Unless otherwise noted, all internal quotation marks and citations are omitted from this brief.

*Id.* at 11 ¶ 5.[2]  Professor Swanson fails to explain how he reached this conclusion.  What, if any, information about the Federal Reserve Board's policies and procedures that were in place during the period of Defendant's crimes did he review?  Or is the sole basis for his opinion his own work at the Federal Reserve Board 20 years ago?  Similarly, what did Professor Swanson rely on to conclude that "[f]oreign universities will often pay top dollar for [researchers like Defendant] to boost their international reputation and prestige?"  *Id*. at 12 ¶ 9.  From his expert disclosure, Professor Swanson has been a professor for the last 11 years at the same American university, and his research focus is monetary economics, macroeconomics, macro-finance, and time series econometrics.  *Id.* at 3.  According to his resume, he has never worked for a foreign university or studied the labor market for U.S. economists working at foreign universities.

      Professor Engel's notice suffers the same defect.  Professor Engel plans to opine on Defendant's work at the Federal Reserve Board and how his position in the International Finance Division was "almost unique."  *Id.* at 28 ¶ 2.  He does not explain, however, how he knows what Defendant's job entailed at the Federal Reserve or how his job compared to other employees of the Federal Reserve.  If Professor Engel has learned this information from Defendant, then the noticed testimony would be merely Defendant's own factual assertions and opinions, but Defendant should not be permitted to present his own testimony to the jury through a third-party witness and thereby avoid being cross-examined simply by labeling that third party as an expert.  According to his resume, Professor Engel has been in academia since 1982 and, other than interning for the Federal Reserve Board as a doctoral student in 1981, he has never been employed by the Federal Reserve Board.  *Id*. at 15-16.  Is his opinion about Defendant's work at the Federal

---

[2] For ease of reference, the Government has added page numbers in red to Exhibit A.  The Exhibit A pin cites in this motion refer to those red page numbers.

3

Reserve based on Professor Engel's brief experience at the Federal Reserve over 40 years ago or something else? Professor Engel also opines on how graduate students are taught in China and whether teaching classes in a hotel room at night is unusual. *Id*. at 29 ¶ 6. He provides no explanation, however, for why he holds this opinion and whether it is anything more than his conclusion drawn from his own limited personal experience. Does he hold this opinion because he has researched how academic exchanges in China generally work? Professor Engel's Rule 16 notice is silent on this issue. The inadequacy of Professor Engel's notice not only hinders the Government from being able to test the weight of Professor Engel's opinion through cross examination, but also prevents the Court from fulfilling its gatekeeping responsibility by assessing whether his opinions are reliable enough to be presented to the jury.

Without any description of how Professors Swanson and Engel reached their conclusions, the Government cannot adequately prepare for cross examination nor determine whether it needs to prepare rebuttal expert opinion testimony. Defendant's lack of specificity thwarts the purpose of Rule 16 and fails to provide the Government "with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." *United States v. Naegele*, 468 F. Supp. 2d 175, 176 (D.D.C. 2007). Defendant's failure, on the eve of trial, to comply with the clear dictates of Rule 16 warrants exclusion of Professor Swanson's and Engel's testimony. *See* Fed. R. Crim. P. 16(d) (permitting exclusion of evidence for failure to comply with Rule 16).

**B.     Professor Swanson's Proposed Expert Testimony is Unreliable, Constitutes Legal Conclusions, and Impermissibly Comments on Defendant's Mental State**

Even if the Court forgives Defendant's flawed Rule 16 notices, most of Professor Swanson's and Engel's testimony should still be excluded under the Federal Rules of Evidence. Before admitting expert testimony under Rule 702, the Court must first make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically

valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993). The trial court acts as a gatekeeper to preclude unreliable and irrelevant expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). The party offering the expert bears the burden of establishing by a preponderance of the evidence that Rule 702 is satisfied. *Daubert*, 509 U.S. at 593 n.10.

