UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**JOHN HAROLD ROGERS,**<br><br>**Defendant.** | Case No. 25-cr-033 (DLF) |

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE DEFENDANT'S PROPOSED EXPERT OPINION TESTIMONY**

The government's motion in limine, ECF No. 48, filed on December 23, 2025, to exclude Defendant's proposed expert opinion testimony should be rejected. In its motion, the government argues that the disclosures fail to satisfy the disclosure requirements of Rule 16, because they do not do two things: (1) "provide any explanation for the 'bases and reasons' for the witnesses' opinions" and (2) does not "state (or identify) any cases in which either witness[1] has testified in the previous four years." Gov. Mot. Limine to Exclude Def. Expert Testimony p. 1 (ECF No. 48). Neither Dr. Swanson nor Dr. Engel has provided testimony by deposition or at trial in the past four years.

The government subsequently argues that the testimony would violate Fed. R. of Evidence 403, 702, and 704 for various reasons, but ultimately disregards the information

---

[1] It is particularly insightful that the government cries foul for failing to identify cases in which witnesses have testified in the previous four years when the government's own witness disclosures fail to do the same thing except for Dr. Barry Naughton, who testified three times for government and had been precluded from testifying for the government in *United States v. Lieber*, No. 1:20-CR-10111-RVVZ, 2021 U.S. Dist. LEXIS 239677, at *1 (D. Mass. Dec. 13, 2021). The government notice for Mr. Greene does not mention whether Mr. Green has testified in any case in the previous four years; the same is true for Special Agent Kistler and Dr. Setser. See Exhibits A, B, and D to Def. 2nd Mot. Limine (ECF No. 37).

provided in Dr. Swanson and Dr. Engel's CVs and disclosures.  Moreover, the government had much of the same information from Dr. Swanson, because Defendant had included a declaration and CV for Dr. Swanson in his Motion to Dismiss Count One filed on September 15, 2025, ECF No. 32.  Regarding Dr. Engel, the Federal Bureau of Investigation has already interviewed Dr. Engel at least once related to this criminal case, and for various other reasons related to the instant case, Dr. Engel had been known to the government.  The government has had more opportunity than in most instances to prepare for cross-examination for these witnesses.

Both Dr. Swanson and Dr. Engel are qualified to offer the opinions that are described in Defendant's Notice as to their testimony.

I.  **DR. SWANSON IS A QUALIFIED EXPERT TO GIVE THE OPINIONS DESCRIBED IN HIS NOTICE.**

Dr. Swanson has personal experience working at the Federal Reserve.  His resume lists publications that focus on the work of the Federal Reserve.  For example, these are some of his recent publications:

- *The Macroeconomic Effects of the Federal Reserve's Conventional and Unconventional Monetary Policies*, IMF Economic Review 72(3), September 2024, 1152-1184.

- *The Federal Funds Market, Pre- and Post-2008*, Research Handbook of Financial Markets (Refet Gürkaynak and Jonathan Wright, eds., 2023), 220–236.

- *The Importance of Fed Chair Speeches as a Monetary Policy Tool*, American Economic Association Papers & Proceedings 113, May 2023, 394-400.

- *A Reassessment of Monetary Policy Surprises and High-Frequency Identification*, with Michael Bauer, NBER Macroeconomics Annual 37, 2023, 87-155.

- *An Alternative Explanation for the `Fed Information Effect,'* with Michael Bauer, American Economic Review 113, March 2023, 664-700.

He has been invited to make presentations at seminars involving the Federal Reserve and economists from a number of foreign countries.  These are the invited seminars and conference

presentations in which he has participated over the past two years:

- 2025: AEA Meetings, San Francisco; Duke University; European Central Bank; Bank for International Settlements; Macroeconomics Caribbean Conference, Bahamas; Society for Nonlinear Dynamics and Econometrics Conference, San Antonio (keynote speaker); Bank of Canada, Ottawa; Econometric Society World Congress, Seoul; East Asia Macroeconomics Conference, Tokyo (keynote speaker); National University of Singapore; Simon Fraser University; University of New South Wales, Sydney; Macroeconomic Policy Conference, Melbourne (keynote speaker); Banque de France, Paris; Asia Economic Policy Conference, San Francisco; University of Texas, Dallas.

- 2024: AEA Meetings, San Antonio; Conference on Monetary and Macroeconomics, Federal Reserve Bank of San Francisco; Federal Reserve Monetary Policy Framework Review, Brookings Institute (discussant); Federal Reserve Bank of Boston; Society for Economic Dynamics, Barcelona; Federal Reserve Bank of Kansas City Conference on Monetary Policy, Jackson Hole, Wyoming; Federal Reserve Bank of Atlanta; College of William & Mary; University of Illinois, Urbana-Champaign; **Hong Kong University Business School; Hong Kong University of Science and Technology; Chinese University of Hong Kong; Peking Business School, Shenzhen**; NBER ME Meeting, San Francisco; Santiago Macro Workshop, Chile. (Emphasis added)

Dr. Swanson's experience demonstrates that he is familiar with the work of economists at the Federal Reserve and around the world, including in China. He is capable of testifying based upon his own experience with the Federal Reserve, the Board as well as many of the Federal Reserve Banks (San Francisco, Boston, Kansas, Atlanta) as well as the Federal Reserve Monetary Policy Framework Review and other international banks and foreign universities.

He has the experience and first-hand knowledge to testify to whether the Federal Reserve has trade secrets, the relationship of Class II documents at the Federal Reserve to trade secrets, whether in his wide experience he has heard Federal Reserve economists talk about trade secrets, whether items 5 and 6 in the Indictment could possibly be trade secrets, and how an economist like John Rogers would be valued by foreign Universities.

