UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN HAROLD ROGERS,<br><br>Defendant. | Case No. 25-cr-033 (DLF) |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S THIRD MOTION IN LIMINE –
EXCLUSION OR LIMITATION OF 404(b) EVIDENCE**

On December 5, 2025, the government filed its notice of intent to introduce at trial evidence of other wrongs or bad acts under Federal Rule of Evidence 404(b). Gov. Not. Bad Acts Evid. (ECF No. 44). Although the government does not articulate a permitted use under 404(b)(2), Defendant recognizes that the circumstances of his interview that give rise to Count Two of the indictment might have some relevance but risk severe, unfair prejudice.

Devoid of any connection to the charged offenses, the government seeks to elicit the following information from an interview conducted by agents from the Federal Reserve Board of Governors, Office of the Inspector General ("OIG-Fed"):

- Defendant self-reported that he was being blackmailed;

- The blackmailers were threatening, inter alia, to publish intimate photographs of Defendant;

- Defendant initially denied having taken intimate photographs of himself;

- Defendant later suggested that he may have taken intimate photographs of himself more than three years earlier when using dating websites; and

- Investigation by the government determined:

    ⇒ Defendant was indeed being blackmailed *but not by the Chinese government or its agents*;

- ⇒ Defendant had solicited sexual content from numerous individuals;

- ⇒ Defendant sent intimate photographs of himself some of which had been taken while at Federal Reserve Board offices, during business hours, and could identify Defendant as a Federal Reserve Board employee;

- ⇒ The blackmailers were likely overseas, possibly in the Ivory Coast;

- ⇒ The blackmailers posed online as one or more potential love interests and then used information given to them to extort Defendant.

Gov. Notice Other Bad Acts Evid. p. 1-2 (emphasis added). The government concedes that Defendant had been blackmailed "but not by the Chinese government or its agents." Thus, it is clear that this evidence is irrelevant as to Count One of the indictment.

As for Count Two, the government implicitly acknowledges the significant risk of "undue prejudice (e.g., the government does not intend to introduce into evidence any of the intimate photographs)" associated with the 404(b) evidence. Presumably though, the government would offer a sufficiently vivid description of the intimate photographs. However, the false statements as identified in the Indictment appear to relate to two questions: (1) whether Defendant accepted money from Co-Conspirator 1 and (2) whether Defendant ever provided or shared any restricted Federal Reserve Board of Governors' information. See *id*. at 15-16 ¶¶ nn-oo. None of the Rule 404(b) evidence sheds light on these questions.

In the government's notice, the government's purpose for offering the aforementioned evidence is somewhat boilerplate. The government claims:

> The information is relevant for multiple reasons, including but not limited to the following. It is essential for understanding the context of the February 8, 2020 interview, which forms the basis of Count 2; for understanding the questions asked and answers given during that interview; for understanding the defendant's state of mind, motivations, and *mens rea* during that interview; for understanding the chain of custody of evidence that the defendant agreed to provide to the OIG during that interview (specifically, allowing the OIG to make a copy of his iPad hard drive); for explaining why the defendant's employment at the Federal Reserve was terminated; and

2

> to neutralize any effort to suggest that the defendant's criminal conduct was the product of duress stemming from the blackmail threats.

Gov. Notice Other Bad Acts Evid. pp. 2-3.

In the D.C. Circuit, courts apply a "two-step analysis in considering whether Rule 404(b) evidence is properly admitted. The first step requires only that the evidence be probative of some material issue other than character. If so, the Court must then determine whether, under Federal Rule of Evidence 403, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *United States v. Slough*, 22 F. Supp. 3d 16, 21 (D.D.C. 2014) (citations omitted). Case law suggests that under Federal Rule of Evidence 404(b)(2), bad acts evidence may be admissible "so long as they are closely related to the offense." *United States v. Long*, 328 F.3d 655 (D.C. 2003). Here, this is not the case.

There is an obvious disconnect between the government's reasons for introducing this information and the actual information the government seeks to elicit. The information regarding being blackmailed, sending nude photos, soliciting explicit photographs is not closely related to either offense in this case, and therefore is not a fact of consequence in determining the action. *See* Fed. R. Evid. 401(b). It is irrelevant for either of the charged offenses why OIG-Fed agents asked about providing sensitive information to Chinese agents, because the questions themselves almost present as a non sequitur to an interview supposedly about whether criminal actors were attempting to extort Defendant by threatening to embarrass Defendant or to harm Defendant's family. The same is true when considering the questions regarding whether Defendant ever received money from Chinese agents. This had no bearing on the Defendant's taking nude photographs of himself or soliciting explicit materials from anonymous strangers on the internet.

In short, the government is attempting to offer character evidence; namely, that

Defendant was not forthcoming in answering questions regarding the blackmail attempts and the nude photos, so he must have been untruthful when asked about the Chinese matters that constitute Count Two of the indictment. This is precisely what Rule 404(b) prohibits.

Defendant acknowledges that the government has a legitimate reason for putting in context the interview in which the alleged false statements were made, since the jury should be aware of why Defendant was being interviewed. Defendant does not object to the government eliciting evidence that the Federal Reserve was investigating misuse of Defendant's government-issued cell phone and email for private communications so long as the evidence is clear that misuse of the phone and email had nothing to do with China.

Since misuse of government email could be a reason for terminating employment as well as investigating a government employee, evidence that the investigation was into cell phone and email misuse would inform the jury that the interview placed Defendant at risk of termination and thus could have had an impact on his state of mind during the interview. But there is no justification for getting into the sordid details associated with Defendant's emails and the resulting exposure to blackmail.

Thus, Defendant urges the Court to limit the Rule 404(b) evidence to the following: OIG-Fed interviewed Defendant related to Defendant's use of his Fed-provided phone and email account for personal matters that included exchanges of embarrassing personal information in violation of Federal Reserve policies, but that had no relation to China. This would provide context for the interview and avoid unfair prejudicial details that would confuse the issues and mislead the jury.