UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | Case No.:  25-cr-00033 (DLF) |
| v. | : | |
| | : | |
| **JOHN HAROLD ROGERS,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL THE GOVERNMENT TO IDENTIFY *BRADY* MATERIAL

The Defendant's Motion to Compel the Government to Identify *Brady* Material in the discovery (Dkt. No. 50) is neither a true motion in limine nor a *Brady* request.  The government has provided and continues to provide to the defense all discoverable information in its possession and control.  Now, a few weeks before trial, the defendant seeks to force the government to comb through the discovery for him and label material that the government believes is *Brady* material.[1] That is not what *Brady* requires.  The law does not require the government to do the defense's job for it, especially when the defense has not requested any *specific* information that it believes constitutes *Brady*.  The government cannot predict the defense's trial strategy and select potentially helpful documents.  The defense has not yet articulated a legally justifiable defense based in law or the evidence, or even attempted to articulate the type of information it would consider helpful to it.  And in all events, the volume of potentially relevant discovery is limited.  The defendant and his able counsel have ample time to review it and use anything they consider helpful at trial.

---

[1] The defendant's demand is not even limited to the *recently provided* discovery that he complains about in his motion.  He seeks to have the government comb through even the discovery he has had for the better part of year and label it for him.

1

**Background of Discovery**

The government began providing discovery in this case on March 20, 2025.  The discovery in this case consists of a variety of electronic evidence including, for example, (1) forensic images of electronic devices obtained by the Office of Inspector General ("OIG") for the Federal Reserve Board ("FRB") including the defendant's FRB-issued computers, his FRB-issued cell phone, and a personal iPad he provided to the FRB OIG voluntarily; (2) electronic devices seized on the day the defendant was arrested in January 2025, including two iPhones; (3) returns from search warrants issued to Google for the defendant's and his primary co-conspirator's gmail accounts; and (4) returns from search warrants issued to Apple for the defendant's iCloud account.  To help guide the defendant to the most relevant evidence, the government also produced an 84-page slide presentation of "hot docs" to the defendant in March 2025.  This presentation outlined the evidence that the government believed was most inculpatory and relevant to defendant's guilt.  Moreover, given that the primary of the two charges is a conspiracy count, the vast majority of relevant evidence is straightforward to locate.  It exists in the email and WeChat[2] communications between the defendant and his two co-conspirators

The government understands its discovery obligations are ongoing and has continued to produce new information that it obtains during its trial preparations.  The government has also audited its past productions to ensure completeness, and provided any material that was inadvertently omitted expeditiously.  As the defendant notes, the government discovered that some of the contents of the defendant's and his co-conspirators gmail accounts had not been produced

---

[2] WeChat is a popular social and payments platform in the People's Republic of China ("PRC") that includes a text-messaging functionality.  The government obtained the relevant WeChat messages between the defendant and his co-conspirators from the defendant's electronic devices and from backups in his iCloud account.

due to an error in processing information through its discovery platform. Upon discovering the error, the government promptly determined the scope of the error and produced the remainder of the gmail accounts on December 11, 2025. The government provided the missing emails, as it has done for material throughout the case, in an organized format designed for uploading, processing, searching, and filtering in an electronic discovery platform like Everlaw or Relativity.

Although there were several thousand emails in the government's supplemental production for the gmail accounts, the overwhelming majority of those emails are spam emails of no evidentiary value. Those emails can be eliminated from consideration through basic filtering operations on discovery tools like Relativity. For example, the government's own discovery tool reports that of 8,528 emails in the defendant's co-conspirators' email accounts produced on December 11, 2025, there are only 267 unique email threads between the defendant and his co-conspirator, only 21 of which have more than three emails in the thread and most of which are quite short. By contrast, there are 5,469 spam emails from Twitter (now X), 421 from the New York Times, and 378 from dowjones.com, to name just a few examples. Because the government provided the discovery in an organized format—load-ready for a modern electronic discovery platform—the defense has all the information and meta-data it needs to quickly filter the material to a low volume of emails of potential relevance.

## Legal Standard

*Brady* is a rule of disclosure. The government must "disclose evidence favorable to the accused . . . whether the evidence is material either to guilt or to punishment." *In re Sealed Case No. 99-3096*, 184 F.3d 887, 891 (D.C. Cir. 1999) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)) (internal quotation marks omitted). There is no contention that the government has *failed* to disclose *Brady* material. *See* Def. Br. at 1 (accusing the government of "inundating Defendant

with all [the government's] collected evidence"). Instead, the defendant wants the government to specifically point him to evidence that he might consider helpful to him.

