**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | **Case No.:  25-cr-00033 (DLF)** |
| **v.** | **:** | |
| | **:** | |
| **JOHN HAROLD ROGERS,** | **:** | |
| | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S SUPPLEMENTAL BRIEF REGARDING
TRADE SECRET JURY INSTRUCTIONS**

On December 16, 2025, the Court requested further briefing regarding two issues in the parties' filing regarding jury instructions.   Dkt. 47 (Court's Order); Dkt. 45-1 (proposed instructions).  *First*, the Court requested further briefing on the appropriate instructions regarding what the defendant and his co-conspirators must have believed about the information they agreed to misappropriate.   Based primarily on authorities in the Sixth Circuit, the government proposed an instruction that the government must prove the defendant "believed the information was *proprietary*, meaning belonging to someone else who has exclusive rights to it."  Dkt. 45-1 at 34 (emphasis added).  The defendant's proposed instruction required that he believed the information was a "trade secret" as subsequent instructions defined that term.

*Second*, the Court directed the parties to provide authorities to support the following instruction—which was undisputed except as related to the dispute about "proprietary" versus "trade secret" information:

> It is not necessary for the government to prove that the information the alleged conspirators intended to misappropriate was, in fact, a trade secret. It is also not necessary for the government to prove the defendant knew the information met all of the legal requirements of a "trade secret" as I defined that term. What is required is proof beyond a reasonable doubt that the defendant and at least one other member of the conspiracy knowingly agreed to misappropriate information that they believed was proprietary and

did so for the benefit of a foreign government, foreign instrumentality, or foreign agent. This is because the defendant's guilt or innocence on this charge depends on what he believed the circumstances to be, not what they actually were.

Dkt. 45-1 at 36 (footnote omitted).

As further described below, and subject to slight modifications in other instructions, the government agrees to the defendant's proposed instruction requiring that he believed the information at issue in the conspiracy was a trade secret. The United States, however, requests a more fulsome instruction clarifying that the defendant need not have known the legal definition of "trade secret." Instead—as the authorities supporting the defendant's proposed instruction indicate—the defendant must merely have known "as a factual matter" that the information was a trade secret, meaning that the information "had the general attributes of a trade secret," as set forth in the Court's definition of that term. *See United States v. Hanjuan Jin*, 833 F. Supp. 2d 977, 1012 (N.D. Ill. 2012).

A. **The United States Consents to the Defendant's Proposed Jury Instruction Regarding the Defendant's Belief, with Certain Modifications**

Given the facts of this case, the government does not believe it necessary for the Court to resolve the complex issue of statutory construction it identified in its request for further briefing. The government's proposed instruction, requiring a belief that information be "proprietary" as opposed to a "trade secret" is a lawful instruction that avoids some strange results that could arise in other cases with different facts. For example, the government's proposed instruction avoids a situation where a defendant could be acquitted because of his own extreme or unreasonable beliefs in what constitutes "reasonable measures" to protect trade secrets. *See* 18 U.S.C. § 1839(3) (defining "trade secret" in part as information that the owner of "has taken reasonable measures to keep . . . secret"). It would be odd if a defendant could be acquitted for economic espionage or theft of trade secrets because he believed, for example, that extreme and unduly burdensome

measures should have been taken by the owner of a trade secret, but were not.  *See, e.g.*, *Rehaif v. United States*, 588 U.S. 225, 183–84 (2019) (reaffirming that the presumption of scienter applies to substantive elements but that the scope of a mens rea term ultimately depends on statutory text, structure, and Congressional intent).  Likewise, extending the mens rea requirement to definitional language in another section of the code extends beyond that which the Supreme Court and the presumption of mens rea require.  *See Flores-Figueroa v. United States*, 556 U.S. 646, 653 (2009) (noting that the statute in *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), was "more ambiguous" because the modified statutory terms appeared in a different subsection from the word "knowingly"); *see also United States v. Yermian*, 468 U.S. 63, 68–70 (1984) (holding that "knowingly" does not modify separate jurisdictional language and that proof of knowledge of the federal jurisdictional predicate is not required).

Nonetheless, the government is aware that the validity of its originally proposed instruction presents an issue of first impression in the D.C. Circuit.  And given the facts of this case, the government does not believe that there would be a meaningful distinction in the eyes of the jury as between the two proposed instructions.  With the modification described below, the government thus does not object to the defendant's proposed instruction regarding the issue of the defendant's beliefs about "proprietary" versus "trade secret" information.

