**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 25-cr-033 (DLF)** |
| **JOHN HAROLD ROGERS,** | |
| **Defendant.** | |

**MEMORANDUM OF POINTS AND AUTHORITIES REGARDING STATUTORY INTERPRETATION OF 18 U.S.C. §§ 1831-1839 AND ITS SUBSEQUENT EFFECT ON PROPOSED JURY INSTRUCTIONS**

On December 16, 2025, this Court entered a Minute Order directing the parties to submit briefing regarding statutory interpretation of 18 U.S.C. §§ 1831-1839 and what effect that would have on specific language submitted in the parties' proposed jury instructions.  Both parties have benefited from the Court's order asking the parties to examine conflicting authority as to the *mens rea* requirement for a violation of the Economic Espionage Act.  Defendant has concluded that he was too quick to adopt a jury instruction that had been used in another case.  Instead, Defendant believes that it is necessary for the Court to resolve the statutory construction issue presented here.  Defendant now argues that the language previously suggested to the Court misstates the law.  In this filing, Defendant suggests the correct statutory interpretation that should be included in the jury instruction on *mens rea*. Defendant appreciates the Court's concern that the jury instructions be as accurate as possible.

**QUESTIONS PRESENTED**

1.    Defendant has been charged with conspiracy to commit economic espionage under 18 U.S.C. § 1831(a)(5).  The statute uses the adverb "knowingly" to modify each subsection of the statute and the Supreme Court has held that "the government must prove at least

the degree of criminal intent necessary for the substantive offense" on a charge of conspiracy, *United States v. Feola*, 420 U.S. 671, 686 (1975).  But factual impossibility is not a defense to inchoate crimes like conspiracy.  Does the unavailability of a factual impossibility defense reduce the *mens rea* required in a conspiracy case so that the government only must prove what the defendant "believed" instead of what the defendant "knew"?

2.    18 U.S.C. § 1831(a)(1)-(3) exclusively uses the term "trade secret," which is later defined at 18 U.S.C. § 1839(3).  The statute does not use the term "proprietary."  However, some courts have read 18 U.S.C. § 1832 conjunctively with 18 U.S.C. § 1831 ultimately utilizing the less stringent requirement—that the defendant knew the information was "proprietary" instead of a "trade secret."  Other courts have held otherwise, creating the circuit split, and the D.C. Circuit has yet to decide the issue[1].  Does § 1832 impermissibly reduce the government's substantive burden of proof in a prosecution under § 1831?

### BRIEF ANSWER

1.    The *mens rea* requirement for a charge of conspiracy to commit economic espionage is "knowingly."  The Supreme Court, in various opinions on statutory interpretation, e.g., *Flores-Figueroa v. United States*, 556 U.S. 646 (2009), has demonstrated that "knowingly" applies to each substantive element of a crime.  The *mens rea* for a charge of conspiracy remains the same as for each necessary element of the substantive underlying offense.  *United States v. Feola*, 420 U.S. 671 (1975).  Moreover, impossibility does not negate the government's burden to prove defendant's state of mind as prescribed by the statute.

---

[1] *United States v. Shi*, 991 F.3d 198, 210 (D.C. Cir. 2021).

2.      "Trade secret" is a material element of the core conduct criminalized under 18 U.S.C. §

1831.  Moreover, 18 U.S.C. § 1831 and 18 U.S.C. § 1832 are different statutes that

criminalize different behavior.  To read them as having the same underlying elements

would reduce the government's burden of proof for economic espionage under § 1831.

The language differences in the statutes reflects a difference of meaning in the words

"trade secret," which is exclusively used in the statute, and "proprietary," which is not.

