UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No.:  25-cr-00033 (DLF) |
| v. : | |
| : | |
| JOHN HAROLD ROGERS, : | |
| : | |
| : | |
| **Defendant.** : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS OTHER BAD ACTS EVIDENCE

In its third motion in limine, the defense seeks to preclude significant portions of defendant Rogers' February 4, 2020 interview with law enforcement agents from the Federal Reserve's Office of the Inspector General ("OIG"). It was during this interview that the defendant made the materially false statement that is the basis of Count Two and crucial admissions that are highly probative of some of the elements of Count One. The defense motion, if granted, would require global redactions to the interview, making it nearly impossible for jurors to follow what the defendant was talking about, why he made particular statements, and whether his alleged misstatement was a knowing and intentional falsehood. Contrary to the defense position, the subject matter that the defense seeks to preclude is highly probative of the defendant's guilt, including his mixed motives and intent for lying to law enforcement. The subject matter is also admissible to show that the defendant made the material misstatement knowingly and intentionally—in other words, that there was an absence of mistake. By comparison, the risk of

unfair prejudice from presenting this evidence is small, and the government has already affirmed it will take steps to minimize that risk even further.[1]

## BACKGROUND

As explained in the government's notice, Docket Entry No. 44, the defendant became the victim of an extortion scam near the end of 2019. He reported the incident, in general terms, to his employer, the Federal Reserve, because the extortion scam involved threats to send intimate photographs of the defendant to one of his superiors at the Federal Reserve. In response, OIG law enforcement agents interviewed the defendant on February 4, 2020. At the time, law enforcement had reason to suspect that the defendant was engaged in some form of misconduct related to China, but they did not have evidence sufficient to terminate his employment or refer him for criminal charges. It was only after the February 2020 interview that law enforcement discovered that the defendant was participating in an economic espionage conspiracy for the benefit of China and its agents. Evidence of this conspiracy was saved in the defendant's work cellphone and his personal iPad, both of which law enforcement obtained by virtue of the February 2020 interview. The interview also led law enforcement to discover additional evidence in the defendant's iCloud, his personal email, and his work email.

From the moment the interview began, the defendant sought to mislead the OIG agents and avoid any further scrutiny into his conduct. The defendant had multiple reasons for wanting to avoid scrutiny, and these reasons are inextricably intertwined with each other. Scrutiny into his conduct risked revealing evidence that he was flirting with people other than his new wife (endangering his marriage), that he was misusing government property and engaging in online

---

[1] The government will not describe the intimate photographs of the defendant in detail, much less "vivid[ ]" detail, contrary to the defense's presumption. Memorandum in Support of Defendant's Third Motion in Limine at 2 ("Def.'s Mem."), available at Docket Entry No. 53-1.

sexual flirtation during work hours (endangering his employment), and most critically, that he was engaging in a conspiracy to commit economic espionage for the benefit of China, the United States' foremost economic adversary (risking criminal prosecution and conviction). The defendant's various motives to mislead converged and intertwined into one thick rope, pulling him forward during the interview and leading him to make multiple false statements, including the material misstatement for which he has been indicted.

Throughout the February 2020 interview, the defendant—a scholar of considerable education and intellect—tried to outsmart federal law enforcement agents using a variety of tactics. At times, he evaded answering questions and engaged in long diversionary anecdotes. Sometimes he played the victim, attempting to elicit sympathy. Sometimes he feigned frankness, attempting to appear credible. At certain points, he cooperated. At other points, he lied.

## LEGAL PRINCIPLES

As an initial matter, Federal Rules of Evidence 401 and 402 "establish the broad principle that relevant evidence—evidence that makes the existence of any fact at issue more or less probable" is admissible. *Huddleston v. United States,* 485 U.S. 681, 687 (1988). Thus, evidence of other acts "is admissible unless the [other] Rules provide otherwise." *Id.*

Rule 404(b) places some limitation on the introduction of evidence of other bad acts evidence, but only if such acts are "extrinsic" or unconnected to the charged crime. *United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016); *United States v. Bowie*, 232 F.3d 923, 927-28 (D.C. Cir. 2000) (noting and explaining the "intrinsic"/"extrinsic" distinction); *see also United States v. Mahdi*, 598 F.3d 883, 891 (D.C. Cir. 2010) (discussing the use of "intrinsic" evidence). Rule 404(b) does not apply if the other acts or crimes are "intertwined with the commission of charged crimes." *McGill*, 815 F.3d at 879. "In other words, Rule 404(b) only applies to truly 'other' crimes and bad

acts; it does not apply to 'evidence . . . of an act that is part of the charged offense' or of "uncharged acts performed contemporaneously with the charged crime . . . if they facilitate the commission of the charged crime.'" *McGill*, 815 F.3d at 879 (*citing Bowie*, 232 F.3d at 929).

If Rule 404(b) applies, it authorizes admission of "[e]vidence of other crimes, wrongs, or acts" provided that the evidence is offered not "to prove the character of a person in order to show action in conformity therewith" but rather "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Mahdi*, 598 F.3d at 891 (emphasis added) (quoting Fed. R. Evid. 404(b)). "Rule 404(b) is a rule of inclusion rather than exclusion." *United States v. Douglas*, 482 F.3d 591, 596 (D.C. Cir. 2007) (quoting *Bowie*, 232 F.3d at 929). Thus, evidence of other acts by a defendant is admissible under the rule unless it "lacks any purpose but proving character." *Bowie*, 232 F.3d at 930.

