**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| **v.** | : | **Case No. 25-cr-00033 (DLF)** |
| | : | |
| **JOHN HAROLD ROGERS** | : | |
| | : | |

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION FOR RELEASE PENDING SENTENCING**

The government's opposition to Defendant John Rogers's motion for release pending sentencing ignores the jury's partial acquittal and what that acquittal represents: an unambiguous rejection of the government's theory that Dr. Rogers ever knowingly and intentionally agreed to transfer valuable trade secrets to Hummin Lee or any other agent of the Chinese government. Instead, the evidence at trial established that before the government informed him otherwise, Dr. Rogers genuinely believed that Hummin Lee was a professor of Economics seeking academic collaboration with Dr. Rogers, who is a renowned expert in the field, and that Hummin Lee was one of Dr. Rogers's best friends. Now that Dr. Rogers has been disabused of these notions, he has no ties to Hummin Lee or the Chinese government—and in fact provided information at trial not only exposing Hummin Lee and others but revealing their methods as well. Conversely, Dr. Rogers has strong ties to the United States, both in terms of family and finances. The evidence that Dr. Rogers is not a flight risk is clear and convincing, and because Dr. Rogers can meet this demanding standard, the Court should grant his motion for release pending sentencing.

**I.      Dr. Rogers is Not a Flight Risk, and the Government's Claims Otherwise are Misplaced and Inapposite**

The government claims that Dr. Rogers cannot meet his burden under 18 U.S.C. § 3143(a)(1) to establish by clear and convincing evidence that he is not a flight risk and thus secure

his pre-sentencing release.  The government's faulty arguments, however, are based on the very government trial theory that the jury rejected—namely that Dr. Rogers knowingly engaged in espionage with the Chinese government.  The jury acquitted Dr. Rogers of the espionage changes because the evidence at trial established that Dr. Rogers genuinely believed that Hummin Lee—whom Dr. Rogers now recognizes as a spy who duped him—was one of his best friends. Accordingly, contrary to the government's claims, Dr. Rogers does not "continue[] to have a strong tie to an adversarial foreign government," ECF No. 98, Government's Opposition at 4, and his ties to the United States are far stronger than any residual ties he may have to China.

After incorrectly asserting that Dr. Rogers maintains strong ties to the Chinese government, the government relies on a string of inapposite cases that are clearly distinguishable from Dr. Rogers's.  The government cites vaguely to the docket in *United States v. Shan Shi*, 17-cr-110-3 (CRC), for the proposition that defendant Gang Liu was able to flee to China without his U.S. passport prior to his espionage trial, but fails to mention that Liu was a Chinese citizen fluent in Chinese.  *See* 17-cr-110-3, ECF No. 36, Indictment at 4; *see also* https://www.fbi.gov/wanted/counterintelligence/gang-liu/@@download.pdf.     Dr.     Rogers, however, is a U.S. citizen who speaks no Chinese, and whose passport is in the government's custody and will remain there.

Next, the government points to *United States v. Hong Vo*, 978 F. Supp. 2d 41 (D.D.C. 2013), another decision arising in the pre-trial context in which a defendant had extensive ties to Vietnam—"substantial assets overseas, lengthy experience living abroad, foreign language skills, and contacts in Vietnam," *id*. at 49, that Dr. Rogers does not.  Indeed, Dr. Rogers has minimal assets overseas compared to in the United States; has not lived in China for lengthy periods of

time; does not speak Chinese; and no longer has the single contact on whom he relied in China before learning that Hummin Lee was a spy.

The government's next inapposite example is from *United States v. Myers*, 1:09-cr-00150 (RBW), a case in the pre-trial release posture in which the Court found that the government's evidence that the Myerses were Cuban spies included admissions to an undercover agent posing as a Cuban intelligence officer that they wanted to flee to Cuba, "a country they have described as their home." 1:09-cr-00150, ECF No. 16, Detention Memorandum at 16.   There is no such evidence against Dr. Rogers.

Lastly, the government cites two cases involving foreign citizenship, which Dr. Rogers does not have.  Significantly, all of the cases above that the government cites for the proposition that Dr. Rogers is a flight risk were in the pre-trial posture, whereas now, Dr. Rogers has been acquitted of the very ties to China that the government alleges.

Notwithstanding Dr. Rogers's lack of connection to China, the Chinese government is unlikely to have any interest in Dr. Rogers.  He is several years removed from the position at the Federal Reserve that provided him with information that was, according to the government, sought by Hummin Lee and the Chinese government.   Dr. Rogers also voluntarily provided the government with the devices containing his communications with Hummin Lee, and his trial resulted in the public exposure of the real identities of Hummin Lee and "Ricky," including publication of their photographs, revelation of them as hostile actors, and description of the methods by which they try to solicit information about the United States.  It is also possible that Dr. Rogers's indictment and prosecution precludes him from returning to his former teaching position at Fudan University.  For all of these reasons, Dr. Rogers is not similarly situated to the

3

individuals posing flight risks whom the government's brief cites and who were willing participants in espionage.

