**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

|                          |     |                          |
|--------------------------|-----|--------------------------|
|                          | :   |                          |
| **UNITED STATES**        | :   |                          |
|                          | :   |                          |
| **v.**                   | :   | **Case No. 25-cr-00033 (DLF)** |
|                          | :   |                          |
| **JOHN HAROLD ROGERS**   | :   |                          |
|                          | :   |                          |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Defendant John Rogers is a sixty-four year old economist who spent his career serving the Federal Reserve.  After a lifetime of law-abiding behavior, he now stands convicted of making a false statement to the Federal Reserve Office of Inspector General on February 4, 2020, in the context of a voluntary interview that Dr. Rogers initiated to seek help regarding violent threats against Dr. Rogers and his then-toddler.  Dr. Rogers does not dispute that in that interview, he told OIG that he had never provided sensitive Federal Reserve information outside of the Federal Reserve when in fact he had provided such information to an academic co-author at Fudan University, and he does not seek to minimize the seriousness of such conduct for a federal employee in a position of trust—indeed, he genuinely regrets sending the document and making the statement.  Although Dr. Rogers was acquitted at trial of the other charge against him— conspiracy to commit espionage—he has now been detained for more than 16 months, which is far longer than similarly situated defendants are incarcerated for the offense of conviction.  Under these circumstances, given Dr. Rogers's advisory Sentencing Guidelines range and the applicable Section 3553(a) factors—including his lack of criminal history, his strong familial ties, his unlikelihood of recidivism, and the need to avoid unwarranted sentencing disparities—the just and appropriate sentence for Dr. Rogers is time served.

## I.    Background

On January 30, 2025, Dr. Rogers was indicted on two counts, 18 U.S.C. § 1831(a)(5), conspiracy to commit economic espionage, and 18 U.S.C. § 1001, false statements.  ECF No. 1. The economic espionage charge rested on allegations that Dr. Rogers had conspired with and provided trade secret information to Hummin Lee, an individual posing as an academic studying economics in China, where Dr. Rogers had teaching and research roles.  *Id*. at 3-7. The false statements charge was based on a statement that Dr. Rogers made during an interview with the Federal Reserve OIG on February 4, 2020.  *Id*. at 17.  Dr. Rogers was arrested on January 31, 2025, and has been detained ever since.  *See* ECF No. 15; 5/1/2025 Minute Order; ECF No. 104.

At trial, the government argued that Dr. Rogers was a willing participant in an espionage conspiracy involving "spies, government secrets, trillions of dollars, international finance, secret meetings in Shanghai hotel rooms, seduction and lies." 1/21/26 PM Trial Tr. at 160:13-16.  With respect to Count One, conspiracy to commit espionage, the government's theory was that Dr. Rogers conspired with Hummin Lee, a spy, to provide sensitive Federal Reserve information to the Chinese government.  *See, e.g.,* Trial Tr. 2/2/26 at 40:19-25-41:1-9.  The indictment listed dozens of overt acts and all were put before the jury, and the jury rejected the government's theory and acquitted Dr. Rogers of Count One of the indictment.  ECF Nos. 1, 79.

Instead, the jury convicted Dr. Rogers only of Count Two, of making a false statement to OIG.  ECF No. 79.  The statement took place in the context of an interview that Dr. Rogers requested with the Federal Reserve OIG that occurred on February 4, 2020.  Dr. Rogers had experienced alarming blackmail threats, targeted at him and his then-toddler, and he notified Federal Reserve OIG and asked them for help.  *See* 1/23/26 Trial Tr. 30:11-31:9.  The blackmail threats against Dr. Rogers bore no relation to China or his work there.  *Id*. at 37:6-12.  Nonetheless, in the course of a wide-ranging interview that included discussion of the blackmail threats and Dr.

Rogers's work in China and his relationship with Hummin Lee, Dr. Rogers was asked an open-ended question about whether he had provided sensitive Federal Reserve information externally.

