## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

|  | : |  |
|---|---|---|
| **UNITED STATES** | : |  |
|  | : |  |
| **v.** | : | **Case No. 25-cr-00033 (DLF)** |
|  | : |  |
| **JOHN HAROLD ROGERS** | : |  |
|  | : |  |

## DEFENDANT'S RESPONSE IN OPPOSITION TO
## GOVERNMENT'S SENTENCING MEMORANDUM

The government seeks to do at sentencing what it failed to do at trial: punish the defendant, John Rogers, by sending him to prison for five years for conspiring to commit espionage. But the jury acquitted Dr. Rogers of that serious charge, and the Sentencing Guidelines, the U.S. Constitution, and fundamental fairness forbid punishing him for it now. The government's proposed sentence is wrong for three reasons. First, the government's Guidelines calculation runs afoul of the Guidelines' new provision prohibiting the use of acquitted conduct in calculating Dr. Rogers's advisory sentencing range. Second, the government's arguments that the Court should consider Dr. Rogers's acquitted conduct as part of the Section 3553(a) factors ignores that a growing number of jurists—including five sitting members of the Supreme Court—have sounded the alarm that doing so may violate defendants' constitutional rights. Third, and finally, even under the lesser preponderance of the evidence standard that applies at sentencing, the government has failed to prove that Dr. Rogers committed the acts that it requests the Court now use to dramatically increase his sentence. The Court should decline the government's effort to relitigate the jury's verdict and should give Dr. Rogers the only properly calculated, fair, and proportionate sentence: time served.

I.    **The Sentencing Guidelines Prohibit Consideration of Dr. Rogers's Acquitted Conduct in Calculating the Advisory Guidelines Range**

The government's sentencing memorandum openly contends that this Court should consider Dr. Rogers's acquitted conduct to calculate his advisory Guidelines range.  Just over a year ago, courts were permitted to entertain such an argument.  But now, the amended Guidelines expressly prohibit it.  Under the revised Guidelines, the Court may not consider Dr. Rogers's acquitted conduct in calculating his applicable advisory Guidelines range.

A.  The 2024 Amendment Prohibits the Use of Acquitted Conduct

In 2024, the Sentencing Commission amended the Guidelines specifically to prohibit the use of acquitted conduct when calculating a defendant's advisory Guidelines range.  In particular, the Guidelines now state that relevant conduct—the conduct upon which one bases the Guideline range—"does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction."  USSG §1B1.3(c).  The Sentencing Commission did not intend for the "establishes" exception to mean merely "relating to"—both because such a broad exception would swallow the rule entirely, and also because the Sentencing Commission rejected that exact proposal by the government.  *See* Letter from Jonathan Wroblewski, Director, Office of Policy and Legislation, Criminal Division, U.S. Dept. of Justice, to Judge Carlton W. Reeves, Chair, U.S. Sentencing Commission (Feb. 22, 2024), in U.S. Sentencing Commission, 2023-2024 Amendment Cycle, Proposed Amendments/Public Comment, at 52 (suggesting a broader exception allowing use of conduct that merely "relates . . . to the instant offense of conviction").[1]  The Sentencing Commission's public hearing in advance of the amendment further underscores that the exception

---

[1]    Available    at    https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-comment/202402/88FR89142_ public-comment.pdf

is a narrow one; the kinds of cases that the Commissioners had in mind when crafting the exception involved a jury reaching inconsistent verdicts on multiple counts of the same charge, or interconnected and/or overlapping charges. *See* Sentencing Commission, Public Hearing on Proposed Amendments to the Federal Sentencing Guidelines (March 6, 2024) at 26-28, 127-129 (discussing the need for the exception where a defendant was convicted of committing a crime of violence with a firearm but acquitted of acquiring the firearm, or convicted of a conspiracy to distribute narcotics but acquitted of distribution).[2]

The Sentencing Commission's Section 1B1.3(c) amendment came on the heels of a growing number of legal scholars and jurists raising concerns about the fairness of using acquitted conduct to increase defendants' sentences. Indeed, the Supreme Court appeared poised in 2023 to grant a petition for a writ of certiorari in *McClinton v. United States*, a case that presented the question of "[w]hether the Fifth and Sixth Amendments prohibit a federal court from basing a criminal defendant's sentence on conduct for which a jury has acquitted the defendant." *See McClinton v. United States*, 21-1557, Petition for a Writ of Certiorari at I (June 10, 2022). When denying certiorari, several Justices suggested they were doing so because the Commission appeared ready to address, and curtail, use of acquitted conduct. *See McClinton v. United States*, 143 S. Ct. 2400, 2300-2403 (2023) (Sotomayor, J., noting that "the use of acquitted conduct to increase a defendant's Sentencing Guidelines range and sentence raises important questions that go to the fairness and perceived fairness of the criminal justice system," and writing that the Court's denial of certiorari "should not be misinterpreted. The Sentencing Commission, which is responsible for the Sentencing Guidelines, has announced that it will resolve questions around

---

[2] Available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/ 20240306-07/transcript_20240306.pdf

3

acquitted-conduct sentencing in the coming year.  If the Commission does not act expeditiously or chooses not to act, however, this Court may need to take up the constitutional issues presented."); *see also id*. at 2403 (Kavanaugh, J., joined by Gorsuch and Barrett, JJ., noting that the "use of acquitted conduct to alter a defendant's Sentencing Guidelines range raises important questions. But the Sentencing Commission is currently considering the issue.  It is appropriate for this Court to wait for the Sentencing Commission's determination before the Court decides whether to grant certiorari in a case involving the use of acquitted conduct.").