Professor Swanson's proposed expert opinion testimony generally covers five topics: (1) procedures of the Federal Reserve Board regarding statements of the Federal Open Market Committee ("FOMC"); (2) the FOMC classification system and the significance, or lack thereof, of FOMC Class II information; (3) what Federal Reserve Board employees understood about confidential FOMC information; (4) whether certain FOMC information, including Trade Secrets 5 and 6 from the indictment, are trade secrets; and (5) Defendant's academic reputation and wage earning potential. For a variety of reasons, the majority of Professor Swanson's testimony should be excluded.

*First*, Professor Swanson is not qualified to opine on the relevant procedures of the Federal Reserve Board, the FOMC classification system, or the experiences of Federal Reserve Board employees generally. Professor Swanson last worked at the Federal Reserve Board 20 years ago. Defendant's crimes began nearly a decade after Professor Swanson left the Federal Reserve Board. Thus, whatever knowledge Professor Swanson has about the Federal Reserve Board's procedures or what its employees do or do not know is outdated and irrelevant to the case at issue. It also is not clear whether Professor Swanson's opinions about the Federal Reserve Board are based on anything more than his own personal experiences working there. From his expert disclosure, none

5

of Professor Swanson's publications touches on the topics that he now plans to opine on as an expert in this case.

Rule 702 permits an expert to rely primarily on experience, but when an expert does so, he "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Atlanta Channel, Inc. v. Solomon*, 2020 WL 7013346, at *3 (D.D.C. Nov. 24, 2020). Professor Swanson does none of these things. Without any explanation for how Professor Swanson's personal experiences constitute a reliable means by which he can opine on the topics outlined in his notice, his testimony on topics one through three described above is speculative and based on conjecture. Therefore, it is unreliable and should be excluded. *See* Fed. R. Evid. 702, Advisory Committee's Notes ("The trial court's gatekeeping function requires more than simply taking the expert's word for it."); *see also Ambrosini v. Labarraque*, 101 F.3d 129, 134 (D.C. Cir. 1996) ("[T]he *Daubert* analysis . . . focuses on the court's 'gatekeeper' role as a check on 'subjective belief' and 'unsupported speculation.'"); *Halcomb v. Washington Metro. Area Transit Auth.*, 526 F. Supp. 2d 24, 30 (D.D.C. 2007) ("Rule 702 also precludes [experts] from offering opinion testimony based on personal opinions rather than on relevant objective criteria").[3]

*Second*, Professor Swanson's testimony about what information is or is not a trade secret "does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (emphasis in original). One of the elements that the Government must prove at trial is that Defendant conspired to misappropriate trade secrets. Whether the Government meets its burden on that element is up to

---

[3] If Professor Swanson intends to testify as a fact witness based on his experience at the Federal Reserve Board, he would not face the same reliability issues, but his fact witness testimony is likely inadmissible because of its lack of relevance.

the jury, not Professor Swanson. Hence, his opinions that he "think[s] it's hard to call almost anything that is class II a 'trade secret'. . ." and that "Trade secrets 5 and 6 . . . are [not] trade secrets," Ex. A at 11-12 ¶¶ 4, 8, are impermissible legal conclusions. *See Buckhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards."). Professor Swanson may not "supplant the role of counsel in making argument at trial, and the role of the jury interpreting the evidence." *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 529 (S.D.N.Y.), *amended on reconsideration in part*, 137 F. Supp. 2d 438 (S.D.N.Y. 2001), and *abrogated by Casey v. Merck & Co.*, 653 F.3d 95 (2d Cir. 2011). "One method of distinguishing if expert testimony crosses the line into inadmissible legal conclusions is whether the words used by the expert have specialized meaning in the law different from that present in the vernacular." *Convertino v. U.S. Dep't of Just.*, 772 F. Supp. 2d 10, 12-13 (D.D.C. 2010). Here, the phrase "trade secret" has a specialized meaning in the law and Professor Swanson's opinion about whether certain information is a "trade secret" impermissibly constitutes a legal conclusion.