Regarding the government's position that Dr. Swanson's testimony about the government's identified "Trade Secrets #5 and 6" are impermissible legal conclusions is

surprising to say the least. *See* Gov. Mot. Limine p. 6-7 ("Hence, his opinions that he 'thinks . . . [t]rade secrets 5 and 6 . . . are not trade secrets,' are impermissible legal conclusion.") (internal citations omitted). The government's argument ignores the obvious: Dr. Swanson is the original creator of the spreadsheets that the indictment charges as trade secrets 5 and 6. He knows as well as anyone how he created the spreadsheets and from where the data found therein comes. No one is better situated to inform the jury that the spreadsheets are based on publicly available information that is not owned by the Federal Reserve. In short, Dr. Swanson has the personal knowledge and expertise to explain to the jury exactly what these alleged "trade secrets" really are. Therefore, Dr. Swanson is qualified, uniquely so, to address the standard of whether the Federal Reserve had (a) taken reasonable measures to keep such information secret and (b) whether the information could not be readily ascertainable through proper means. See 18 U.S.C. § 1839(3)(A)-(B).

**II.      DR. ENGEL IS A QUALIFIED EXPERT TO GIVE THE OPINIONS DESCRIBED IN HIS NOTICE.**

Dr. Charles Engel is the Donald Hester Professor of Economics in the Department of Economics at the University of Wisconsin. He also has been a Research Associate at the National Bureau of Economic Research since 1989 and a Research Fellow at the Centre for Economic Policy Research since 2018. In addition, Dr. Engel's resume indicates he has been a Senior Fellow at the Globalization and Monetary Policy Institute of the Federal Reserve Bank of Dallas since 2008.

Significantly, he has been a Luohan Academy Distinguished Fellow since June 2021. As the Louhan Academy states on its website, it was founded on June 26, 2018 and describes itself as follows:

> Luohan Academy was founded in Hangzhou on June 26, 2018. It is an open research institute initiated by the Alibaba Group and

> launched by world-renowned social scientists, including seven Nobel Prize Laureates in economics. Over the past few years, the Academy has developed a world-leading digital economy research community, dedicated to exploring and shaping discourse and consensus around the profound social and economic transformations brought by digital technology. With a focus on the long-term future of humanity, the common goal is to serve society through research, reduce the cost for human society to embrace the technological revolution, and address the most important challenges facing humanity.

*About Us*, LUOHAN ACADEMY, https://www.luohanacademy.com/en/about/aboutus/ (last visited Dec. 26, 2025).

Since July 2013, Dr. Engel has been a Research Affiliate with the Research Centre for International Economics at the City University of Hong Kong. As his CV indicates, he also has served as a Visiting Scholar at the following Chinese Institutions: Yonsei University, October 2022; Peking University HSBC Business School, Shenzhen (May, 2019); Peking University (October 2018); and Tsinghua University (May 2017).

Dr. Engel has co-authored academic articles with Defendant, John Rogers. He has also co-authored articles with Chinese academics as his CV indicates. He also is familiar with Defendant Rogers' publications, field of study, and area of expertise.

Dr. Engel is a distinguished economist with experience with the Federal Reserve, with Chinese universities, and with Chinese academics. He is eminently qualified to testify on the basis of his experience and personal knowledge as to the type of research undertaken by Defendant and the nature of that research.

Dr. Engel indicates that he is prepared to testify as follows:

> I have reviewed the documents that are identified as "trade secrets 2-4," and my opinion is that it is reasonable for many reasons for Rogers to examine these types of documents as an academic researcher. When you are doing academic-style research, you need to know a lot about the real world. You base your theories on your knowledge of the real world, and to the extent that you can provide

>insight about currently policy decisions, you are able to provide a more general, basic perspective that may be helpful to other economists working at the Fed who are engaged in more day-to-day research about the current state of the economy.

The government objects to this testimony on the ground that it might corroborate testimony by Defendant as to his reasons for possessing documents and somehow "supplant" the jury's role in the case. Gov. Mot. Limine p. 11. This misreads Dr. Engel's testimony. He offers a reason why a researcher like Defendant would want to examine these documents, but he never seeks to opine that this actually was Defendant's purpose.

Similarly, Dr. Engel's experience with graduate students both in the United States and in China give him personal experience with respect to whether and how meetings between faculty and students might take place. He does not seek to opine as to whether any meeting upon which the government might rely were for legitimate reasons.

## CONCLUSION

The government has made much ado about how it needs four experts to testify about the People's Republic of China and how that government operates in order to prove Defendant's state of mind. The Court has yet to rule on our motion to exclude most of this testimony, but its relevance to the facts alleged in the indictment is not at all clear. Defendant seeks to rely on two experts who not only have wide experience with Federal Reserve matters but also have experience teaching and presenting material to Chinese audiences. Their testimony clearly is relevant to provide the defense explanation for actions attributable to Defendant.

December 29, 2025                    Respectfully submitted,

/s/ Stephen A. Saltzburg
Stephen A. Saltzburg (D.C. Bar No. 156844)
2000 H Street, NW

6

Washington, DC 20052
Tel.: (202) 994-7089
Fax: (202) 994-9811
Email: sasaltz@law.gwu.edu


<u>/s/ Jonathan K. Gitlen</u>
Jonathan K. Gitlen (D.C. Bar No. 990918)
Law Office of Jonathan K. Gitlen PLLC
900 19th Street, NW, Suite 500
Washington, DC 20006
Tel.: (202) 568-5788
Fax: (202) 301-8556
Email: jonathan.gitlen@jgitlenlaw.com


*Counsel for Defendant*