"In cases involving voluminous discovery, courts are wary of requiring the government to, in effect, do defense counsel's work for them and of inserting itself into the fray of micromanaging discovery in these cases." *United States v. Chansley*, No. 1:21-cr-3, 2023 WL 4637312, at *13 (D.D.C. July 20, 2022) (internal quotation marks omitted). Although the D.C. Circuit has not directly addressed the issue, several courts of appeals across the country make clear that "[a]s a general rule, the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence." *United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009); *see also United States v. Warshak*, 631 F.3d 266, 297 (6th Cir. 2010) (same); *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005) ("*Brady* and its progeny . . . impose no additional duty on the prosecution team members to ferret out any potential defense-favorable information from materials that are so disclosed."); *Rhoades v. Henry*, 638 F.3d 1027, 1039 n.12 (9th Cir. 2011) ("no authority requiring the prosecution to single out a particular segment of a videotape" that the state had disclosed.).

As the *Skilling* Court explained, the government nonetheless may not act in "bad faith in performing its obligations under *Brady*." *Skilling*, 554 F.3d at 577. The government thus cannot "pad" discovery "with pointless or superfluous information to frustrate a defendant's review of the file." *Id.* And "the government may not hide *Brady* material of which it is actually aware in a huge open file in the hope that the defendant will never find it." *Id.* The court in *Skilling* found that the government had mitigated any concerns by providing discovery that "was electronic and searchable" and a set of "hot documents" of relevance to the case. *Id.* Moreover, there was "no

evidence that the government found something exculpatory but hid it in the open file with the hope that [defendant] would never find it." *Id.*

The defendant cites *United States v. Saffarinia*, 424 F. Supp. 3d 46, 86 (D.D.C. 2020)—a non-binding district court case—as an example where a court required the government to identify *Brady* material in voluminous discovery. The discovery in *Saffarinia,* however, comprised over 3.5 million pages of documents. And the court only required the government "to identify *Brady* material *already known to it* based on its *existing knowledge* of the documents it collected and reviewed in the first instance." 424 F. F. Supp. 3d at 86 (emphases in original); *accord Chansley*, 2023 WL 4637312 at *13. Even considering *Saffarinia*, however, "the government is not required to sift through the evidence in search of anything that could help the defense." *Chansley*, 2023 WL 4637312 at *13. "In other words, *Saffarinia* does not require the government to specifically identify to a defendant any evidence in the government's voluminous disclosures that could conceivably qualify as *Brady* material based on the government's anticipation of any possible defense theory." *Id.*

### Argument

The relatively low volume of recent discovery in this case does not warrant the type of departure from the general rule that occurred in *Saffarinia*. As the defendant admits, the volume of recent discovery is nothing like that at issue in *Saffarinia*. *See* Def. Br. at 3. *Saffarinia* involved 3.5 million pages of documents. 424 F. Supp. 3d at 53. *United States v. Hsia*, 24 F. Supp. 2d 14 (D.D.C. 1998)—also cited by the defendant—involved over 600,000 documents at a time predating modern discovery databases. *Id.* at 28. Here, the defendant complains primarily about a recent production of emails comprising about 267 unique email threads of potential relevance (i.e., communications between the defendant and his co-conspirators), the vast majority of which

have only a few short emails in them.  The defendant's counsel could filter and triage those documents for relevance and helpfulness in less time than it took to draft the instant motion.

The defendant has ample time to review the recent discovery and use anything he thinks is helpful at trial.  The government produced the recent productions at least a month before the start of trial, a greater period of time compared to other disclosures that courts have found timely in advance of and during trial.  *See*, *United States v. Tarantino*, 846 F.2d 1384, 1417 (D.C. Cir. 1988) (three weeks of lead time was sufficient); *United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir. 1976) (*Brady* production during trial upheld); *United States v. Blackley*, 986 F. Supp. 600, 605 (D.D.C. 1997) (productions one and three days before trial adequate); *see also United States v. Driscoll*, 984 F.3d 103, 109-10 (no *Brady* violation where the defendant obtains the evidence "in time to use it at trial").

To give the defense what it is asking for, the government would have to guess at the defense theories and then sift through the evidence to try to find evidence supporting those theories.  But that is not the government's job.  And even if it were, the defendant has not attempted to articulate for the government—in this motion or in the single email precipitating it—the kinds of evidence it would consider to be helpful.  Nor has the defendant provided an example of such material from the discovery he has had for the better part of a year.  The government is in no position to engage in such guesswork, and the law does not require it to do so.  *See Chansley*, 2023 WL 4637312 at 13 ("[T]he government is not required to sift through the evidence in search of anything that could help the defense."); *see also Skilling*, 554 F.3d at 576.  To the extent the defense needs to be told where to look for potentially helpful information that the government has not already identified for it in the government's hot-documents presentation in March 2025, it knows exactly where to

look: in the finite and modest amount of communications between the defendant and his co-conspirators that form the backbone of the government's conspiracy case.