The government requests a modification to the proposed instruction to avoid jury confusion and avoid imposing an unreasonable mens rea requirement that is not supported by case law.  The defendant's recent expert disclosures show that he intends to argue that to be found guilty, the government must prove that the defendant knew about the statutory term "trade secret" and its statutory definition, and that he specifically intended that his conduct involved what he himself would have called "trade secrets."   For example, defendant's purported expert Dr. Eric T. Swanson

intends to testify that "no one at the Federal Reserve talks about 'trade secrets' and that he has 'never heard anyone at the Federal Reserve ever refer to any information at the Federal Reserve in those terms.'"  Dr. Eric T. Swanson Statement of Opinions, Dkt. 48-1 at ¶ 7.

The law does not require the defendant or his co-conspirators to have known about or used the specific statutory term "trade secrets."  *See Hanjuan Jin*, 833 F. Supp. 2d at 1013 ("[T]he Court does not conclude that the Government is required to prove that Jin knew that her conduct was illegal or that the information she possessed met the statutory definition of a trade secret."); *United States v. Chung*, 633 F. Supp. 2d 1134, 1145 (C.D. Cal. 2009) ("The Government must prove that [the defendant] knew that the information he possessed was a trade secret, but not that he knew his behavior was illegal.").  That is because "ignorance of the law is no excuse."  *Elonis v. United States*, 575 U.S. 723, 734-35 (2015) ("[A] defendant generally must know the facts that make his conduct fit the definition of the offense, even if he does not know that those facts give rise to a crime." (internal quotation marks and citations omitted)); *United States v. Hsia*, 176 F.3d 517, 522 (D.C. Cir. 1999) (referring to the "general rule that ignorance of the law is no excuse" and finding "that the government need not prove that [the defendant] knew her acts to be unlawful.").

Instead—as the cases supporting the defendant's proposed instruction state—the statutory term "knowingly" in § 1831 "requires the Government to prove that a defendant knew, as a factual matter, that the information [he] possessed had the general attributes of a trade secret."  *Id.* at 1012.  Those general attributes are what appear in the agreed instructions regarding the definition of a trade secret: (1) the owner of the information took "reasonable measures" to keep the information secret, and (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means."  *See* 18 U.S.C. § 1839(3); Dkt. 45-1 at 35.

Accordingly, the government proposes that the otherwise undisputed instruction be modified to read as follows:

> The government must prove that the defendant and his alleged co-conspirators agreed to misappropriate information that they believed had the general attributes of a trade secret. It is not necessary for the government to prove that the information was, in fact, a trade secret. What is required is proof beyond a reasonable doubt that the defendant and at least one other member of the conspiracy knowingly agreed to misappropriate information that they believed was a trade secret and did so for the benefit of a foreign government, foreign instrumentality, or foreign agent. This is because the defendant's guilt or innocence on this charge depends on what he believed the circumstances to be, not what they actually were.
>
> It is also not necessary for the government to prove that the defendant or his alleged co-conspirators knew about the Economic Espionage statute or its particular definition of "trade secret." Nor is the government required to prove that the defendant knew that the information met all of the legal requirements of a "trade secret" as I just defined that term. Instead, the government must prove that the defendant and one other person conspired to misappropriate trade secrets--meaning, information they believed or intended to have the general attributes of a trade secret.

**B. Authority For the Instruction That the Information at Issue Need Actually Be a Trade Secret**

The government's modified instruction (above) is supported by *United States v. Hanjuan Jin*, 833 F. Supp. 2d 977 (N.D. Ill. 2012); *United States v. Chung*, 633 F. Supp. 2d at 1143 (C.D. Cal. 2009); and *United States v. Hsu*, 155 F.3d 189 (3d Cir. 1998). The modified instruction that "[i]t is not necessary for the government to prove that the information the alleged conspirators intended to misappropriate was, in fact, a trade secret" derives from well-settled law that impossibility is not a defense to a charge of conspiracy. *See, e.g.*, *United States v. Lieu*, 963 F.3d 122, 126 (D.C. Cir. 2020) (describing the "settled principle that impossibility is not a defense to an inchoate crime, so long as the defendant had the requisite state of mind to commit the underlying offense.").

The seminal case on this issue as applied to trade-secret cases is *United States v. Hsu*, 155 F.3d 189 (3d Cir. 1998). The Court in *Hsu* directly addressed the issue of whether the Economic

Espionage Act required proof that information was actually a trade secret when—as here—the government has charged inchoate crimes like attempt or conspiracy. *Id*. at 198, 202. After concluding that legal impossibility was not a defense to an attempt charge, the Court concluded that "[it] naturally follows that the government need not prove that an actual trade secret was used during an [Economic Espionage Act] investigation, because a defendant's culpability for a charge of attempt depends only on the circumstances as he believes them to be, not as they really are." *Id.* at 203.