## ARGUMENT

I.      THE MENS REA REQUIREMENT UNDER 18 U.S.C. § 1831 IS "KNOWING."

A.      The Statutory Language in 18 U.S.C. § 1831 is Clear.

> (a) In General.—Whoever, **intending or knowing** that the offense
> will benefit any foreign government, foreign instrumentality, or
> foreign agent, **knowingly**—
>
> (1) steals, or without authorization appropriates, takes, carries away,
> or conceals, or by fraud, artifice, or deception obtains a trade secret;
>
> (2) without authorization copies, duplicates, sketches, draws,
> photographs, downloads, uploads, alters, destroys, photocopies,
> replicates, transmits, delivers, sends, mails, communicates, or
> conveys a trade secret;
>
> (3) receives, buys, or possesses a trade secret, knowing the same to
> have been stolen or appropriated, obtained, or converted without
> authorization;
>
> (4) attempts to commit any offense described in any of paragraphs
> (1) through (3); or
>
> (5) conspires with one or more other persons to commit any offense
> described in any of paragraphs (1) through (3), and one or more of
> such persons do any act to effect the object of the conspiracy . . . .

18 U.S.C. § 1831(a) (emphasis added).

The language and structure of the statute are clear.  Sections (a)(1)-(3) set forth the

various ways a defendant can act criminally with respect to trade secrets, while (a)(4)-(5) creates

criminal liability for either the attempt or a conspiracy to commit an offense covered by those

first three sections.

Technically, the statute sets forth two *mens rea* requirements.  The first requirement is not at issue, i.e., that the government must prove that a defendant, if "*intending or knowing* that the offense will benefit any foreign government, foreign instrumentality, or foreign agent" committed an offense specified in section (1)-(3), *id.* (emphasis added), then the government would meet its burden proof, because the application is straightforward.  The same is true for the second *mens rea* requirement, which is set off by the adverb "knowingly" and focuses on the actions taken by a defendant.  The word "belief" does not appear in the statute.  See e.g., *Bostock v. Clayton Cnty.*, 590 U.S. 644, 673-74 (2020) ("This Court has explained many times over many years that when the meaning of the statute's terms is plain, our job is at an end.  The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration.").

B.    Supreme Court Precedent is Equally Clear that in Ordinary English the *Mens Rea* Requirement "Knowingly" Applies to All Subsequently Listed Elements of the Crime.

The manner of statutory interpretation for what "knowingly" modifies in 18 U.S.C. § 1831 is parallel to the statutory interpretation in 18 U.S.C. § 1028A(a)(1), which the Supreme Court explained at length:

> As a matter of ordinary English grammar, it seems natural to read the statute's word "knowingly" as applying to all the subsequently listed elements of the crime. The Government cannot easily claim that the word "knowingly" applies only to the statute's first four words, or even its first seven. It makes little sense to read the provision's language as heavily penalizing a person who "transfers, possesses, or uses, without lawful authority" a something, but does not know, at the very least, that the "something" (perhaps inside a box) is a "means of identification." Would we apply a statute that makes it unlawful "knowingly to possess drugs" to a person who steals a passenger's bag without knowing that the bag has drugs inside?

The Government claims more forcefully that the word "knowingly" applies to all but the statute's last three words, i.e., "of another person." The statute, the Government says, does not require a prosecutor to show that the defendant knows that the means of identification the defendant has unlawfully used in fact belongs to another person. But how are we to square this reading with the statute's language?

In ordinary English, where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence. Thus, if a bank official says, "Smith knowingly transferred the funds to his brother's account," we would normally understand the bank official's statement as telling us that Smith knew the account was his brother's. Nor would it matter if the bank official said "Smith knowingly transferred the funds to the account *651 of his brother." In either instance, if the bank official later told us that Smith did not know the account belonged to Smith's brother, we should be surprised.

Of course, a statement that does not use the word "knowingly" may be unclear about just what Smith knows. Suppose Smith mails his bank draft to Tegucigalpa, which (perhaps unbeknownst to Smith) is the capital of Honduras. If the bank official says, "Smith sent a bank draft to the capital of Honduras," he has expressed next to nothing about Smith's knowledge of that geographic identity. But if the official were to say, "Smith knowingly sent a bank draft to the capital of Honduras," then the official has suggested that Smith knows his geography.

Similar examples abound. If a child knowingly takes a toy that belongs to his sibling, we assume that the child not only knows that he is taking something, but that he also knows that what he is taking is a toy and that the toy belongs to his sibling. If we say that someone knowingly ate a sandwich with cheese, we normally assume that the person knew both that he was eating a sandwich and that it contained cheese. Or consider the Government's own example, "'John knowingly discarded the homework of his sister.'" Brief for United States 9. The Government rightly points out that this sentence "does not necessarily" imply that John knew whom the homework belonged to. Ibid. (emphasis added). But that is what the sentence, as ordinarily used, does imply.