The admissibility of evidence is also governed by Federal Rule of Evidence 403. Pursuant to Rule 403, a court may exclude relevant evidence if its probative value is "substantially outweighed" by the danger of unfair prejudice, confusing the issues, or misleading the jury, among other reasons. Fed. R. Evid. 403. "[T]he term 'unfair prejudice' speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on an improper basis rather than on proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 172 (1997).

## ANALYSIS

The February 2020 interview—including the subject matter the defense seeks to preclude—is intrinsic to the defendant's guilt on Count Two. The entire premise of the February 2020 interview was to discuss the extortion scam, and throughout the interview, the defendant sought to mislead law enforcement, including by giving evasive answers and long digressions. The

defense motion, if granted, would strip away all of that basic and essential information, making it unclearto the jury why the defendant was talking to law enforcement, the specific reasons the defendant made specific statements during the interview, and the context in which the alleged material falsehood was made. The risk of juror confusion is substantial.

More than risking juror confusion, the defense motion would rob jurors of the information needed to render a competent verdict. To discern truth from falsehood, it will be necessary for the jury to know the context in which a statement was made and to know the speaker's motives. Here, the defense seeks to strip out the context and conceal the defendant's motives, thereby leaving jurors in the dark.

Additionally, the defendant made crucial admissions during the interview that are highly probative of some of the elements of Count One, including his knowledge that he was working for agents of the Chinese government. For example, the defendant admitted in the interview that he knew that his co-conspirator Hummin Lee wrote "a lot of reports for the provincial government" in "Shandong Province" in China, and that the Chinese government was "watching everything that the U.S. does" and "just want to know what's, what's the Fed thinking." The context of the entire interview also establishes the defendant's strong appreciation and love for Hummin and China, the history of his relationship with his wife and Hummin's intimate involvement in facilitating that relationship, and many other facts that the government plans to use to explain the scope and context of the defendant's criminal conduct.

And the defense's alternative proposal is simply not true. The defense suggests that the jury should be led to believe the February 2020 interview was focused an investigation into the misuse of government property. But that is false. It would be inappropriate for the government, the defense, or the Court to allow the jury to be misled in this way.

Even if some of the interview is extrinsic to the charged counts (which it is not), the interview in its entirety will be offered into evidence for purposes expressly permitted under Rule 404(b). Rule 404(b) permits introduction of other bad acts evidence to show motive and intent. Throughout the February 2020 interview, the defendant sought to mislead law enforcement. The defendant's motive and intent for trying to mislead law enforcement had various sources, one of the most significant of which was to avoid greater scrutiny that might reveal his ongoing conspiracy to commit economic espionage. The evidence from the interview, including that it was focused on an extortion scam, is relevant and admissible to show the defendant's motive and intent.

Rule 404(b) also permits introduction of other bad acts evidence to show absence of mistake. Here, the information from the February 2020 interview is necessary for the jury to see that the defendant's material misstatement was not an accidental misstatement but rather a knowing and intentional falsehood—part of a larger effort, throughout the interview, to intentionally mislead law enforcement and avoid further scrutiny. The evidence from the interview is relevant and admissible to show absence of mistake.

The government does not intend to make a propensity argument about the defendant's character. Rather, the government is offering evidence intrinsically related to the charged crime of making a materially false statement, revealing for the jury how the defendant sought to avoid scrutiny that could reveal his ongoing criminal conduct.

Lastly, the risk of unfair prejudice is minimal. The government will not seek to introduce the nude photographs into evidence, nor offer vivid descriptions of the photographs. The government will simply present the basic facts relevant to the charged crime. For the most part, this means presenting the audio recording and transcript of the interview. The interview does not contain any descriptions of nude photographs. Also, a law enforcement officer will testify that he

reviewed data from the defendant's digital devices and discovered nude photographs that the defendant had taken of himself at work, during work hours. The law enforcement officer will also testify that he found evidence that the defendant had taken these photographs and sent them to others mere weeks before the February 2020 interview, not years ago as the defendant implied during the interview. The fact that the defendant lied to OIG in the interview is prejudicial to him. So is the fact that he admitted to knowing that Hummin Lee worked for the Chinese government and that he loved him "like a brother." But this straightforward recitation of the facts will not create a risk of *unfair* prejudice. The government is allowed to "strike hard blows," but may not "strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935).

## CONCLUSION

For the foregoing reasons, the defense's third motion in limine should be denied.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

*/s/ Thomas N. Saunders*
THOMAS N. SAUNDERS
ADAM P. BARRY
Assistant United States Attorneys
N.Y. Bar No. 4876975
Cal. Bar No. 294449
National Security Section
601 D Street, NW, Room 5-120
Washington, D.C. 20530
Office: 202-252-7790 / 202-252-7793
Email: thomas.saunders@usdoj.gov
       adam.barry@usdoj.gov


JOHN A. EISENBERG
Assistant Attorney General for National Security

Nicholas O. Hunter
D.C. Bar No. 1022355
Trial Attorney
National Security Division,
U.S. Dep't of Justice
950 Pennsylvania Ave, NW
Washington, D.C. 20530
E-mail: nicholas.hunter@usdoj.gov
Telephone: (202) 353-3434

Yifei Zheng
N.Y. Bar No. 5424957
Trial Attorney
National Security Division,
U.S. Dep't of Justice
950 Pennsylvania Ave, NW
Washington, D.C. 20530
E-mail: yifei.zheng@usdoj.gov
Telephone: (202) 353-0252