Furthermore, Dr. Rogers's ties to the United States are much stronger than any residual connections he has to China. Other than his brief periods of temporary residence in China, Dr. Rogers has lived in Virginia for most of his adult life.  He lives with his wife, who is a Chinese citizen but who nonetheless chose to remain in the United States during Dr. Rogers's trial, and his seven-year-old daughter, who is a U.S. citizen and attends a Virginia public school.  To return to his family in Virginia, Dr. Rogers is willing to comply with any conditions of release that the Court deems appropriate, including but not limited to wearing a GPS monitor or maintaining daily check-ins with court supervisory officials.

Dr. Rogers had been a present and dutiful father to his daughter, providing primary caretaking responsibilities prior to his arrest by government agents.

4



███████████████████████████████████████

███████████████████████.[1]

Dr. Rogers also maintains close ties with his adult siblings, who attended his trial and are a constant source of support to him. If the Court deems it necessary, Dr. Rogers's sister, who lives in Philadelphia, is willing to serve as a custodian and ensure Dr. Rogers's return to court.

Finally, contrary to the government's arguments, Dr. Rogers is financially tied to the United States, not to China. His largest and most important asset is his pension from his more than 27 years of service at the Federal Reserve. He would not jeopardize that source of income to flee to a country where he has no contacts and where, after proceeding to trial in this matter, he is unemployable for having exposed Hummin Lee and others. Dr. Rogers also speaks no Chinese and relied on Hummin Lee to manage and access his finances in China—meaning that at this point, any funds held in China are lost to him.

## II.    The Government's Sentencing Arguments are Premature and Incorrect

The government's opposition also makes a series of arguments that it should have reserved for sentencing. Although the Court need not take them up now, Dr. Rogers briefly addresses the government's various arguments for sentencing enhancements below. The government's arguments are meritless and Dr. Rogers does not deserve a sentence approaching the statutory maximum, as the government appears poised to request.

---

[1] ████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

a.  Dr. Rogers's Sharing of Documents

The government argues that Dr. Rogers improperly disclosed multiple documents, but there was no evidence at trial that Dr. Rogers circulated any document that he believed was restricted other than the Federal Reserve FOMC Class II document that he emailed to a co-author in March 2019—and that had no connection to Hummin Lee.  With respect to the April 2018 DesiGov Book section on China that Dr. Rogers emailed to Hummin Lee, Dr. Rogers obtained that material by asking colleagues for documents that he could share with his Chinese colleagues and students. *Compare* Gov. Ex. 0352 and 0352A, Dr. Rogers's Email to Hummin Lee, *with* Gov. Ex. 0351, 0251A, and 0251B, FRB Internal Email Exchanges providing the underlying documents (Gov. Ex. 0351, 0351A, and 0351B).  This comparison shows that only the document entitled "China: Recent Economic Developments and Prospects" carried the INTERNAL FR identifier, *see* Gov. Ex. 0351A, but the document Dr. Rogers shared with Hummin Lee entitled "Economic Developments and Challenges in China" did not.  *See* Gov. Ex. 0351B and 0352A.  The prosecution acknowledged this in its February 2, 2026 closing argument.  *See* 2/2/26 Trial Tr. at 59:12-59:24. And regarding the washing machine document, the author told Dr. Rogers it was public information and, although the author put "Internal FR/Official Use//FRSOnly" on it, he indicated that he would rely on Dr. Rogers to decide whether it was in fact public information and could be disclosed.  The prosecution acknowledged this in its closing argument.  *See id.* at 61:19-62:8. Moreover, the government's first witness, Dr. Joshua Gallin, testified as follows:

> Q. So for example, if someone received a document that was marked "FOMC Class II" and they disagreed with that marking, are they supposed to go to the secretariat's office before just deciding on their own that that marking is inappropriate?
>
> A. If they're not sure, if they sort of think maybe this should be Class I or Class III even, they definitely can and should come to myself or someone on the team.  If they are an expert and they feel comfortable or they know someone just made a mistake, because that does happen, they can change it themselves.

7

1/22/26 Trial Tr. at 53:13-22.  Consistent with this testimony, Dr. Rogers was a subject matter expert entitled to determine what actually qualified as public information.