The false statement of which Dr. Rogers was convicted consisted of Dr. Rogers responding "never" to OIG investigators when asked whether he had ever provided sensitive Federal Reserve information outside of the agency.  *See* 2/2/26 Trial Tr. 81:14-19 ("I want to play for you first the statement, the false statement the defendant made in his interview with the Fed OIG . . . He said never; he said he never provided restricted Board information outside of the Board.").  The only direct evidence at trial that Dr. Rogers had provided restricted Federal Reserve information outside of the agency, and indeed, the only evidence that the government pointed to in support of Count Two at trial, was that Dr. Rogers had sent a sensitive Federal Reserve Document to an academic co-author at Fudan University.  *See* 2/2/26 Trial Tr. 81:19-24.  When testifying in his own defense, Dr. Rogers readily admitted having provided the document to his Fudan co-author.  *See* 1/30/26 AM Trial Tr. 102:23-103:19.  The government did not establish that this specific exchange by Dr. Rogers with the Fudan co-author bore any connection to the conspiracy it alleged with Hummin Lee in Count One.  Dr. Rogers further explained during his testimony that when he responded "never" to OIG in his interview, he did not remember providing the document to his Fudan co-author.  *See* 1/30/26 AM Trial Tr. 107:5-10.

II.    **The Advisory Sentencing Guidelines Range**

The first step in determining an appropriate sentence is to accurately calculate the defendant's advisory Sentencing Guidelines range. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). Dr. Rogers's accurate Guidelines calculation for the offense of false statements, 18 U.S.C. § 1001, is of 0-6 months.

This calculation begins with determining Dr. Rogers's Total Offense Level as follows:

| | |
|---|---|
| **Base Offense Level (U.S.S.G. §2B1.1(a)(2)):** | **6** |
| **Chapter Four Adjustment (U.S.S.G. §4C1.1(a)(1)-(11)):** | **-2** |
| **Total Offense Level:** | **4** |

Next, Dr. Rogers has no criminal history and thus has a Criminal History Score of zero, meaning that pursuant to U.S.S.G. Chapter 5, Part A, he has a Criminal History Category of I.

Based on a Total Offense Level of 4 and a Criminal History Category of I, the appropriate advisory Sentencing Guidelines range for Dr. Rogers is 0-6 months. This applicable Guidelines range is in Zone A, making Dr. Rogers eligible for a term of probation (U.S.S.G. §5B1.1(a)(1)).

We note that in a previous pleading, *see* ECF No. 98 at 5, the government signaled an intent to advocate for sentencing enhancements predicated on Dr. Rogers's acquitted conduct that did not establish the offense of conviction, and the government has likewise indicated to the Probation Office an intention to seek at least one Guidelines enhancement based on acquitted conduct. The Sentencing Guidelines prohibit this. *See* U.S.S.G. §1B1.3(c). If necessary in response to the government's sentencing memorandum or the final Presentence Investigation Report when it is issued, we will set forth the legal basis for our position that any such enhancements are improper under the Sentencing Guidelines and that if the Court were to consider acquitted conduct in any way in determining Dr. Rogers's sentence, it would violate Dr. Rogers's constitutional rights, including to due process and against double jeopardy.

## III.    Section 3553(a) Factors

The goal of sentencing is to impose a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). In determining such a sentence, the Court considers the various factors set forth in Section 3553(a). *Gall*, 552 U.S. at 49-50. These include the nature and circumstances of the offense of conviction; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, deter criminal conduct,

protect the public from further crimes by the defendant, and provide the defendant with adequate medical care; and the need to avoid unwarranted sentencing disparities.  18 U.S.C. § 3553(a)(1)-(6).  Fully recognizing the serious nature and circumstances of the crime of conviction, we submit that all of the other Section 3553(a) factors counsel in favor a sentence of time served, 16 months, which is sufficient but not greater than necessary.