As the petition in *McClinton* pointed out, the Supreme Court "has never squarely addressed" the constitutionality of sentencing based on acquitted conduct.  *See* Petition for a Writ of Certiorari at 2.  Despite having considered a challenge to the practice based on the Double Jeopardy Clause through a divided summary disposition in *United States v. Watts*, 519 U.S. 148 (1997), the Court has never considered other constitutional challenges, such as under the Fifth Amendment's Due Process Clause or the Sixth Amendment's right to a jury trial.  *Id*.  In the decades since *Watts*, five of the Justices currently sitting on the Supreme Court have signaled concerns about the constitutionality of the use of acquitted conduct in sentencing.  *See McClinton*, 143 S. Ct. at 2403 (Sotomayor, J., noting concerns arising "from a tension between acquitted-conduct sentencing and the jury's historical role"); *id*. at 2403 (Kavanaugh, J., joined by Gorsuch and Barrett, JJ., statement regarding denial of certiorari); *Jones* v. *United States*, 574 U.S. 948, 948-949 (2014) (Thomas, J, joining Scalia, J., in dissenting from denial of certiorari because the "Sixth Amendment, together with the Fifth Amendment's Due Process Clause, requires that each element of a crime be either admitted by the defendant, or proved to the jury beyond a reasonable doubt.") (internal quotations omitted); *United States v. Bell*, 808 F.3d 926, 928 (D.C. Cir. 2015) (then-Judge Kavanaugh writing that "[a]llowing judges to rely on acquitted or uncharged conduct

to impose higher sentences than they otherwise would impose seems a dubious infringement of the rights to due process and to a jury trial."); *United States* v. *Sabillon-Umana*, 772 F.3d 1328, 1331 (10th Cir. 2014) (then-Judge Gorsuch, citing *Jones* and stating that it is "far from certain" that "a district judge may either decrease or increase a defendant's sentence (within the statutorily authorized range) based on facts the judge finds without the aid of a jury or the defendant's consent").

Against this legal backdrop, the Sentencing Commission amended the Guidelines to prohibit the use of acquitted conduct in determining a defendant's advisory Guidelines range, subject to a narrow exception in cases in which the verdict involved closely overlapping charges.

This case does not present a scenario in which the Sentencing Commission intended the use of acquitted conduct, and the Court should not use it in determining Dr. Rogers's advisory Guidelines range.

B.  The Acquitted Conduct in This Case

The indictment in this case charged Dr. Rogers with two counts: (1) conspiracy to commit economic espionage in violation of 18 U.S.C. § 1831(a)(5), and (2) making a false statement in violation of 18 U.S.C. § 1001.  *See* ECF No. 1.

Count One alleged that Dr. Rogers, a longtime employee of the Federal Reserve, conspired with individuals in China, especially an individual called Hummin Lee, to provide Federal Reserve trade secrets to benefit the Chinese government.  *Id*. at 1-6.  The indictment listed, and the government provided to the jury for deliberations, an extensive list of forty-four overt acts that the government alleged were part of the conspiracy.  *Id*. at 7-16; 2/2/26 Trial Tr. 36:6-7.  Although the government alleged that the conspiracy spanned from May 2013 to January 2025 (the time of indictment), the overt acts underlying Dr. Rogers's relationship with Hummin Lee were more

5

concentrated between 2017 and June 2019.  *Id*. at 8-15.  The jury rejected these allegations and acquitted Dr. Rogers of Count One.  ECF No. 79.

Count Two alleged that Dr. Rogers made a false statement in a February 4, 2020, interview with the Federal Reserve Office of the Inspector General when he answered "never" when OIG investigators asked him if he had ever provided restricted Federal Reserve information outside of the agency.  *See* 2/2/26 Trial Tr. 81:14-19.  The government's only direct evidence at trial that Dr. Rogers had provided such information outside of the agency was an email he had sent to an academic co-author at Fudan University—an individual whom the government did not establish was connected in any way to Hummin Lee or the Chinese government.  *See* Gov. Ex. 421.  And in its closing argument, the only evidence on which the government relied as to Count Two was this document—the email to Dr. Rogers's academic co-author, not to Hummin Lee.  *See* 2/2/26 Trial Tr. 81:19-24.  Further separating the offenses, Dr. Rogers's sending of the email to the Fudan academic was not one of the overt acts listed in furtherance of Count One.  *See* ECF No. 1 at 7-16. The jury convicted Dr. Rogers of Count Two.  ECF No. 79.

Counts One and Two of the indictment in this case involve distinct elements.  To prove Count One, the government had to establish beyond a reasonable doubt that Dr. Rogers entered into an agreement to obtain or transmit trade secrets; that Dr. Rogers knew or believed that the information was a trade secret; and that Dr. Rogers knew or intended that his actions would benefit a foreign government, instrumentality, or agent.  2/2/26 Trial Tr. at 30:9-23.  To prove Count Two, the government had to prove beyond a reasonable doubt that Dr. Rogers made a statement; that the statement was material; that the statement was false; that it was made knowingly and willfully; and that it was made in a matter within the jurisdiction of the executive branch.  *Id*. at 37:7-16.

The acquitted conduct in this case is that which the government alleged supports its conspiracy-to-commit-espionage theory, in particular Dr. Rogers's interactions with Hummin Lee in China, which the jury soundly rejected when acquitting him. That conduct was separated geographically and temporally from Dr. Rogers's conduct underlying Count Two, which took place in the United States and occurred seven months after the preceding alleged overt acts in China. Notably, highlighting the disconnect between the two counts, the evidence that the government pointed to as the offense conduct for Count Two—Dr. Rogers's sending of an email to his academic co-author—was not an overt act in support of the conspiracy alleged in Count One. Nor can the false statement that Dr. Rogers was convicted of making to the Federal Reserve OIG be considered part of the same course of conduct as the acquitted espionage conspiracy. *See, e.g.*, USSG §1B1.3 App. Note 5(B)(ii) (noting that factors appropriate to the determination of whether offenses are sufficiently related include temporal proximity and similarity, neither of which exist here).