Additionally, Professor Swanson's opinion that "it's hard to call almost anything that is class II a 'trade secret'" is unreliable conjecture. Professor Swanson has not (nor could he have) reviewed all confidential FOMC information that has been classified as Class II information, nor has he performed any type of study or research to analyze what type of FOMC information is typically classified as Class II information. FOMC policies define confidential FOMC information as "all privileged information that comes into the possession of the Board members, Federal Reserve Bank presidents, or Federal Reserve System staff in the performance of their duties for,

7

or pursuant to the direction of, the [FOMC]."[4] The Class II FOMC information classification "is generally applied to Board staff forecasts prepared for the Committee and to information about open market operations."[5] Professor Swanson's blanket assertion that "almost anything" that is labeled as Class II FOMC information could not be a trade secret is unsupported by any kind of analysis or review of underlying data or practices. Instead, Professor Swanson's opinions are the type of subjective "naked assertions" that Rule 702 is intended to weed out. *Halcomb*, 526 F. Supp. 2d at 30-31; *see also Atlanta Channel*, 2020 WL 7013346, at *3.

*Third*, some of Professor Swanson's opinions violate Federal Rule of Evidence 704(b) because they constitute impermissible opinion testimony about Defendant's mental state that constitutes an element of one of the crimes Defendant has been charged with committing. One of the elements of conspiracy to commit economic espionage is that Defendant conspired to "knowingly" misappropriate trade secrets. Professor Swanson's proposed testimony is categorical on whether a Federal Reserve Board employee like Defendant would know whether what he agreed to misappropriate for the Chinese government was a trade secret. According to Professor Swanson, "*no one* at the Federal Reserve talks about 'trade secrets'" and all researchers at the Federal Reserve Board "would not have fair notice as to what qualifies as a trade secret." Ex. A at 11-12 ¶¶ 5 & 7 (emphasis added). Defendant worked at the Federal Reserve Board, so according to Professor Swanson's opinion, Defendant could not have "knowingly" conspired to misappropriate trade secrets because he did not know what trade secrets, if any, the Federal Reserve Board possessed. This is the type of expert opinion testimony that Rule 704(b) prohibits. *See Diaz v.*

---

[4] *See, e.g.*, Program for Security of FOMC Information, *available at* https://www.federalreserve.gov/monetarypolicy/files/FOMC_InformationSecurityProgram.pdf

[5] *Id.*

8

*United States*, 602 U.S. 526, 536 (2024) (explaining that if an expert testified that "*all* people in the defendant's shoes" set fires with malicious intent, then the expert necessarily was opining on an arson defendant's mental state in violation of Rule 704(b) (emphasis added)).  Therefore, Professor Swanson's testimony about what researchers at the Federal Reserve Board (like Defendant) knew or believed should be excluded under Rule 704(b).

Accordingly, under Rules 702 and 704, Professor Swanson should be excluded from testifying as an expert on topics one through four described above.

**C.    Professor Engel's Proposed Expert Testimony Is Unreliable and Impermissibly Opines on Defendant's Credibility**

Professor Engel's proposed expert opinion testimony generally covers five topics: (1) Defendant's academic career as a researcher; (2) the nature of Defendant's research at the Federal Reserve Board; (3) whether it was reasonable for Defendant to possess Trade Secrets 2, 3, and 4 identified in the indictment; (4) whether Defendant's interactions with Chinese government officials were typical of academic exchanges; and (5) Defendant's wage earning potential.[6]  *See* Ex. A at 28-29.  As with Professor Swanson's opinions, Professor Engel's opinions are more personal conjecture than informed opinions supported by sufficient "bases and reasons."  This is unsurprising considering that Professors Swanson and Engel are Defendant's personal friends, have written academic articles on economics with him over the years, and served as sources of professional recommendations for Defendant when he applied for jobs in China.  Professor Engel was Defendant's Ph.D. advisor and has known Defendant for nearly 40 years.  Accordingly, as with Professor Swanson's opinions, most of Professor Engel's opinions should be excluded under Rule 702.