The government is not aware of anything in the recently provided discovery that is materially different from the discovery the defendant has had for months.  Much of the evidence in this case consists of email and WeChat text communications between the defendant and his co-conspirators that span the timeframe of the conspiracy.

The guesswork the government would have to engage in to identify helpful information is amplified by the fact that the defendant has not yet articulated for the government a defense theory that is supported by law.  The government should not be responsible for predicting extra-legal defenses to the crime of economic espionage and then rooting around through the evidence to support such defenses.  For example, in a prior motion the defendant stated "[t]he defense in this case is that the Defendant was fooled by alleged co-conspirators 1 and 2 into believing they were Ph.D. economists" instead of PRC intelligence operatives.  Dkt. 36-1 at 3.  But the crime of economic espionage does not depend on whether the defendant knew the true identities of his co-conspirators.  Instead, the defendant must act "intending or knowing that the offense will benefit any foreign government, foreign instrumentality, or foreign agent."  18 U.S.C. § 1831(a).  Based in large part on the defendant's admission in an interview with the FRB OIG, the government plans to prove at trial that the defendant knew that his co-conspirators were working for the benefit of the PRC government, *even if* he believed they were doing so as Ph.D. economists.  The defendant appears to want the government to sift through the email and text messages between the defendant and his co-conspirators and identify every document suggesting that the co-conspirators used cover identities to conceal their true identities.  But that is conceivably every single relevant communication between the defendant and his co-conspirators, the vast majority of which the

defendant has had since shortly after the defendant's arrest in January 2025. It is not the government's job to parse and label the discovery in such fashion.

Similarly, in recent disclosures, the defendant's purported experts have espoused theories that the Federal Reserve information at issue in this case cannot be a trade secret under the Economic Espionage Act because the Federal Reserve could not obtain economic value from the information. *See* Statement of Opinions of Dr. Eric. T. Swanson ¶ 3 (Dkt. No. 48-1 at 12). The definition of "trade secret," however, does not require the owner of the information to obtain economic value from it. Instead, the information must derive "independent economic value, actual or potential, from not being generally known to . . . *another person* who can obtain economic value from" the information. 18 U.S.C. § 1839(3)(B) (emphasis added). Again, the government should not be forced to guess about the defendant's extra-legal defenses or strategies to confuse the jury and then root around in the evidence for support.

## Conclusion

The Court should deny the defendant's motion to have the government comb through all the discovery in this case and label anything that he could hypothetically consider helpful to him. The law does not impose such an obligation on the government. The defense is in a vastly superior position to perform that function given its knowledge of the defendant's purported defenses and trial strategies and the relatively low volume of potentially relevant information it would need to review. In all events, the government is not currently aware of any information it would even point the defendant to in response to its request. To comply, the government would need to sift through the evidence and make determinations that the defense should be making in the first instance. Even *Saffarinia* does not call for such a result.

Respectfully submitted,

JOHN A. EISENBERG
Assistant Attorney General for National Security

*/s/ Nicholas O. Hunter*
NICHOLAS O. HUNTER
D.C. Bar No. 1022355
Trial Attorney
National Security Division,
U.S. Dep't of Justice
950 Pennsylvania Ave, NW
Washington, D.C. 20530
E-mail: nicholas.hunter@usdoj.gov
Telephone: (202) 353-3434

YIFEI ZHENG
N.Y. Bar No. 5424957
Trial Attorney
National Security Division,
U.S. Dep't of Justice
950 Pennsylvania Ave, NW
Washington, D.C. 20530
E-mail: yifei.zheng@usdoj.gov
Telephone: (202) 353-0252

JEANINE FERRIS PIRRO
United States Attorney

THOMAS N. SAUNDERS
Assistant United States Attorney
N.Y. Bar No. 4876975
National Security Section
601 D Street, NW, Room 5-120
Washington, D.C. 20530
Office: 202-252-7790
Email: thomas.saunders@usdoj.gov

ADAM P. BARRY
Assistant United States Attorney
Cal. Bar No. 294449
National Security Section
601 D Street, NW, Room 5-120
Washington, D.C. 20530
Office: 202-252-7793
Email: adam.barry@usdoj.gov