The *Hsu* court also held that the same logic applied to conspiracy charges, to which—unlike for attempt charges—the Third Circuit had *never* recognized a defense of impossibility. "It is . . . the conspiratorial agreement itself . . . that forms the basis for conspiracy charges." *Id.* at 203. If the conspirators conspired to steal trade secrets, it does not matter if the information they stole actually was a trade secret. Their intent and beliefs about the information control.

*Hsu* noted that "*every* Circuit that has considered the defense of impossibility" in the context of an attempt charge "has rejected it." *Id.* at 202 (emphasis in original) (internal quotation marks omitted). The court had "never recognized the defense for conspiracy charges" and "was persuaded by the views of . . . our sister circuits that the impossibility of achieving the goal of conspiracy is irrelevant to the crime itself." *Id.* (citing cases).

Although the D.C. Circuit has not had occasion to directly decide the issue in *Hsu*, the same analysis should apply here. In *Lieu,* the D.C. Circuit described the "settled principle that impossibility is not a defense to an inchoate crime"—such as conspiracy—"so long as the defendant had the requisite state of mind to commit the underlying offense." 963 F.3d at 126. "For example, a defendant may be convicted of attempting to sell cocaine even if he was really peddling sugar" and "a defendant may be convicted of pandering or soliciting child pornography even if the

disputed images do not depict an actual child." *Id.* at 127 (citing *United States v. Williams*, 553 U.S. 285, 300 (2008); W. LaFave, 2 Substantive Criminal Law § 11.5(a)(2)(3d ed. 2017)). Based on the same authority, the D.C. Circuit recently stated in a trade secret theft case, without directly deciding the issue, "that the defendant's belief [regarding trade secrets], not the actual status of targeted information, is the correct standard" in proving a conspiracy to steal trade secrets. *United States v. Shi*, 991 F.3d 198, 210 (D.C. Cir. 2021).

The defendant agrees that the defendant's beliefs control, not the actual status of information as a trade secret. The defendant did not object to the government's original proposed instruction other than its reference to "proprietary information." And in its first motion in limine, the defendant stated:

> It is clear that both the statute and the indictment are focused on Defendant's knowledge and intent. The Government is not required to prove that the information the alleged conspirators intended to misappropriate was, in fact, a trade secret. What is required, however, is proof beyond a reasonable doubt that the defendant and at least one other member of the conspiracy knowingly agreed to misappropriate information that they reasonably or firmly believed was a trade secret and did so for the benefit of a foreign government or foreign instrumentality. This is because the defendant's guilt or innocence on this charge depends on what he believed the circumstances to be, not what they actually were. See United States v. Liew, 856 F.3d 585, 594, 600 (9th Cir. 2017); United States v. Nosal, 844 F.3d 1024, 1044-45 (9th Cir. 2016)

Dkt. No. 36-1 at 2.

### C. Conclusion

For the foregoing reasons, the government submits that the defense instruction regarding the defendant's belief may be used, provided that the instruction that the court requested additional authorities for is modified as described herein, consistent with existing case law.

Respectfully submitted,

JOHN A. EISENBERG
Assistant Attorney General for National Security

*/s/ Nicholas O. Hunter*
NICHOLAS O. HUNTER
D.C. Bar No. 1022355
Trial Attorney
National Security Division,
U.S. Dep't of Justice
950 Pennsylvania Ave, NW
Washington, D.C. 20530
E-mail: nicholas.hunter@usdoj.gov
Telephone: (202) 353-3434

YIFEI ZHENG
N.Y. Bar No. 5424957
Trial Attorney
National Security Division,
U.S. Dep't of Justice
950 Pennsylvania Ave, NW
Washington, D.C. 20530
E-mail: yifei.zheng@usdoj.gov
Telephone: (202) 353-0252

JEANINE FERRIS PIRRO
United States Attorney

THOMAS N. SAUNDERS
N.Y. Bar No. 4876975
ADAM P. BARRY
Cal. Bar No. 294449
Assistant United States Attorneys
National Security Section
601 D Street, NW, Room 5-120
Washington, D.C.  20530
Office: 202-252-7790 / 202-252-7793
Email: thomas.saunders@usdoj.gov
        adam.barry@usdoj.gov