At the same time, dissimilar examples are not easy to find. The Government says that "knowingly" modifies only the verbs in the statute, while remaining indifferent to the subject's knowledge of at

> least part of the transitive verb's object. In certain contexts, a listener might understand the word "knowingly" to be used in that way. But the Government has not provided us with a single example of a sentence that, when used in typical fashion, would lead the hearer to believe that the word "knowingly" modifies only a transitive *652 verb without the full object, i.e., that it leaves the hearer gravely uncertain about the subject's state of mind in respect to the full object of the transitive verb in the sentence. The likely reason is that such sentences typically involve special contexts or themselves provide a more detailed explanation of background circumstances that call for such a reading. As Justice ALITO notes, the inquiry into a sentence's meaning is a contextual one. See post, at 1896 (opinion concurring in part and concurring in judgment). No special context is present here. See infra, at 1892 – 1893.

*Flores-Figueroa v. United States*, 556 U.S. 646, 650–52 (2009).  The Court's examples are particularly instructive here.  For example, if a defendant is given a box and is told contents of the box will benefit China, the box contains a trade secret, and the defendant delivers the box to a Chinese agent, did the defendant violate 18 U.S.C. § 1831(a)(2)?  Certainly not, because the defendant did not know the box contained a trade secret.

The Court in *United States v. Hanjuan Jin*, 833 F. Supp. 2d 977 (N.D. Ill. 2012), *aff'd* 733 F.3d 718 (7th Cir. 2013), reasoned similarly.  Relying on *Flores-Figueroa*, the court held "'knowingly' in Section 1831(a)(3) modifies "trade secret," and that Section 1831(a)(3) therefore requires the Government to prove that a defendant knew, as a factual matter, that the information she possessed had the general attributes of a trade secret."  *United States v. Hanjuan Jin*, 833 F. Supp. 2d 977, 1012 (N.D. Ill. 2012); *see also United States v. Chung*, 633 F.2d 1134, 1144-46 (C.D. Cal. 2009) (reaching the same conclusion where the defendant had been charged with substantive violations of the statute).

C.     Under 18 U.S.C. § 1831(a)(5)—Conspiracy—the *Mens Rea* Is Still "Knowingly."

The analysis in *Hanjuan Jin* and *Chung* apply equally to 18 U.S.C. § 1831(a)(5).  It would follow that to prove a conspiracy, the government would have to prove that a defendant

knowingly joined or agreed with at least one other person to violate paragraphs (1) through (3), and this would logically require the government to prove that the agreement was to knowingly violate one of those sections. This is consistent with Supreme Court precedent. As applied to a conspiracy charge, the critical inquiry is what the necessary elements are to convict for the substantive offense. *United States v. Feola*, 420 U.S. 671, 686-691 (1975). In *Feola*, the Court held "that in order to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute, the Government must prove at least the degree of criminal intent necessary for the substantive offense itself." *Id.* at 686. In *Feola*, the Court determined that the general federal conspiracy statute, 18 U.S.C. § 371, did not impose a heightened requirement that Feola know the status of the assaulted victims as federal officers, because the underlying criminal statute did not require that Feola know the official identity of the assaulted victims. *Id.* at 686-687.

In this case, the underlying statute requires that a defendant knowingly act in such a way as to violate each element of sections (a)(1)-(3) as well as the object of the crime, i.e., the trade secret. The clear application of Supreme Court precedent applies a knowing standard to the conspiracy charge under 18 U.S.C. § 1831(a)(5).

D.    The Fact that Factual Impossibility is not a Defense to Inchoate Crimes Does Not Affect the *Mens Rea* Required to Convict on a Charge of Conspiracy.