In its closing argument with respect to Count 2, the government clearly relied only on two related documents as the basis to convict Dr. Rogers: Exhibits 336 and 421, the Federal Reserve FOMC Class II document that Dr. Rogers sent to his own email without the restrictive header and then emailed to his co-author at Fudan University.  *See* 2/2/26 Trial Tr. at 81:12-81:24; 82:18-82:25.  The fact that the government focused its Count 2 case on the single instance where Dr. Rogers shared restrictive information outside the Federal Reserve, but for which there was no evidence that his doing so was in any way connected to Hummin Lee, highlights the unfairness of the government's suggestion in its closing argument that Dr. Rogers sent the document to his coauthor at Fudan for use in Hummin Lee's class.  This erroneous and unsupported assertion easily could account for a mistaken guilty verdict on Count 2.  *See* ECF No. 84, Defendant's Motion for New Trial on Count 2.

Through its claims that the Court should infer that Dr. Rogers was gathering and printing information to pass to Hummin Lee, the government is trying to relitigate its failed economic espionage allegation.  The jury rejected the argument that Dr. Rogers entered into an agreement with Hummin Lee to share restricted information.  As the Court is aware, at all times Dr. Rogers was working in China, even on sabbatical, he was also working on his research for the Federal Reserve.  The fact that Dr. Rogers had an interest in documents relevant to his research, as demonstrated by the fact that the documents were shared with him by others at the Federal Reserve, in no way is evidence that he ever intended to or did share documents with Hummin Lee or others.

b.  <u>Dr. Rogers told the truth at trial</u>

The government makes repeated allegations that Dr. Rogers lied during his testimony.  It is wrong on all counts, as Dr. Rogers is prepared to establish at sentencing.

The government takes issue with Dr. Rogers's testimony regarding how and whether he was paid for his various work while on sabbatical in China.  Dr. Rogers testified that, although he had obtained permission from the Federal Reserve to teach and be paid during his sabbatical at both Fudan University and the Shanghai University of Finance and Economics ("SHUFE"), a visa problem led SHUFE to tell him that it could not pay him.  When SHUFE did provide compensation to Dr. Rogers, he returned it with the help of Hummin Lee.  The government asserts that Dr. Rogers lied about this because he cannot explain why Fudan could pay him while SHUFE could not.  But Dr. Rogers cannot explain it because he has no way of knowing the Chinese regulations and requirements that govern each Chinese university and how the universities' compliance officers implement Chinese laws.

Twice the government unfairly attributes to Dr. Rogers as a lie a good-faith misstatement not by Dr. Rogers but by undersigned counsel.  First, the government attacks Dr. Rogers for testifying that his meetings with Hummin Lee and Hummin Lee's students were independent studies in which Hummin Lee served as an assistant in the teaching of other students, because in a brief in 2025, undersigned counsel wrote that Hummin Lee was one of Dr. Rogers's students. The fact that undersigned counsel who wrote the opposition in February 2025 did not fully understand who Hummin Lee was or what his role was vis-à-vis Dr. Rogers does not mean that Dr. Rogers lied at trial; rather, it means at most that undersigned counsel erred early on when first learning the facts of the case.  Similarly, in footnote 7 of its opposition, the government points out that defense counsel mistakenly indicated that Dr. Rogers was arrested upon returning home from taking his daughter to the bus stop.  This was a mistake on undersigned counsel's part in an attempt to convey the following: at the time of Dr. Rogers's arrest, he and his family were poised to move to China for his spring semester teaching obligations.  Because Dr. Rogers's daughter had an

anticipated withdrawal from the school by the end of the week, on the day of Dr. Rogers's arrest, she did not participate in her usual routine and walk to the bus stop with her father and the family dog. Instead, Dr. Rogers recalls walking the dog to the bus stop to allow the other children who gathered there daily a chance to say good-bye to the dog. The Court should not hold undersigned counsel's good faith misunderstanding of these facts against Dr. Rogers as a lie.

Finally, the government claims that Dr. Rogers lied during his testimony when asked about when he last had sex with his wife and claims to have video evidence to support its allegation. The government is wrong, and if Dr. Rogers is required to rebut such an allegation at sentencing, he has the proof to do so. It is unfortunate that the government has chosen to resort to prurient allegations to attack Dr. Rogers.

## III.   Conclusion

Dr. Rogers is not a flight risk, and the government's arguments to the contrary are based on inapposite cases and an insistence on its failed theory that Dr. Rogers was a willing and knowing participant in espionage. Dr. Rogers has deep ties in the United States and minimal ties to China—with no ties to the Chinese government. In addition, the government's premature arguments in support of sentencing enhancements are faulty, and will not succeed at the time of sentencing. Because Dr. Rogers has met his burden under 18 U.S.C. § 3143(a)(1) to prove by clear and convincing evidence that he is not a flight risk, he should be released pending sentencing.