### a.   Nature and Circumstances of the Offense

The offense of conviction was a false statement that Dr. Rogers made to the Federal Reserve OIG on February 4, 2020, when he stated that he had "never" provided sensitive Federal Reserve information outside of the agency.  Dr. Rogers recognizes that such conduct is wrong for a federal employee in a position of trust and he regrets having made the statement.

We nonetheless submit that the circumstances of this serious offense do not warrant a sentence greater than the 16 months that Dr. Rogers has already served.  He made the statement after initiating the interview with the Federal Reserve OIG to seek help with alarming blackmail threats that he was receiving against him and his then-toddler.  Going into the interview, Dr. Rogers was ashamed and embarrassed because he had fallen victim to the threats as a result of having exchanged nude photographs of himself online.  Nonetheless, he voluntarily participated in a wide-ranging conversation with OIG in which he discussed the threats, his work in China and relationship with Hummin Lee, and consented to the agents reviewing his Federal Reserve phone and his personal iPad, *see* 1/23/26 AM Trial Tr. 88:10-19.  Dr. Rogers makes no excuses for his statement and regrets having provided an incorrect and imprecise answer to OIG.  But we respectfully request that the Court consider the difficult circumstances underlying the OIG interview that Dr. Rogers initiated rather than examining Dr. Rogers's statement in a vacuum.

### b. History and Characteristics of the Dr. Rogers

Dr. Rogers is a 64-year-old retired economist and a devoted father, brother, and friend. As described in the letters from his friends and family that are exhibits, Dr. Rogers is giving, gregarious, and trusting—which led him to the chain of events resulting in the offense of his conviction. Prior to this case, he had never had any contact with the legal system. He has lived with Type 1 diabetes for fifty years and has survived cancer. Taken together, Dr. Rogers's personal characteristics weigh in favor of a sentence of time served.

Above all, Dr. Rogers is deeply devoted to his family. Before his arrest in this case, he lived in Vienna, Virginia with his wife and youngest daughter, Shushu, who is seven. At the time that Shushu was born, Dr. Rogers was in his late fifties and had already raised four children to adulthood—but he enthusiastically welcomed starting over with his youngest daughter and served as her primary caretaker. As Dr. Rogers's adult son Johnny observes, Dr. Rogers devoted "the bulk of his time and energy into making sure [Shushu] is happy, loved, and cared for." *See* Ex. 1 at 1. Dr. Rogers's love and care for Shushu is equaled only by his love and care for his adult children. His son Jonny recalls Dr. Rogers's incredible support from his childhood to present day, *id*. at 1-2, and his daughter Allison recalls his "supportive, loving, and devoted presence my entire life." *See* Ex. 2 at 1. Throughout Dr. Rogers's period of detention, he has made best efforts to continue supporting his children, including by keeping in contact with them and by financially supporting his wife and Shushu with his retirement income while unable to work.

Dr. Rogers also maintains strong relationships with his elderly mother and siblings, who attended his trial to support him. Dr. Rogers's brothers and sister recall Dr. Rogers as a constant source of support and love within their family. *See* Ex. 3-5. They also note his support of their 90-year-old mother, which he has been continuing by phone while detained. *See* Ex. 4 at 1; Ex. 5 at 2.

Those who know Dr. Rogers best know that, as his lack of criminal history also demonstrates, the crime of conviction is out of character for him. One friend of fifty years has "always known John to be a moral person" and recalls an instance when Dr. Rogers went out of his way to assist strangers who were lost in the middle of the night. Ex. 6 at 1-2. Another friend of 45 years writes that Dr. Rogers's "ethics and values have always been to the highest level." Ex. 7 at 1. Friends and family know Dr. Rogers to be a particularly generous friend and citizen. Dr. Rogers's daughter Allison remarks on "the way he gave to homeless people with dignity, always acting like and equal," Ex. 2 at 1, and a friend describes Dr. Rogers as "a teacher and someone who wants to help guide people," Ex. 6 at 2.