Although the government's memorandum is lengthy, nowhere does it explain how Dr. Rogers's acquitted conduct "establishes" the instant offense of conviction—because it cannot. Count Two of the indictment, as explained above, charges that Dr. Rogers made a false statement on February 4, 2020, and the government's theory at trial was that the false statement was actually a single word—"Never"—in response to a question about whether Dr. Rogers had ever provided restricted Federal Reserve information outside of the agency. It was obviously not necessary for the government to prove a conspiracy in Count One in order to prove Count Two—because the single document that Dr. Rogers sent to his Fudan co-author, the only document on which the government relied on at trial for Count Two, was sufficient. Likewise, it was not necessary for the government to prove that Dr. Rogers provided restricted Federal Reserve information outside of the agency to convict him on Count One; the Court's instructions to the jury make this plain. Thus,

nothing that the government was required to establish Count One establishes, in whole or in part, the instant offense of conviction, Count Two.

Because the jury acquitted Dr. Rogers of Count One, it would be procedurally improper to consider his alleged conduct in support of that count—the extensive conduct that the government alleged at trial with respect to Dr. Rogers's relationship with Hummin Lee—to increase his advisory Guidelines range for Count Two.

C.   The Government's Guidelines Calculation Violates Section 1B1.3(c)

In its sentencing memorandum, the government runs roughshod over the jury's acquittal and the Sentencing Guidelines' prohibition on considering acquitted conduct to increase a Guidelines range.  Its calculation is wrong and the Court should not adopt it.

The government's memo improperly advocates applying multiple enhancements to Dr. Rogers's advisory Guidelines range based on his acquitted conduct.  First, it recycles at length the alleged conduct of which Dr. Rogers was acquitted, *see* Gov. Memo at 1-4, claims that it is not acquitted conduct because it "establishes" the offense of conviction, *id*. at 4-5, and then argues that there is no harm or foul because the Court can simply consider the acquitted conduct at the Section 3553(a) stage instead, *id*. at 5.  But the government's reliance on the "establishes" exception is wrong, as is its breezy suggestion that it is not critical that the Court properly determine Dr. Rogers's advisory Guidelines range as the first step of sentencing.  *See Gall v. United States*, 552 U.S. 38, 49-50 (2007) ("a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" before then moving on to the step of considering all the Section 3553(a) factors).

The government does not explain its interpretation of the "establishes" exception to the Section 1B1.3(c) prohibition on use of acquitted conduct, other than asserting that it authorizes using evidence of Dr. Rogers's actions with Hummin Lee to prove a motive to make a false

8

statement, *see* Gov. Memo at 4-5, and that there is "no logical inconsistency in considering the conduct associated with Count 1 as part of the conduct of conviction associated with Count 2." *Id.* at 5. There is, in fact, a logical inconsistency in the government's argument that "[t]he evidence supporting the economic espionage conspiracy count was intended to show that the defendant *agreed* with Hummin Lee and other PRC spies to provide them with restricted, non-public, and sensitive Federal Reserve information for the benefit of the PRC government," and "[t]he evidence supporting the false statements count showed that the defendant *actually did provide* such information to Lee," *id.*—because the jury rejected exactly these allegations. As an initial matter, this argument elides the fact that the government's theory at trial of Count Two related to Dr. Rogers's email to his Fudan co-author—conduct that the government never proved was connected to the espionage conspiracy. Beyond that, the government's argument adopts such a broad interpretation of "establishes" so as to render Section 1B1.3(c) meaningless; by that measure, the government could always use acquitted conduct if it were at all related to or relevant to the charge of conviction, which is precisely why the Sentencing Commission rejected such a broad exception when the government suggested it during the comment phase of the amendment's creation.

Each of the enhancements that the government supports rest firmly on acquitted conduct and is not proper under Section 1B1.3(c). We take these enhancements in turn:[3]

### a.   2B1.1(b)(1): Gain between $250,001 and $550,000—+12

The government advocates for an enhancement under Section 2B1.1(b)(1) that is improper for multiple reasons—first, because it is based on acquitted conduct; second, because it omits part of the relevant guideline that would require the government to concede that there was no loss; and

---

[3] Defense counsel received the Probation Office's final Presentence Investigation Report this afternoon. In ECF No. 112, we filed detailed objections to the draft Presentence Investigation Report that remain objections to the final report. We reassert those objections here based on the arguments set forth throughout this pleading.

third, because there was no value to the documents that the government alleged, and that the jury acquitted, Dr. Rogers of having shared with Hummin Lee.

First, the enhancement is improper because it relies solely on acquitted conduct. The government argues that the evidence presented at trial proved that the defendant "shared restricted Federal Reserve information with people in China, including a Chinese intelligence officer," see Gov. Memo, Exhibit A at 1, but this is precisely the conduct of which the jury acquitted Dr. Rogers.