---

[6] Topics one and two may be appropriate fact witness testimony, but not expert opinion testimony.

*First*, Professor Engel is unqualified to opine on Defendant's work at the Federal Reserve Board. Professor Engel has spent his entire career in academia teaching and researching economics. His only experience working at the Federal Reserve Board was in 1981 as a summer intern. Moreover, despite being a prolific author, none of his publications relates to the topics that he now plans to opine on as an expert. Thus, as with many of Professor Engel's other opinions, if the source of Professor Engel's opinion on Defendant's work at the Federal Reserve Bank is Defendant's own statements, then Professor Engel should not be permitted to backdoor this testimony into evidence without subjecting Defendant to the scrutiny of cross examination.

Professor Engel's opinions about Defendant's work at the Federal Reserve Board and that "he did no work on the current state of the economy or on any projections the Board of Governors might use to estimate the effects of an upcoming decision on monetary policy" is likewise unreliable. *See* Ex. A at 28. Professor Engel did not work with Defendant at the Federal Reserve Board and, unless he is basing his opinions on what Defendant told him about his work at the Federal Reserve Board, he has no basis to opine on what information Defendant had access to at the Federal Reserve Board. More importantly, Professor Engel's opinion on this topic seems to be more akin to fact witness testimony, which means that he needs to have personal knowledge of Defendant's work at the Federal Reserve Board. Defendant cannot vicariously testify about his work at the Federal Reserve Board and his theory of the case through the facade of an expert witness.

*Second*, Professor Engel's opinion about whether Defendant has an innocuous explanation for his possession of Trade Secrets 2, 3, and 4 is unsupported and impermissible fact witness testimony by an expert. "Rule 702 precludes [experts] from offering opinion testimony about the credibility of parties or witnesses." *Halcomb*, 526 F. Supp. 2d at 29. If one of Defendant's

10

arguments at trial is that he possessed Trade Secrets 2, 3, and 4 for academic research and not to misappropriate them to benefit the Chinese government, its agents, or its instrumentalities, then Professor Engel's opinion that this explanation is "reasonable" effectively supplants the jury's role as factfinder. Such "musings as to defendants' motivations would not be admissible if given by any witness—lay or expert." *Taylor v. Evans*, 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997). Rule 702 does not permit expert opinion testimony to provide an alternative explanation for why a defendant may have taken a certain action. Such advocacy is for Defendant's able counsel, not his expert. For "[w]hen expert witnesses become partisans, objectivity is sacrificed to the need to win." *Cacciola v. Selco Balers, Inc.*, 172 F. Supp. 2d 175, 184 (E.D.N.Y. 2001).

At bottom, most of the proposed expert opinion testimony of Professor Engel rests "unreliably on a foundation of sand that *Daubert* and *Kumho* took aim at." *Id.* Accordingly, he should be precluded under Rule 702 from testifying about topics two, three, and four described above.

**D.    Professors Swanson's and Engel's Testimony Should Be Excluded under Rule 403**

Even if the Court concludes that Professor Swanson's and Engel's testimony satisfies the requirements of Rules 702 and 704, the Court should still exclude the evidence under Federal Rule of Evidence 403 because the testimony's probative value is substantially outweighed by the danger of confusing the issues, misleading the jury, and wasting time.

*First*, as discussed above, much of Professor Swanson's and Engel's proposed testimony is based on conjecture and limited anecdotal experiences. Other aspects of their testimony are common sense and likely well within the ken of the average juror. *See e.g.*, Ex. A at 28-29 ¶ 4 ("It is completely normal that graduate students introduce them[selves] to me and maintain a

11

relationship with me over the years . . .").  Therefore, the probative value of Professor Swanson's and Engel's testimony is limited and admitting their testimony would waste the jury's time.