As previously acknowledged to this court in other briefing, impossibility is not a defense to an inchoate crime, like attempt and conspiracy. *See e.g.*, *United States v. Williams*, 553 U.S. 285, 300 (2008); *United States v. Lieu*, 963 F.3d 122, 126-27 (D.C. Cir. 2020). However, this does not affect the government's burden to prove the defendant's *mens rea*. *See United States v. Lieu*, 963 F.3d 122, 126-27 (D.C. Cir. 2020) ("impossibility is not a defense to an inchoate crime so long as the defendant had the requisite state of mind to commit the underlying offense."). Consequently, the government must prove that Defendant knowingly conspired to knowingly

7

commit each element of any one of the substantive offenses in (a)(1)-(3), but that the government does not have to prove Defendant was successful.  The impossibility cannot come from the government's inability to prove requisite state of mind.

II.    18 U.S.C. § 1831 REQUIRES THE GOVERNMENT PROVE THE DEFENDANT KNEW THE INFORMATION WAS A "TRADE SECRET."

    A.    18 U.S.C. § 1831's Language is Clear and Exclusively Uses the Word "Trade Secret" and Not "Proprietary."

In the Definitions section of the Economic Espionage Act, 18 U.S.C. § 1839, proprietary is not a term used or defined.  "Trade Secret" is.

> As used in this chapter—
>
> [. . .]
>
> (3) the term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information . . . .

18 U.S.C. § 1839(3).  Proprietary is not used in 18 U.S.C. § 1831, *supra* p. 2-3, either.  With clear statutory language, applying "proprietary" to the jury instructions would be error.  In *United States v. O'Rourke*, 417 F. Supp. 3d 996 (N.D. Ill. 2019), an 18 U.S.C. § 1832 case, the court acknowledged the important statutory language differences between the two statutes:

> O'Rourke contends that the statute should be read as requiring a

defendant to know that the information he is taking constitutes a trade secret. According to O'Rourke, the "such information" referenced in §§ 1832(a)(1) and (2) should be read to mean "trade secret." In support, O'Rourke points to *United States v. Hanjuan Jin*, 833 F. Supp. 2d 977 (N.D. Ill. 2012), and *United States v. Chung*, 633 F. Supp. 2d 1134 (C.D. Cal. 2009), both of which hold that the government must prove that defendants know the information they are taking is a trade secret in order to establish a violation of 18 U.S.C. § 1831. But both of those cases deal with violations of § 1831, **not** § 1832. Both provisions are part of the EEA, which more broadly protects proprietary information from misappropriation. Section 1831 criminalizes economic espionage, or the theft of trade secrets to benefit a foreign government, instrumentality, or agent. But while § 1831 mimics the language of § 1832 in subsections (1)–(5) describing the means of violating the statute, § 1831 differs in one key respect: it criminalizes knowingly stealing or communicating a **trade secret**, not, as § 1832 does, knowingly stealing or communicating **such information**.

While this may appear to be a minor difference in language, it alters the meaning of the statute because it changes what the word "knowingly" modifies. Section 1832 only requires that a defendant know that he is stealing, downloading, or possessing the information described in § 1839 as a trade secret—that is, information owned by another that the owner has taken reasonable measures to keep secret and that derived independent economic value from not being known to or ascertainable by the general public. It does not explicitly require that the defendant know he is stealing, downloading, or possessing a trade secret. While O'Rourke would have the Court construe § 1832 in manner identical to § 1831, to do so would ignore a clear difference in the text. The Court declines to interpret the meaning of the EEA in a way that functionally erases the differences between § 1831 and § 1832, as O'Rourke appears to wish.

*United States v. O'Rourke*, 417 F. Supp. 3d 996, 1004–05 (N.D. Ill. 2019) (citations omitted) (emphasis in original).  The danger of equating two different statutes with different language as applied to the instant case with the use of the word "proprietary" would unconstitutionally reduce the government's burden of proof.

B.    The Case Law that Introduces "Proprietary" to 18 U.S.C. § 1831 Cases Inappropriately Apply Reasoning from 18 U.S.C. § 1832.