Dr. Rogers is now in poor health. He is a cancer survivor and has had Type 1 Diabetes since childhood. Dr. Rogers does not drink alcohol regularly, has never used illegal drugs, and exercises as often as he is able. Despite these best efforts to take care of himself, he has experienced multiple complications from his chronic diabetes, including requiring heart bypass surgery and eye surgery. Dr. Rogers's sister Maureen Cotrell has observed Dr. Rogers's condition decline over the past 16 months while he has been detained and worries about the effect that additional incarceration would have on his long term health and lifespan. *See* Ex. 3 at 1-2. Dr. Rogers also suffers from and is being treated for depression.

Taken together, Dr. Rogers's history and characteristics make clear that a sentence of time served is more than enough to achieve the goals of sentencing. He greatly regrets the conduct underlying his conviction, which was out of character and inconsistent with his lifetime of devotion to family and adherence to the law.

### c. A Time Served Sentence Reflects the Seriousness of the Offense, Adequately Deters Criminal Conduct and Protects the Public from Further Crimes, and Would Provide Dr. Rogers with Needed Medical Care

A sentence of time served in this case—amounting to 16 months' incarceration—is more than sufficient to reflect the seriousness of Dr. Rogers's offense of conviction and deter criminal conduct, and no additional sentence is needed to deter recidivism. Such a sentence would also allow Dr. Rogers to seek the medical care he needs for his chronic health conditions.

### i. A Time Served Sentence Adequately Reflects the Seriousness of the Offense and Deters Criminal Conduct

The offense of conviction is a serious one, and a sentence of 16 months' imprisonment is sufficient, but not greater than necessary, to make that clear to Dr. Rogers and to any individual who might consider making a false statement to government investigators. Dr. Rogers will never reoffend, as he heartily regrets the conduct underlying his conviction. With respect to general deterrence, the extensive time that Dr. Rogers has already spent in detention awaiting trial and sentencing makes him a cautionary tale to others of the importance of accuracy and truthfulness in interviews with federal agents.

### ii. Dr. Rogers is not a Recidivism Risk

Dr. Rogers is not a recidivism risk. He had no criminal history before the crime of conviction and has neither the intent nor the means to commit crimes in the future. He is retired from the Federal Reserve and no longer has access to or control over sensitive information, nor is he employed by the government in a way that will require him to interact with government investigators. Dr. Rogers's age also indicates that he will not recidivate—the Sentencing Commission has found that "the recidivism rate of older offenders was less than half that of offenders under the age of 50." *See* United States Sentencing Commission, Older Offenders in the Federal System (July 2022), *available at* https://www.ussc.gov/sites/default/files/pdf/research-

and-publications/research-publications/2022/20220726_Older-Offenders.pdf.   Most importantly, Dr. Rogers is genuinely sorry for his conduct and he will not repeat it or any other criminal conduct.

    iii.   <u>A Time Served Sentence Will Permit Dr. Rogers to Receive Needed Medical Care</u>

Dr. Rogers had chronic health conditions before he was arrested and detained, including a medical history of cancer and his lifelong Type I diabetes.  While detained, he has made best efforts to control his diabetes through diet, exercise, and glucose monitoring.  He also appreciates that the Department of Corrections has made extensive efforts to treat his diabetes.  Nonetheless, Dr. Rogers has found it difficult to control his diabetes in a setting in which he is unable to fully determine his diet and movement.  He would be better able to control his diabetes and receive prompt and thorough treatment for its complications if he is sentenced to time served and is able to seek the care of his regular doctors.

### d.  The Need to Avoid Unwarranted Sentence Disparities

Dr. Rogers has been detained for 16 months, which means that he has already served far more time than similarly situated defendants across the country or in this District.  To avoid unwarranted sentence disparities, a sentence of time served is appropriate.

According to the Sentencing Commission's Interactive Data Analyzer, since 2021, there have been 906 cases nationwide reported to the Commission of convictions for false statements under U.S.S.G. §2B1.1, with a Criminal History Category of I.  Of the 632 cases reported involving imprisonment, the average length of imprisonment was 8 months and the median imprisonment length was 4 months.  *See* Ex. 8.