Second, the government omits a decisive portion of the Guideline in question that demonstrates that it is not applicable here, because there was no loss. The government's memo reports that Section 2B1.1(b)(1)(B) "states that when intended or actual loss cannot be reasonably determined, the Court "shall use the gain that resulted from the offense as an alternative measure of loss.'" *Id*. But this partial quotation is misleading, because the full provision continues beyond "alternative measure of loss" to read, "*only if there is a loss* but it reasonably cannot be determined." *See* USSG §2B1.1(b)(1)(B) (emphasis added). The government's memo then concedes that there was no loss: "According to the Government's witnesses at trial, the Federal Reserve information that that the defendant shared was very valuable and could have been used by people trading securities to make an enormous amount of money. *It was not, however, the type of information that caused the Federal Reserve to suffer any actual pecuniary loss*." *Id*. (emphasis added). Separate from the acquitted conduct issue, the loss guideline simply does not apply here.

Third, we submit that contrary to the government's claim, there was no value to the documents that Dr. Rogers was alleged to have shared, as demonstrated by the attached expert affidavits of Mr. Greg Feldberg and Dr. Charles Engel. *See* Exs. 1, 2 (Feldberg) and 3 (Engel).

It would be improper for the Court to apply this enhancement to Dr. Rogers's advisory sentencing Guidelines range.

10

> b. *2B1.1(b)(10): Substantial part outside the U.S./sophisticated means—+4*

The government advocates an enhancement under Section 2B1.1(b)(10) because it claims that a substantial part of the offense occurred outside of the United States and involved sophisticated means. This improper enhancement relies on acquitted conduct.

The offense of conviction was a false statement that occurred in the United States on November 4, 2020. The conduct that the government cites for this enhancement, *see* Gov. Memo, Ex. B at 1, has no bearing on that offense, and instead includes transfers of information allegedly occurring in China, communications with a Chinese spy, and the sharing of information in China. This is all acquitted conduct and the enhancement is thus barred by 1B1.3(c). It would be improper for the Court to apply it. Moreover, none of the conduct that took place in China occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for the offense of conviction, as required under §1B1.3.

> c. *2B1.1(b)(14)(B): Defendant knew or intended offense would benefit foreign government, instrumentality, or agent—+4*

The government next advocates an enhancement under Section 2B1.1(b)(14)(B) based on its allegation that Dr. Rogers "knew or intended that the that the offense would benefit a foreign government, foreign instrumentality, or foreign agent." *Id*. This proposed enhancement is the very definition of acquitted conduct: the jury rejected the Count One espionage charge, an element of which was that Dr. Rogers "must know or intend that his actions would benefit a foreign government, foreign instrumentality, or foreign agent." 2/2/26 Trial Tr. at 48:3-5. No such conduct has any bearing on any element of Count Two, the count of conviction. It is not relevant conduct under §1B1.3. It would be improper to apply this enhancement to Dr. Rogers's advisory Guidelines range.

11

      *d.  3B1.3: Abuse of position of trust—+2*

The government claims that Dr. Rogers's "access to restricted Board information significantly facilitated the commission of the offense," Gov. Memo, Exhibit B at 2, but does not explain to what offense it refers. The only offense it could mean would be the acquitted espionage offense, as that is the offense in which Dr. Rogers's access to restricted Board information played a role in the government's allegations. But Dr. Rogers's access to restricted Board information did not "significantly facilitate" the offense of false statements, for which access to the restricted information is not a prerequisite. Because this enhancement again constitutes an attempt to increase Dr. Rogers's sentencing range based on acquitted conduct in violation of Section 1B1.3(c), it is improper.

      *e.  3C1.1: Obstructing or impeding administration of justice—+2*

Finally, the government claims that Dr. Rogers committed perjury at trial because he explained that ultimately, he was not paid by SHUFE and that Hummin Lee presented himself convincingly as a professor who acted as a teaching assistant to Dr. Rogers in informal gatherings. *See* Gov. Memo at 15-19. But the fact that the government is frustrated that Dr. Rogers provided the jury with a genuine, innocent, and ultimately convincing explanation of his informal relationship with SHUFE and his academic sessions with Hummin Lee that differ from the government's allegations does not mean that Dr. Rogers committed perjury.

Dr. Rogers told the truth to the best of his recollection when he said he did not get paid by Shanghai University of Finance and Economics (SHUFE) in the plain meaning of "get paid"— meaning that Dr. Rogers did not keep money from SHUFE. On direct examination and in the context of payment for teaching on sabbatical, Dr. Rogers explained that he did not get paid for his sabbatical teaching at SHUFE, because of visa issues. Trial Tr. 78:13-80:6, 1/30/26 AM. Dr. Rogers subsequently signed a separate employment contract with SHUFE on January 29, 2019,

for prospective work if approved by the Federal Reserve.  Dr. Rogers ultimately never did any work related to that employment contract and cancelled it.  Trial Tr. 106:1-23, 1/30/26 AM. Unbeknownst to Dr. Rogers, SHUFE paid money into Dr. Rogers's Bank of China account, to which he had no access to in the United States.  Trial Tr. 161:15-162:10, 1/30/26 PM.  When Dr. Rogers became aware of the payments, he asked Hummin Lee to return all of the money to SHUFE.  Dr. Rogers subsequently played no part in discussions with SHUFE regarding the repayment.  Electronic messages indicate that Hummin Lee corresponded with officials from SHUFE, discussing the logistics of the transfer and the actual amount of money to be returned, and that ultimately, all but 10,000 RMB (approximately $1,464) was returned in May 2021.  Gov. Ex. 0003 lines 2773-78; 2783-95.  Dr. Rogers believed that all of the money had been returned and only after considering the messages referenced above realized his error.