*Second*, Professors Swanson's and Engel's stature as economics professors could mislead the jury into believing that their opinions about the reasonableness and innocence of Defendant's actions should carry greater weight.  "[T]here is often an inherent danger with expert testimony unduly biasing the jury because of its aura of special reliability and trust." *United States v. Boney*, 977 F.2d 624, 631 (D.C. Cir. 1992).  Permitting Professors Swanson and Engel to testify "may cause jurors to surrender their own common sense in weighing the testimony and instead cause them to rely too heavily" on Professor Swanson's and Engel's testimony.  *United States v. Libby*, 461 F. Supp. 2d 3, 18 (D.D.C. 2006).  This risk is especially acute here because Professors Swanson and Engel are testifying about the reasonableness of Defendant's actions and his state of mind in a highly specialized profession.

*Lastly*, Professor Swanson's testimony about the Federal Reserve Board and trade secrets has a substantial risk of confusing the jury.  Professor Swanson plans to testify that the Federal Reserve Board "does not derive monetary or economic value from keeping things secret."  Ex. A at 11 ¶2.  But even if that is true, it is irrelevant.  The crime of conspiracy to commit economic espionage does not require the Government to prove that Defendant, in fact, misappropriated trade secrets, nor that the trade secrets Defendant sought to misappropriate from the Federal Reserve Board provided independent economic value *to the Federal Reserve Board*.  *See* 18 U.S.C. § 1839(3) (defining trade secret as, among other things, "deriv[ing] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information").  Hence, Professor Swanson's testimony about whether FOMC Class II information

provides monetary or economic value to the Federal Reserve Board is not relevant and could mislead the jury into misinterpreting the law as instructed by the Court.

Professor Swanson's proposed testimony about whether FOMC Class II information *could* be a trade secret also risks confusing the jury about what it must find to convict Defendant of conspiring to commit economic espionage. Professor Swanson's testimony that no one at the Federal Reserve Board used the phrase "trade secret" implies that if Defendant did not know that what he conspired to misappropriate was called a trade secret, then he could not be guilty of the crime. This is not the law. *See, e.g.*, *United States v. Zheng*, 113 F.4th 280, 298 (2d Cir. 2024) ("To begin with, the government was not required to prove, for purposes of the conspiracy count, that the stolen materials were actually trade secrets. It is well established that factual impossibility is not a defense to inchoate crimes, such as conspiracy to commit an offense.") Professor Swanson's testimony would confuse the issue for the jury by introducing irrelevant testimony that is not probative of any elements of the crime. This is yet another reason why the Court should exclude Professor Swanson's testimony under Rule 403.

## CONCLUSION

For the foregoing reasons, the Court should grant the Government's motion to exclude the proposed expert opinion testimony of Professors Swanson and Engel under Federal Rule of Criminal Procedure 16(d) and Federal Rules of Evidence 702, 704, and 403. At a minimum, the Court should hold a *Daubert* hearing in advance of trial to satisfy its gatekeeping role and ensure that Professor Swanson's and Engel's testimony is relevant and reliable.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

*/s/ Adam P. Barry*

13

ADAM P. BARRY
Cal. Bar No. 294449
Thomas N. Saunders
N.Y. Bar No. 4876975
Assistant United States Attorneys
National Security Section
601 D Street, NW
Washington, D.C. 20530
Office: 202-252-7793
Email: adam.barry@usdoj.gov;
thomas.saunders@usdoj.gov

Nicholas O. Hunter
D.C. Bar No. 1022355
Yifei Zheng
N.Y. Bar No. 5424957
Trial Attorneys
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, D.C. 20530
Telephone: (202) 353-3434
E-mail: nicholas.hunter@usdoj.gov;
yifei.zheng@usdoj.gov
Telephone: (202) 353-3434