The case law cited by the government and identified by the court in its Minute Order, i.e.,

*United States v. You*, 74 F.4th 378, 393 (6th Cir. 2023) relying on *United States v. Krumrei*, 258 F.3d 535 (6th Cir. 2001), reached a different result regarding what a defendant must know as it pertains to both a charge brought under § 1831 and § 1832.  The *You* court held that "knowing that the information was proprietary was enough for a conviction, even if the jury did not expressly find that You knew the value of keeping this information secret or the specific measure used to protect it." *United States v. You*, 74 F.4th 378, 393-94 (6th Cir. 2001).  The court also declined to read a knowing requirement to the definition of trade secret in § 1839. *Id.* at 394 ("It does not follow, for example, that the word "knowingly" extends to § 1839's statutory definition of a trade secret.").  However, the defendant in that case did not raise in the district court the argument Defendant makes in this case.  The Sixth Circuit accordingly reviewed You's argument only for plain error, and the court's opinion is confusing.  The court explicitly states that "[i]n a separate instruction, the district court asked the jury to find whether the stolen information were trade secrets," which would suggest that the court agreed with the argument that the government had to prove that the defendant's actions involved trade secrets.  Other parts of the opinion suggest otherwise.  But one thing is clear: the You court relied on § 1832(a)(3) while it was interpreting 18 U.S.C. § 1831.

  C. "Proprietary" Does Not Have the Same Meaning as "Trade Secret," and Would Result in Expanding Conduct Not Otherwise Criminalized by 18 U.S.C. § 1831.

  Case law has distinguished trade secrets from proprietary information.  In *Meyer Group, Ltd. v. Rayborn*, 695 F. Supp. 3d 39 (D.D.C. 2023), a commercial real estate brokerage firm sued a former salesperson and the salesperson's new employer alleging that the salesperson misappropriated the firm's confidential client information.  The salesperson's employment agreement provided that in the course of his employment he could acquire "information which could include, in whole or in part, information concerning TMG's clients and prospective clients,

the identity of clients and prospective customers, identity of key purchasing personnel in the employ of customers and prospective clients, TMG's manuals, client lists, canvas cards, formulae, processes, methods, ideas, improvement, inventions or other confidential or proprietary information belonging to TMG or relating to TMG's business or affairs (collectively referred to herein as the 'Confidential Information')."  *Meyer Group, Ltd. v. Rayborn*, 695 F. Supp. 3d 39, 47 (D.D.C. 2023).

The *Meyer Group* court found that there was no doubt that Rayborn had taken confidential information from TMG and used it to harm TMG.  Thus, the court granted summary judgment to TMG on its breach of contract claim which alleged misappropriating and disclosing confidential and proprietary information.  *Id.* at 52-53.

But the court declined to grant summary judgment to TMG as to its claims under the D.C. Uniform Trade Secrets Act, D.C. Code § 36–401, and the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1).  The court stated that "[u]nder both the federal and D.C. statutes, a 'trade secret' is defined as information that "derives independent economic value ... from not being generally known" when "the owner ... has taken reasonable measures to keep such information secret.' 18 U.S.C. § 1839(3); *see* D.C. Code § 36–401(4) (defining a 'trade secret' to be information that '(A) [d]erives actual or potential independent economic value, from not being generally known to, and not being readily ascertainable by, proper means by another who can obtain economic value from its disclosure or use; and (B) [i]s the subject of reasonable efforts to maintain its secrecy.')."  *Id.* at 62.

The *Meyer Group* court clearly distinguished between confidential and proprietary information on the one hand and trade secrets on the other hand.  Even though it was clear that Rayborn had in fact breached the terms of his employment agreement by "using,

misappropriating, and disclosing confidential and proprietary information concerning TMG's clients and prospective clients," *Id.* at 54, the court concluded that the question whether Rayborn violated D.C. and federal law on trade secrets was a fact question for the jury. *Id*. at 64.

Other courts have reached similar results in addressing trade secrets. For example, in *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 265 (5th Cir. 2007), the court of appeals addressed claim of misappropriation of trade secrets. The Fifth Circuit noted that the district court had required the plaintiff to narrow its claims but the plaintiff "continued to assert that other proprietary information not rising to the level of a trade secret had been disclosed to Defendants." In *In re ACM–TEXAS, INC.*, 430 B.R. 371 (W.D. Tex. 2010), the court observed that under Texas law, which relied on the Restatement of Torts § 757, "not all secret information used in a business qualifies as a trade secret for the purposes of this cause of action" (misappropriation of a trade secret). Obviously, these cases which turn on state law are not binding on a federal court interpreting federal law, but the fact is that the Texas test for trade secrets (six elements) is the same test that was referred to by the D.C. district court in *Meyer*, *supra*, 695 F. Supp. 3d at 63, and is drawn from the same Restatement provision relied on in *Meyer.*