In the District of Columbia over the last five years, standalone convictions of false statements almost uniformly receive probationary sentences.  In one such case, *United States v. Kokayi*, the defendant pled guilty to lying to FBI agents during a voluntary interview about his

association with the foreign terrorist organization ISIS. Case No. 21-cr-308 (D.D.C. Apr. 16, 2021), ECF No. 7 at 7-10. Despite the government's request for a two-year sentence because it claimed Kokayi's conduct "materially impacted a counter-terrorism investigation into activities of [ISIS]," *see* ECF No. 14 at 1-2, Kokayi was sentenced to probation. *See* 7/16/21 Minute Entry.

The other defendants in this District similarly situated to Dr. Rogers have also received probationary sentences or sentences of minimal incarceration. *See, e.g., United States v. Hong*, Case No. 25-cr-67 (D.D.C. March 13, 2025), 7/17/25 Minute Entry (Bureau of Labor Statistics economist who lied to BLS about sick leave sentenced to probation); *United States v. Driver,* Case No. 24-cr-254 (D.D.C. May 23, 2024), 11/6/24 Minute Entry (Amtrak attendant who lied to Amtrak OIG during an investigation of sexual assault sentenced to time served, without having served time other than his initial arrest); *United States v. Bamber*, Case No. 23-cr-67 (D.D.C. March 7, 2023), 10/24/24 Minute Entry (individual who lied to the FBI about commodity price manipulation despite being subject to a non-prosecution agreement sentenced to probation); *United States v. Powell*, Case No. 21-cr-718 (D.D.C. Dec. 7, 2021), 10/28/22 Minute Entry (individual who lied to ATF agents in course of a firearms trafficking investigation, who had a criminal history category of II, sentenced to 90 days of incarceration); *United States v. Johnson*, Case No. 20-cr-242 (D.D.C. Nov. 2, 3030), 2/9/21 Minute Entry (Office of Personnel Management background investigator who falsely claimed to have conducted background investigations sentenced to probation). The fact that these defendants were sentenced after entering plea agreements cannot account for the disparity between a probationary sentence and a sentence of more than 16 months, and Dr. Rogers should not be punished for exercising his constitutional right to trial on a charge for which he was acquitted.

10

Because it would be an immense disparity for Dr. Rogers to receive a sentence above time served—16 months—when similarly situated defendants serve little or no term of incarceration, this Section 3553(a) factor counsels strongly in favor of a sentence of time served.

## IV.    Conclusion

Dr. Rogers takes seriously the offense of which he was convicted and he regrets his statement to the Federal Reserve OIG.  In light of his advisory Sentencing Guidelines range and all of the applicable Section 3553(a) factors, a sentence of time served is more than sufficient to achieve the goals of sentencing, and any additional sentence would be greater than necessary.

March 13, 2026                                              Respectfully submitted,

*/s/ Stephen A. Saltzburg*
Stephen A. Saltzburg (D.C. Bar No. 156844)
2000 H Street, NW
Washington, DC 20052
Tel.: (202) 994-7089
Fax: (202) 994-9811
Email: sasaltz@law.gwu.edu

*/s/ Jonathan K. Gitlen*
Jonathan K. Gitlen (D.C. Bar No. 990918)
Law Office of Jonathan K. Gitlen PLLC
900 19th Street, NW, Suite 500
Washington, DC 20006
Tel.: (202) 568-5788
Fax: (202) 301-8556
Email: jonathan.gitlen@jgitlenlaw.com

*/s/ Molly Gaston*
Molly Gaston (*pro hac vice*)
Gaston & Cooney PLLC
1455 Pennsylvania Ave. NW, Suite 400
Washington, DC 20004
Tel: (202) 657-0012
Email: mollygaston@gastoncooney.com

*Counsel for Defendant*

11