Dr. Rogers did not perjure himself when describing his relationship with Hummin Lee.  Dr. Rogers explained at trial that he was working with Hummin Lee to teach Hummin Lee's students, and Hummin Lee was serving as an assistant.  *See* Trial Tr. 172:15-174:1, 1/30/26 PM.  Although the government tries to call this a lie by parsing the language of Dr. Rogers's WeChat messages with Hummin Lee referring to reports and homework, these do not "leave no doubt that . . . Hummin Lee was the defendant's student, and not a PhD advisor," Gov. Memo at 18.  Instead, they provide insight into what Dr. Rogers believed was a genuine intellectual and academic exchange, nor does the government explain why a PhD advisor would not also be conducting his own academic research and consulting a noted expert like Dr. Rogers.

D.  <u>The Government's Guidelines Calculation is Procedurally Unreasonable</u>

By advocating for multiple, substantial enhancements to Dr. Rogers's sentence that are improperly based on acquitted conduct, the government calculates an astronomical, above

statutory maximum sentencing range for a defendant convicted of one count of false statements: 63-78 months. See Gov. Memo at 9. This calculation is an improper application of the Sentencing Guidelines and is procedurally unreasonable, and the Court should decline to adopt it.

**II.    Considering Dr. Rogers's Acquitted Conduct at the Section 3553(a) Phase Would Violate His Constitutional Rights**

All of the government's arguments about the Section 3553(a) factors in this case again rest on Dr. Rogers's alleged conduct in the espionage conspiracy of which he was acquitted; indeed, the government spends fifteen pages discussing at length the conduct underlying the espionage conspiracy that it failed to prove to the jury. *See* Gov. Memo at 10-25. But this too is improper. Considering Dr. Rogers's acquitted conduct at the Section 3553(a) phase would violate his constitutional rights. Although precedent in this Circuit permits consideration of acquitted conduct, it does not require it. *See Bell*, 808 F.3d at 928 (then-Judge Kavanaugh empowering "federal district judges . . . in individual cases to disclaim reliance on acquitted or uncharged conduct."). Here, the Court should "consider the jury's acquittal when assessing the weight and quality of the evidence presented by the prosecution and determining a reasonable sentence" and exercise its discretion not to use Dr. Rogers's acquitted conduct to increase his sentence. *United States v. Vaughn*, 430 F.3d 518, 527 (2d Cir. 2005) (Sotomayor, J.).

      a.    *Watts* Does Not Preclude All Constitutional Challenges to Considering Acquitted Conduct at Sentencing

In support of its claim that the Court can consider Dr. Rogers's acquitted conduct at the Section 3553(a) stage, the government cites *Watts*, 519 U.S. 148 (1997). But *Watts* did not preclude all constitutional challenges to the use of acquitted conduct at sentencing; instead, it was a narrow opinion regarding the Double Jeopardy Clause that has limited applicability here. *Watts* does not serve as a basis to consider Dr. Rogers's acquitted conduct in enhancing his sentence.

In *Watts*, a divided Supreme Court held, in a summary disposition, that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." 519 U.S. at 157. *Watts* "presented a very narrow question regarding the interaction of the Guidelines with the Double Jeopardy Clause, and did not even have the benefit of full briefing or oral argument." *United States v. Booker*, 543 U.S. 220, 240 n.4 (2005). Although federal courts have erroneously done so, state courts have not interpreted *Watts* to preclude all constitutional challenges to the use of acquitted conduct at sentencing. *See, e.g.*, *State v. Melvin*, 248 N.J. 321, 325 (N.J. 2021) (contesting that *Watts* was on point regarding a due process challenge); *People v. Beck*, 504 Mich. 605, 608 (Mich. 2019) (finding that *Watts* concerned the Double Jeopardy Clause and was not helpful in considering a Due Process Clause challenge to the use of acquitted conduct).

In the decades following *Watts*, the Supreme Court issued a line of decisions making clear the constitutional safeguards provided by the Sixth Amendment right to a jury trial and the Fifth Amendment due process right, discussed below, and repeatedly stressed the importance of a defendant's right to have a jury decide facts essential to punishment: "Only a jury, acting on proof beyond a reasonable doubt, may take a person's liberty. That promise stands as one of the Constitution's most vital protections against arbitrary government." *United States v. Haymond*, 588 U.S. 634, 637 (2019) (plurality op.). Logically following that reasoning and principles of fundamental fairness, jurists, including those on the Supreme Court, have questioned the practice of considering acquitted conduct. *See McClinton*, 143 S. Ct. at 2403 (Sotomayor, J.); *id*. at 2403 (Kavanaugh, J., joined by Gorsuch and Barrett, JJ.,); *Bell*, 808 F.3d at 928 (D.C. Cir. 2015) (then-Judge Kavanaugh); *Sabillon-Umana*, 772 F.3d at 1331 (then-Judge Gorsuch).

Given the criticism of the use of acquitted conduct at sentencing and the development of the law since *Watts*, the continuing applicability of its holding even regarding the Double Jeopardy Clause has been questioned. *See, e.g.*, *McClinton*, Petition for a Writ of Certiorari at 22 (stating that intervening "series of cases provides a compelling reason to at least limit *Watts* to the Double Jeopardy context, if not to overrule it entirely"). The Supreme Court is "less constrained to follow precedent" where an "opinion was rendered without full briefing or argument," as in *Watts*. *Hohn v. United States*, 524 U.S. 236, 251 (1998). Accordingly, to the extent that the Supreme Court reconsiders the issue of whether the use of acquitted conduct violates the Double Jeopardy Clause, Dr. Rogers asserts that it does.

      b. <u>Using Acquitted Conduct Would Violate Dr. Rogers's Sixth Amendment Jury Trial Right and Fifth Amendment Due Process Right</u>

The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law," and the Sixth Amendment guarantees the right to an impartial jury. U.S. Const. amend. V, VI. These provisions work together to ensure that an individual is entitled to a jury's verdict beyond a reasonable doubt on every element of a crime. *See Alleyne v. United States*, 570 U.S. 99, 105 (2013) (the Sixth Amendment right to trial by an impartial jury, "in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt." (internation citations omitted)). Rather than respecting that the Fifth and Sixth Amendments place "the jury at the heart of our criminal justice system," *Erlinger v. United States*, 602 U.S. 821, 831 (2024), the government is encouraging the Court to sentence Dr. Rogers in exactly the same way as if he had been convicted of conspiring to transfer trade secrets to a Chinese spy. But using acquitted conduct in this way to increase Dr. Rogers's punishment at sentencing would violate his due process and jury trial rights, and the Court should not permit it.