Congress has demonstrated that it does not equate trades secrets with all types of proprietary information. Thus, in Exemption 4 of the Freedom of Information Act, Congress created protection against disclosure of trade secrets and confidential commercial information. In *Public Citizen Health Research Group v. Food & Drug Administration*, 704 F.2d 1280 (D.C. Cir. 1983)*,* the court discussed the difference between the two: "If the requested documents constitute 'trade secrets,' they are exempt from disclosure, and no further inquiry is necessary. . . . If the health and safety data represent only 'commercial information,' their exempt status turns

on the sufficiency of the appellees' showing of confidentiality." *Id*. at 1286.

In sum, because Congress has specifically defined trade secrets for economic espionage cases, has not mentioned proprietary information in the relevant statutes and has provided no definition of proprietary information, Defendant urges the Court to use the statutory language in its jury instructions and to refrain from using the word "proprietary."

III.    BASED ON THE ANALYSIS PROVIDED THE COURT SHOULD AMEND ITS JURY INSTRUCTIONS.

Based on the analysis set forth above, it cannot be sufficient for the government to prove that the defendant (1) either (a) "knew" or (b) "believed" that (2) the information was either (a) "proprietary" or (b) a "trade secret." The government must prove that the defendant acted knowingly in joining with at least one other person to misappropriate what the defendant knew were trade secrets. The word "proprietary" should have no place in jury instructions.

The court has asked us to provide authority for the following language in its jury instructions:

> It is not necessary for the government to prove that the information the alleged conspirators intended to misappropriate was, in fact, a trade secret. It is also not necessary for the government to prove the defendant knew the information met all of the legal requirements of a "trade secret" as I defined that term. What is required is proof beyond a reasonable doubt that the defendant and at least one other member of the conspiracy knowingly agreed to misappropriate information that they believed was proprietary and did so for the benefit of a foreign government, foreign instrumentality, or foreign agent. This is because the defendant's guilt or innocence on this charge depends on what he believed the circumstances to be, not what they actually were.

For the reasons stated above, "it is not necessary for the government to prove that the information the alleged conspirators intended to misappropriate was, in fact, a trade secret," is not an accurate statement of law, because the Defendant submits the government must prove that the defendant acted knowingly in joining with at least one other person to misappropriate what

the defendant knew were trade secrets.

Similarly, "it is also not necessary for the government to prove the defendant knew the information met all of the legal requirements of a 'trade secret,'" and "what is required is proof beyond a reasonable doubt that the defendant and at least one other member of the conspiracy knowingly agreed to misappropriate information that they believed was proprietary and did so for the benefit of a foreign government, foreign instrumentality, or foreign agent," and "this is because the defendant's guilt or innocence of the charge depends on what he believed the circumstances to be, not what they actually were."  Defendant submits that he could not knowingly agree to violate the statute unless he knew that the agreement was to misappropriate what Defendant knew were trade secrets, the word "proprietary" has no place in the case, and the defendant's guilt or innocence depends on what he knew the circumstances to be.


  January 7, 2026                                    Respectfully submitted,



                                                     /s/ Stephen A. Saltzburg
                                                     Stephen A. Saltzburg (D.C. Bar No. 156844)
                                                     2000 H Street, NW
                                                     Washington, DC 20052
                                                     Tel.: (202) 994-7089
                                                     Fax: (202) 994-9811
                                                     Email: sasaltz@law.gwu.edu



                                                     /s/ Jonathan K. Gitlen
                                                     Jonathan K. Gitlen (D.C. Bar No. 990918)
                                                     Law Office of Jonathan K. Gitlen PLLC
                                                     900 19th Street, NW, Suite 500
                                                     Washington, DC 20006
                                                     Tel.: (202) 568-5788

Fax: (202) 301-8556
Email: jonathan.gitlen@jgitlenlaw.com

*Counsel for Defendant*