16

After *Watts*, the Supreme Court decided a series of cases spelling out the jury's vital role in the administration of criminal justice. *See e.g., Jones v. United States*, 526 U.S. 227, 243 n.6 (1999) (holding that "under the Due Process Clause of the Sixth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt"); *Apprendi v. New Jersey*, 530 U.S. 466, 497 (2000) (a jury must find facts increasing a statutory maximum); *Ring v. Arizona*, 536 U.S. 584, 589 (2002) (a jury must find facts predicating a death penalty sentence); *Blakely v. Washington*, 542 U.S. 296, 305 (2004) (a jury must determine beyond a reasonable doubt all facts legally essential to a sentence); *United States v. Booker*, 543 U.S. 220, 227 (2005) (the Sixth Amendment applies to the Sentencing Guidelines); *Cunningham v. California*, 549 U.S. 270, 274 (2007) (state sentencing law that allowed judges to find sentence-elevating facts violated the Sixth and Fourteenth Amendments); *Alleyne*, 570 U.S. at 101 (jury must find each fact that increases a mandatory minimum sentence); *Hurst v. Florida*, 577 U.S. 92, 94 (2016) ("the Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death").

In the midst of these decisions, in a dissent from denial of certiorari, Justice Scalia, joined by Justices Thomas and Ginsburg, decried that the Supreme Court had not acted on the question of whether "the Sixth Amendment is violated when courts impose sentences that, but for a judge-found fact, would be reversed for substantive unreasonableness." *Jones v. United States*, 574 U.S. 948, 948 (2014). In that dissent, involving two defendants who were acquitted of conspiring to distribute drugs and then were found at sentencing to have engaged in the same conduct, Justice Scalia stated that this may have violated the defendants' constitutional rights and explained the issue with a succinct review of cases:

17

> The Sixth Amendment, together with the Fifth Amendment's Due Process Clause, "requires that each element of a crime" be either admitted by the defendant, or "proved to the jury beyond a reasonable doubt." *Alleyne* v. *United States*, 570 U. S. 99, 104 (2013). Any fact that increases the penalty to which a defendant is exposed constitutes an element of a crime, *Apprendi* v. *New Jersey*, 530 U. S. 466, 483, n. 10 (2000), and "must be found by a jury, not a judge," *Cunningham* v. *California*, 549 U. S. 270, 281 (2007).  We have held that a substantively unreasonable penalty is illegal and must be set aside. *Gall* v. *United States*, 552 U. S. 38, 51 (2007). It unavoidably follows that any fact necessary to prevent a sentence from being substantively unreasonable—thereby exposing the defendant to the longer sentence—is an element that must be either admitted by the defendant or found by the jury. It *may not* be found by a judge.

*Id*. at 948-949 (emphasis in original) (cleaned up).

In this Circuit, in her concurrence in the denial of rehearing en banc in *Bell*, Judge Millett identified multiple Sixth Amendment problems with considering acquitted conduct at sentencing. 808 F.3d at 929-932.  Bell's sentencing court found by a preponderance that Bell had engaged in a cocaine conspiracy of which the jury had acquitted him and sentenced him to more than 300% of the Guidelines range for the crimes of conviction.  *Id*. at 929.  Judge Millett described this as a "perverse result" that likely violated the Sixth Amendment because: 1) "allowing a judge to dramatically increase a defendant's sentence based on jury-acquitted conduct is at war with the fundamental purpose of the Sixth Amendment's jury-trial guarantee," 2) recent Supreme Court precedent "casts substantial doubt on the continuing vitality [of permitting use of acquitted conduct], at least when acquitted conduct causes a dramatic and otherwise substantively unreasonable increase in a sentence," and 3) "the Constitution generally affords the prosecution one shot at convicting a defendant of charged conduct" and allowing its use at sentencing gives a second bite at the apple."  *Id*. at 929-932.

Using Dr. Rogers's acquitted conduct would implicate these grave constitutional concerns and more.  *See, e.g.*, *McClinton*, 143 S.Ct. at 2401-2403 (Sotomayor, J., raising concerns that the use of acquitted conduct ignores the historical role of juries and the "special weight" long accorded

to acquittals; implicates "the procedural fairness and accuracy when the [government] gets a second bite at the apple with evidence that did not convince the jury coupled with a *lower* standard of proof"; and harms "the public's perception that justice is being done, a concern that is vital to the legitimacy of the criminal justice system.") The Court should decline the government's urging that it ignore the jury's service at trial and unfairly try Dr. Rogers a second time for his acquitted conduct under a preponderance standard at sentencing.

      c.   The Court Should Exercise its Discretion Not to Use Acquitted Conduct

In light of the serious constitutional concerns voiced by five sitting Supreme Court justices regarding using acquitted conduct in sentencing, nothing compels the Court to do so here. Indeed, when noting the unresolved constitutional pitfalls of the practice in *Bell*, then-Judge Kavanaugh echoed Judge Millett's concerns and wrote separately "to underscore that the problem identified by Judge Millett may be addressed by individual district judges at sentencing." 808 F.3d at 927. He went on to explain that "federal district judges have power in individual cases to disclaim reliance on acquitted or uncharged conduct" and "possess the authority to address the concern articulated by Judge Millett" by choosing at that point to counteract at the Section 3553(a) stage any acquitted-conduct based enhancements at the Guidelines calculation stage. *Id*. at 928. Given the Sentencing Commission's adoption of USSG §1B1.3(c), such accounting is no longer necessary—all a sentencing judge need do is choose not to consider acquitted conduct at the Section 3553(a) stage. We respectfully request that the Court to follow that course here and sentence Dr. Rogers fairly, without regard to the conduct of which the jury acquitted him.

      d.   The Government's Recommended Sentence is Substantively Unreasonable and Would Constitute an Unjust Disparity

The sentence that the government advocates in this case is the statutory maximum of 60 months—a 900 percent increase over Dr. Rogers's appropriately calculated Guidelines range

without consideration of acquitted conduct.  This increase is based almost entirely on the government's efforts to punish Dr. Rogers for the conduct for which the jury acquitted him.  Such a sentence is substantively unreasonable and fundamentally—and vindictively—unfair.

The government's examples of "defendants whose false statements related to PRC espionage activities" receiving 60-month sentences whom it claims are "similarly situated" to Dr. Rogers are particularly revealing.  Gov. Memo at 25.  These examples are not similarly situated to Dr. Rogers—they were all convicted of espionage conduct in addition to false statements—and instead prove how unreasonable and unfair the government's proposal of a statutory maximum sentence for Dr. Rogers is.  The first defendant that the government cites received a sentence of 240 months' imprisonment for conspiring to transmit national defense information to Chinese agents, and a concurrent 60 months for a false statement.  *See United States v. Mallory*, 40 F.4th 166, 173 (4th Cir. 2022).  The other, Ji Chaoqun, was convicted not just of false statements, but of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and of impersonating an agent of a foreign government in violation of 18 U.S.C. § 951.  *See* Case No. 1:18-CR-00611(1), Dkt. No. 409 at 1 (N.D.Il. Jan. 24, 2019).  In comparing Dr. Rogers to individuals convicted of espionage, the government is conceding that it is improperly asking the Court to sentence him now for the very crime of which the jury acquitted him.

Furthermore, in many cases in which defendants are convicted of espionage, their sentences do not approach the excessive one advocated by the government for Dr. Rogers notwithstanding his acquittal for that charge.  *See, e.g.*, *United States v. Xiang*, 67 F.4th 895, 903 (8th Cir. 2023) (Monsanto employee who stole multiple trade secrets to provide to Chinese businesses sentenced to 29 months); *United States v. Yu Xue*, 42 F.4th 355, 360 (3d Cir. 2022) (biochemist who stole trade secrets from GlaxoSmithKline to help Chinese pharmaceutical

company sentenced to 8 months); *United States v. Shi*, Case No. 17-cr-110 (D.D.C. June 8, 2017), 2/10/20 Minute Entry (individual who stole trade secrets regarding buoyancy devices for oil drilling sentenced to 16 months); *United States v. Yihao Pu*, Case No. 1:11-cr-699 (N.D. Il. May 10, 2012), Dkt. No. 292 (data engineer who stole algorithms to create new high frequency trading company sentenced to 18 months).

The actually similarly situated defendants to Dr. Rogers are those sentenced for standalone false statements. For such individuals, as we set forth in our sentencing memorandum, the average length of imprisonment (where there even was imprisonment) was 8 months, and the median imprisonment length 4 months. *See* Def. Memo at 9-10. Dr. Rogers has already served much longer than these sentences.

### III. The Government Failed to Prove that Dr. Rogers Engaged in the Acquitted Conduct Even by a Preponderance of the Evidence

Finally, the Court should not consider Dr. Rogers's acquitted conduct at sentencing because the government has failed to prove it even by a preponderance of the evidence. Throughout its memo, the government recycles the same accusations and argument that it presented unsuccessfully at trial. Dr. Rogers's position is also the same as it was at trial: he is, unfortunately, a dupe who did not recognize that Hummin Lee was a spy, not a friend. But he did not provide restricted Federal Reserve information to Hummin Lee or agree to participate in an espionage conspiracy.

The government's contentions regarding Dr. Rogers's relationship with Hummin Lee are not more likely than Dr. Rogers's. The government's memorandum is so generalized and unsupported by citation that it not possible to respond to each accusation; instead, we provide below a few examples of how the government's claims are refuted by Dr. Rogers's innocent, and equally likely, explanations of his conduct (explanations that the jury credited):

21

- The government repeats its claim that Dr. Rogers provided restricted Federal Reserve information to Hummin Lee, Gov. Memo at 11, but it failed to prove that at trial, despite possessing thousands of communications between the men—because Dr. Rogers did not. The government makes much of Dr. Rogers printing Federal Reserve documents or sending them to himself, close in time to his travels in China and meetings with Hummin Lee, but this is unremarkable—Dr. Rogers was an economist doing work on these very issues and needed access to, and was in some cases required to review as part of his job responsibilities, Federal Reserve materials.

- The government claims that Dr. Rogers "misled" OIG investigators about his relationship with Hummin Lee and did not "disclose to OIG that he frequently met with Hummin Lee for purported 'classes' in hotel rooms." *Id*. at 11-12. This is controverted by the record. In a voluntary interview with OIG that Dr. Rogers initiated for the purpose of seeking help for blackmail threats, Dr. Rogers provided OIG with information about Hummin Lee. Investigators never asked Dr. Rogers about meetings with Hummin Lee, and any suggestion by the government that Dr. Rogers was untruthful because he did not read their minds and volunteer that exact information is troubling and inconsistent with the law. *See United States v. Safavian*, 528 F.3d 957, 965 (D.C. Cir. 2008) (GSA employee did not make a false statement in interview with OIG when he had no legal duty to offer up specific information).

- The government claims, as it did at trial, that Dr. Rogers's communications with Hummin Lee about how to make a course "legitimate in the eyes of the Fed" were nefarious. Gov. Memo at 12. But Dr. Rogers explained convincingly at trial—as supported by the messages themselves—that he was providing Hummin Lee with the requirements that he understood would satisfy the Federal Reserve.

22

Overall, the government's sentencing memo repackages its trial presentation.  The Court observed Dr. Rogers's genuine testimony at trial and had the opportunity to observe Dr. Rogers's extensive, encrypted messages with Hummin Lee—not a single one of which serves as direct evidence of the government's allegations.  In truth, Dr. Rogers is exactly as he appeared at trial— as a friend and former professional colleague writes of him, "a classic example of book smart but lacking common sense."  *See* Ex. 4.  The Court should decline to consider Dr. Rogers's acquitted conduct because the government has not established it by a preponderance of the evidence.

IV.     **The Federal Reserve OIG Declaration**

With its memorandum, the government provides a declaration from the Federal Reserve OIG.  *See* Gov. Memo, Ex. C.  We note here that the declaration appears to conflict with the trial testimony of Federal Reserve OIG Agent Alan Hershkowitz regarding whether Dr. Rogers's "never" answer in the context of his OIG interview delayed an OIG investigation.

The Federal Reserve OIG declaration states that Dr. Rogers's "never" answer materially impeded a criminal investigation.  *See* Gov. Memo, Ex. C at 2.  At trial, Agent Hershkowitz's testimony established the following: that at the time that Dr. Rogers initiated an interview with OIG seeking help with blackmail threats, 1/23/26 AM Trial Tr. 30:11-17, Dr. Rogers was already "on the Board's radar for an insider threat concern related to China," *id*. at 32:4-6, and Agent Hershkowitz investigated Hummin Lee before the interview, including by finding that he was friends with Dr. Rogers on Facebook, *id*. at 35:24-36:6; Dr. Rogers provided in the interview extensive information about Hummin Lee, *id*. at 66-80; Dr. Rogers voluntarily provided OIG access to his Federal Reserve cell phone and personal iPad, *id*. at 88:10-19; and those devices provided evidence for two separate investigations—one of blackmail and one regarding Hummin Lee, *id*. at 90-91 (stating that as investigators analyzed the information from the devices, "we start seeing concerning stuff in there, both related to the blackmail and related to his China connections

with Hummin Lee," and that two weeks later, OIG met with the FBI, and "fast forward a little bit after that, the investigation breaks out into two parallel tracks" and "the espionage part of it continues with the FBI").

Taken together, this testimony indicates no delay to the government's investigation into either the blackmail threat or Dr. Rogers's relationship with Hummin Lee. The Federal Reserve declaration does not explain its conclusion to the contrary, or indeed what criminal investigation his conduct materially impeded. *See* Gov. Memo, Ex. C at 2.

## V.    Conclusion

Dr. Rogers is a retired economist who has led a law-abiding life. For the first time at 64 years old, he now stands convicted only of making a false statement to the Federal Reserve OIG, during a voluntary interview that he initiated, for giving an unequivocal one-word answer when asked if he had ever shared restricted Federal Reserve information outside of the agency. Dr. Rogers was acquitted of the other charge against him—conspiracy to commit espionage—but has now been detained for more than 15 months, far longer than similarly situated defendants are incarcerated for the same offense of conviction. The just and appropriate sentence in this case, given Dr. Rogers's low advisory Guidelines range, lack of criminal history, strong family ties, *see* Ex. 5, the unlikelihood he will reoffend, and the need to avoid unwarranted sentencing disparities, is time served.

The government's sentencing recommendation in this case is procedurally and substantively unreasonable, constitutionally suspect, and fundamentally unfair. The Court should not adopt it, but instead should sentence Dr. Rogers appropriately given the conduct underlying the offense of conviction and the accurate advisory Guidelines range of 0-6 months: time served.

24

March 20, 2026                              Respectfully submitted,


                                           /s/ Stephen A. Saltzburg
                                           Stephen A. Saltzburg (D.C. Bar No. 156844)
                                           2000 H Street, NW
                                           Washington, DC 20052
                                           Tel.: (202) 994-7089
                                           Fax: (202) 994-9811
                                           Email: sasaltz@law.gwu.edu


                                           /s/ Jonathan K. Gitlen
                                           Jonathan K. Gitlen (D.C. Bar No. 990918)
                                           Law Office of Jonathan K. Gitlen PLLC
                                           900 19th Street, NW, Suite 500
                                           Washington, DC 20006
                                           Tel.: (202) 568-5788
                                           Fax: (202) 301-8556
                                           Email: jonathan.gitlen@jgitlenlaw.com


                                           /s/ Molly Gaston
                                           Molly Gaston (*pro hac vice*)
                                           Gaston & Cooney PLLC
                                           1455 Pennsylvania Ave. NW, Suite 400
                                           Washington, DC 20004
                                           Tel: (202) 657-0012
                                           Email: mollygaston@gastoncooney.com


                                           *Counsel for Defendant*

25