**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| **v.** | : | **Case No. 25-cr-00033 (DLF)** |
| | : | |
| **JOHN HAROLD ROGERS** | : | |
| | : | |

## DEFENDANT'S RESPONSE TO COURT'S MAY 26, 2026 MINUTE ORDER

In response to the Court's May 26, 2026, Minute Order, defendant Dr. John Rogers maintains that as the government, defense, and Probation Office all previously agreed, the proper Guideline by which Dr. Rogers should be sentenced is § 2B1.1(a)(2), without cross-reference to any other Guideline. The language of § 2B1.1(c)(3) makes clear that the cross-reference is triggered only when the conduct set forth in the count of conviction establishes an offense specifically covered by another Guideline in Chapter Two. In this case, regardless of what record the Court considers—whether only the conduct alleged in Count Two of the indictment, which is proper under the Guidelines and supported by various Courts of Appeals decisions, only Dr. Rogers's relevant conduct, or even his acquitted conduct (which is prohibited by § 1B1.3(c))—there is no evidence establishing an offense specifically covered by another guideline in Chapter Two, including § 2J1.2. In further response to the Court's Minute Order, even if the Court were to improperly sentence Dr. Rogers under the § 2J1.2 Guideline, none of that Guideline's enhancements apply here. Accordingly, the Court should sentence Dr. Rogers under § 2B1.1 and impose the only just and reasonable sentence: time served.

## I.      Section 2J1.2 is Not the Appropriate Guideline

To date, the government, defense, and Probation Office have all agreed that the proper Guideline under which to sentence Dr. Rogers is § 2B1.1(a)(2). *See* Government's Sentencing

Memo, ECF No. 115 at 9; Defendant's Memorandum in Aid of Sentencing, ECF No. 116 at 4; Final Presentence Investigation Report, ECF No. 117 at 9. Through a Minute Order on May 26, the Court posited whether instead, a cross-reference to § 2J1.2 is appropriate to consider Dr. Rogers's offense conduct as constituting "for example, 18 U.S.C. § 1512(b)(3)." *See* 5/26/26 Minute Order. It is not. Under the Guidelines, such a cross-reference is warranted only when the "conduct set forth in the count of conviction establishes an offense specifically covered by another guideline in Chapter Two." U.S.S.G. § 2B1.1(c)(3). Here, however, the government has never even alleged that Dr. Rogers's single, momentary false statement on February 4, 2020, amounted to obstruction, and for good reason—there is no proof, even by a preponderance, of any such thing.

There is no evidence in the record that Dr. Rogers violated the obstruction statute cited in the Court's Minute Order. That section makes it a crime when a person:

> [K]nowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings.

18 U.S.C. § 1512(b)(3). The heightened "corrupt" intent required for an obstruction offense is necessary to prevent the law "from sweeping up a great deal of conduct that has nothing to do with obstruction." *United States v. Fischer*, 64 F.4th 329, 339-340 (D.C. Cir. 2023) (overruled on other grounds) (reviewing definitions of "corruptly," including "associated with wrongful, immoral, depraved, or evil conduct;" "with a corrupt purpose, through independently corrupt means;" and "voluntarily and intentionally to bring about either an unlawful result or a lawful result by some unlawful method, with a hope or expectation of either financial gain or other benefit to oneself or a benefit of another person") (internal quotations and citations omitted); *see also id*. at 352

(Walker, J., concurring, defining corruptly as "with an intent to procure an unlawful benefit either for himself or for some other person").

The elements of the false statement charge in Count Two of the indictment, which is the only count of conviction, are wholly distinct from the elements of 18 U.S.C. § 1512(b)(3). The elements of a false statement offense under 18 U.S.C. § 1001 are that the defendant made a statement; that the statement was material; that the statement was false; that it was made knowingly and willfully; and that it was made in a matter within the jurisdiction of the executive branch. *See* 2/2/26 Trial Tr. at 30:9-23. The definition of "knowingly and willfully" means to act "voluntarily and intentionally and not because of mistake or accident," and "with the bad purpose to disobey or disregard the law." *Id*. at 38:6-12.

Count Two charged Dr. Rogers with making a false statement in violation of 18 U.S.C. § 1001 on February 4, 2020. It is clear from the record that on that day, Dr. Rogers had no motive or intent to try to prevent the communication of information to law enforcement, since no one had suggested to him that he or anyone close to him was being investigated, even preliminarily, of a potential commission of a federal offense. Dr. Rogers initiated the interview with the Office of Inspector General on February 4, and he did so for the sole reason that he was being blackmailed, his 18-month-old daughter had been threatened, and he needed help. This is undisputed.

As such, the government has consistently taken the position that Dr. Rogers's offense should be addressed in the Guidelines where it belongs—§ 2B1.1(a)(2). *See* Government's Opposition to Defendant's Motion for Release from Detention Pending Sentencing, ECF No. 98 at 5 ("the applicable Guideline is § 2B1.1, not § 2J1.2. Under 2B1.1, as with an economic espionage conviction . . . the Court may consider the actual or intended pecuniary loss or gain resulting from Defendant's deceit"). But under that Section, the government has conceded that in

3

this case, there was no actual or intended loss.  *See* Government's Sentencing Memo, ECF No. 115-1, Attachment A at 1 (government conceding that "the Federal Reserve information that the defendant shared . . . was not . . .  the type of information that caused the Federal Reserve to suffer any actual pecuniary loss. Moreover, no evidence was presented at trial indicating that the defendant intended to cause any pecuniary loss to the Federal Reserve").

Courts are divided on what allegations they may rely on in determining whether to apply the § 2B1.1(c)(3) cross-reference to another Guideline.  Although there is no controlling precedent in this Circuit, other circuits have held that such cross-referencing is limited to the indictment's language for the count of conviction.  In any event, in this case, whether the Court considers only the indictment's Count Two language, Dr. Rogers's relevant conduct across the record, or even Dr. Rogers's acquitted conduct (which is prohibited by § 1B1.3(c)), there is not sufficient evidence by a preponderance that Dr. Rogers committed any offense of obstruction.  A cross-reference to § 2J1.2 is thus improper.

a.    The Cross Reference is Improper Based on the Indictment

The Court should base its determination of the applicability of § 2B1.1(c)(3) only on the count of conviction as described in the indictment—which many other Circuits have held is required.  If it does so, it would clearly be improper to apply the cross-reference in Dr. Rogers's case.  The count of conviction, Count Two of the indictment, merely recites the statutory language and does not even specify what Dr. Rogers's false statement was; it cannot possibly then also satisfy the elements of an obstruction offense.

Several Circuits have held that the § 2B1.1(c)(3) cross-reference to another offense Guideline is only proper when the language of the indictment's count of conviction satisfies the elements of another crime.  *See United States v. Wendt*, 168 F.4th 1068, 1078 (8th Cir. 2026) ("Section 2B1.1(c)(3) applies only if the conduct alleged in the count of the indictment of which

the defendant is convicted establishes the elements of another offense") (internal quotation omitted); *United States v. Nucera*, 67 F.4th 146, 174 (3d Cir. 2023) ("We hold that a cross reference under § 2B1.1(c)(3) is appropriate only when the defendant's conduct of making the false statement itself constitutes or establishes the offense addressed in the other guideline"); *United States v. Arturo Garcia*, 590 F.3d 308, 315 (5th Cir. 2009) (finding "persuasive the reasoning of several other circuits, which after considering this same issue, have held that a sentencing court may apply a cross-reference provision under U.S.S.G § 2B1.1(c)(3) only if the application of that provision is supported by the conduct alleged in the indictment"); *United States v. Genao*, 343 F.3d 578, 583 (2d Cir. 2003) ("the plain language of § 2B1.1(c)(3) indicates that § 2B1.1(c)(3) is applicable only if the conduct alleged in the count of the indictment of which the defendant is convicted establishes the elements of another offense").

In *Nucera*, the Court examined the Guideline as well as how other Circuits had applied it and explained:

> The cases tell us "establish" means "constitute" or "equate to."  We hold that a cross reference under § 2B1.1(c)(3) is appropriate only when the defendant's conduct of making the false statement itself constitutes or establishes the offense addressed in the other guideline.  Here, the lying did not constitute, or establish, the civil rights violation. Instead, Nucera lied *about* whether he had committed a civil rights violation.

67 F.4th at 174 (emphasis in original); *see also id*. at 175 (describing the circumstances of *United States v. Bah*, 439 F.3d 423, 426 (8th Cir. 2006), in which even though witness testimony "showed Bah violated something more serious than 18 U.S.C. § 1001, 'the conduct set forth in the count of conviction' still failed to 'establish that Bah committed an offense punishable pursuant to [another guideline].  Bah lied about what he knew, but that lie did not constitute either of the offenses the district court cross referenced").

There does not appear to be binding D.C. Circuit authority on this issue.  The D.C. Circuit did not directly address it in *United States v. Nguyen*, 801 F.App'x 788 (D.C. Cir. 2020), the opinion cited in the Court's Minute Order, and the parties did not raise it.  But such a conclusion—that the charge of conviction as pled in the indictment must establish the cross-referenced offense—is supported by a plain reading of the Guidelines, the Sentencing Commission's intent when it added the cross-reference, and the Constitution's guarantees.  The various circuit decisions review the legislative history of the cross-reference and conclude that the Commission intended to limit the applicability of the cross-reference.  *See, e.g., Genao*, 343 F.3d at 583-584 (interpretation of the cross-reference "bolstered by the fact that § 2B1.1 replaces a previous Guideline . . . that contained substantially broader language").  Moreover, sentencing Dr. Rogers for obstruction when the government did not allege it or make out its elements in the indictment risks violating his constitutional rights to fair notice, due process, and the right to a jury's verdict beyond a reasonable doubt.  *See United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018) (an indictment must give a defendant "fair notice of the charge against which he would need to defend himself" and "enable him to protect himself against future prosecution for the same offense"); *see also* Defendant's Response in Opposition to Government's Sentencing Memorandum, ECF No. 119 at 14-19.  Indeed, if the indictment did not allege obstruction, then the grand jury cannot be understood to have found it even on a probable cause basis, further supporting that it would be improper for the Court to determine it now by a preponderance.

The indictment's charge of conviction plainly does not establish an obstruction offense.  In it, the government used statutory language and did not plead what specific statement Dr. Rogers made that was false.  The charge of conviction states:

> On or about February 4, 2020, in the District of Columbia, the defendant, JOHN HAROLD ROGERS, who acted in furtherance of the conspiracy alleged in Count

> One, did willfully make a false statement in a matter within the jurisdiction of the Federal Reserve Board whose office is located in the District of Columbia, and the statement was material to the activities or decisions of the Federal Reserve Office of Inspector General.

ECF No. 1 at 17.  Although Count Two of the indictment incorporates Count One by reference, even if the Court could consider the language of Count One notwithstanding the jury's acquittal of Dr. Rogers of it—which the Court cannot, because § 1B1.3(c) prohibits it—Count One provides no additional facts or allegations sufficient to establish the elements of any obstructive offense. Furthermore, the *mens rea* for Count One was knowing and intentional, *see* 2/2/26 Trial Tr. at 32:15-25, 33:1—meaning that nowhere in the entire indictment did the government allege or establish that Dr. Rogers had corrupt intent, as required in an obstruction offense.  Accordingly, the indictment fails to establish an obstruction offense because it does not identify Dr. Rogers's specific misleading conduct, the federal offense or possible federal offense he sought to conceal, or his corrupt intent to conceal it.  Based on the indictment's language, it would be improper for the Court to use the obstruction Guideline.

> b.  The Cross Reference is Improper Based on Dr. Rogers's Relevant Conduct

Dr. Rogers's relevant conduct under the Guidelines, as borne out by the full record, also makes clear that a cross-reference to the obstruction Guideline is improper in this case.  Under the Guidelines, relevant conduct is that which "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."  U.S.S.G. § 1B1.3(a)(1).  In this case, the offense of conviction was the false statement that Dr. Rogers made on February 4, 2020, in the United States, in an interview with the Federal Reserve Office of Inspector General.  The trial record supporting that conviction does not establish the elements of an obstruction offense.

7

Instead, the government's own evidence makes plain that Dr. Rogers's offense of conviction was not one of obstruction. A government witness testified that the context of Dr. Rogers's false statement was an interview with OIG that Dr. Rogers initiated to seek help for alarming blackmail threats. *See* 1/23/26 Trial Tr. 30:11-31:9. These threats bore no relation to China or Dr. Rogers's work there. *Id.* at 37:6-12. OIG did not seek the interview as part of any ongoing investigation into potential federal crimes regarding Dr. Rogers's dealings in China or relationship with Hummin Lee, nor was Dr. Rogers apprised of any such investigation during the interview. And the false statement of conviction was Dr. Rogers's unequivocal, one-word answer to a broad question—whether he had ever shared restricted Federal Reserve information outside of the agency. *See* 2/2/26 Trial Tr. 81:14-19 ("I want to play for you first the statement, the false statement the defendant made in his interview with the Fed OIG . . . He said never; he said he never provided restricted Board information outside of the Board."). The only direct evidence to which the government pointed to establish that Dr. Rogers's "never" response was false was Dr. Rogers's email to a Fudan University co-author who was wholly unconnected to the alleged espionage conspiracy. *See* 2/2/26 Trial Tr. 81:19-24. At the conclusion of the interview, as the government's witness testified, Dr. Rogers voluntarily gave his Federal Reserve phone and personal iPad to the OIG agents with consent to search them. *See* 1/23/26 AM Trial Tr. 88:10-19. This record of Dr. Rogers's relevant conduct does not establish a violation of 18 U.S.C. 1512(b)(3). When speaking with OIG voluntarily and of his own initiative, Dr. Rogers was unaware of any investigation into potential federal crimes, and the government did not establish any motive or intent to obstruct such an investigation—especially given Dr. Rogers's willingness to provide his devices.

Dr. Rogers's false statement of conviction here bears no relation to that of the defendant in *Nguyen*, 801 F.App'x 788 (D.C. Cir. 2020), the case that the Court cited in its Minute Order. In *Nguyen*, the defendant, himself a federal law enforcement officer, told repeated lies to DHS agents who were investigating whether Nguyen had engaged in bulk cash smuggling. *See* Case No. 17-cr-238 (D.D.C. 2017), ECF No. 53, Sent. Hr'g. Tr. at 13:12-16. As evidence of Nguyen's knowing and willful obstruction, Judge McFadden cited that "he participated in two interviews with [federal agents] before making any statement. He was given several explicit warnings that he was under investigation. He was warned that the agents were investigating the alleged Bank Secrecy Act violation and that the interview was related to possible criminal conduct by him." *Id*. at 13:16-21. In short, in *Nguyen*, the defendant knew that there was an ongoing federal investigation into his own potential criminal conduct, and he lied to the investigators conducting that inquiry to obstruct it. There is no evidence in the record that Dr. Rogers did anything of the sort, nor that he had the corrupt intent to commit obstruction.

      c.   <u>The Cross Reference is Improper Even Based on Acquitted Conduct in Violation of 1B1.3(c)</u>

Another distinction between Dr. Rogers's case and *Nguyen* is that defendant Nguyen was sentenced before the Sentencing Commission barred consideration of acquitted conduct in determining defendants' advisory Sentencing Guidelines ranges. *See Nguyen*, 801 Fed. Appx. At 790. But even if the Court here were to consider all of Dr. Rogers's acquitted conduct—which it cannot, based on § 1B1.3(c)—the government still cannot make out the elements of obstruction in violation of 18 U.S.C. 1512(b)(3).

Unlike in *Nguyen*, the full trial record in Dr. Rogers's case, including all of the government's allegations regarding the espionage conspiracy, still fails to establish that Dr. Rogers corruptly intended "to hinder, delay, or prevent the communication to a law enforcement officer

. . . relating to the commission or possible commission of a Federal offense." 18 U.S.C. 1512(b)(3).

Given the circumstances of the OIG interview, which Dr. Rogers understood to be about blackmail threats; the fact that Dr. Rogers was not under investigation for potential crimes related to Hummin Lee; Dr. Rogers's willingness to discuss Hummin Lee and disclose his relationship with him; and Dr. Rogers's voluntary surrender of his devices, there is not sufficient proof, even by a preponderance, that Dr. Rogers was obstructing the discovery of a possible federal offense.

**II.     Even Under Section 2J1.2, None of the Enhancements Cited by the Court Apply**

The Court's Minute Order also asked the parties to address whether, if § 2J1.2 is applied, any enhancements under that Guideline are appropriate for Dr. Rogers's relevant conduct. The answer to this question is also no. Furthermore, even if the Court were to improperly sentence Dr. Rogers under § 2J1.2, his advisory Guidelines range would still counsel in favor of a sentence of time served.

a.     Section 2J1.2(b)(2) is Inapplicable

A § 2J1.2(b)(2) enhancement for an offense that "resulted in substantial interference with the administration of justice" is not applicable in this case.

First, Dr. Rogers's false statement did not occur in the context of the administration of justice. The D.C. Circuit has held that "Section 2J1.2's text, context, and commentary show that 'administration of justice' refers to judicial, quasi-judicial, and adjunct investigative proceedings." *United States v. Brock*, 94 F.4th 39, 51-52 (D.C. Cir. 2024) (pointing to the Guideline's commentary discussing as examples "premature or improper termination of a felony investigation; an indictment, verdict, or any judicial determination based upon perjury, false testimony, or other false evidence; or the unnecessary expenditure of substantial government or court resources."). As discussed above, there is no evidence that Dr. Rogers's relevant conduct underlying the false

statement included awareness of a judicial proceeding or adjunct investigative proceeding, much less any intent to interfere with any such proceeding or investigation.

Second, as we pointed out in our response to the government's sentencing memorandum, ECF No. 119 at 23-24, the government's evidence at trial indicates that Dr. Rogers's false statement did not delay, or result in substantial interference of, the Federal Reserve OIG investigation.

b. Section 2J1.2(b)(3) is Inapplicable

Section 2J1.2(b)(3)'s enhancement for an offense that "involved the destruction, alteration, or fabrication of a substantial number of records, documents, or tangible objects" is not appropriate in this case.

As an initial matter, it is unclear what conduct the Court contemplates in its Minute Order might warrant such an enhancement. But to the extent it is the government's allegations that Dr. Rogers removed header information from Federal Reserve documents to send them to himself, *see* Government's Response to Defendant's Sentencing Memorandum, ECF No. 120 at 6-7, that is not relevant conduct for Dr. Rogers's count of conviction. Relevant conduct is that which "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1). Dr. Rogers's alteration of Federal Reserve documents in emails to himself do not constitute preparation for, commission, or an attempt to avoid detection for a false statement that he made months later in an interview with the Federal Reserve OIG that he initiated to discuss blackmail threats.

In addition, Dr. Rogers's alteration of documents to send them to himself is acquitted conduct that the government alleged in support of its espionage allegations in Count One, which the jury rejected. The Court cannot consider this conduct in calculating Dr. Rogers's advisory

11

Guidelines range and thus cannot use it to apply the § 2J1.2(b)(3) enhancement. *See* Defense Response to Government Sentencing Memo, ECF No. 119 at 5-13.

      c.   Sections 3B1.3 and 3C1.1 are Inapplicable

Neither a § 3B1.3 enhancement for abuse of trust nor a § 3C1.1 enhancement for obstructing or impeding the administration of justice with respect to the prosecution of the offense is warranted here for the reasons discussed in the Defendant's Response in Opposition to Government's Sentencing Memorandum, ECF No. 119 at 12-13.  The proper focus on Dr. Rogers's relevant conduct, without regard to his acquitted conduct, demonstrates that neither enhancement should apply.

With respect to an abuse of a position of trust, Dr. Rogers's offense of conviction was one word—"never"—in the course of his OIG interview.  Dr. Rogers's access to restricted Federal Reserve information did not "significantly" facilitate the offense of false statements, for which such access is not a prerequisite.  Notably, the cases that the government cited in its response to the defendant's sentencing memorandum to argue for the imposition of an abuse of trust enhancement, *see* Government's Response to Defendant's Sentencing Memorandum, ECF No. 120 at 15-16, in fact demonstrate why such an enhancement is not appropriate here, because in all of them, the enhancement was applied not because of a false statement—for which a position of trust cannot be a predicate—but because of some other substantive offense that the defendant's position of trust significantly facilitated.  *See United States v. Bikundi*, 926 F.3d 761 (D.C. Cir. 2019) (enhancement imposed because health care fraudsters used their position of trust with DC Medicaid to commit healthcare fraud); *United States v. Shyllon*, 10 F.3d 1 (D.C. Cir. 1993) (enhancement imposed because a DC tax auditor used his position to threaten and harass victims); *United States v. Kingsbury*, 107 F.4th 879 (8th Cir. 2024) (FBI analyst was convicted of willfully retaining national defense information, and question for court was whether an abuse of position of

trust was inherent to crime); *United States v. Ford*, 288 F.App'x 54, 61 (4th Cir. 2008) (where, for NSA employee convicted of violating the espionage act and false statements, the espionage act count was the reason for the application of the enhancement, with the Court holding "Ford simply would not have been able to commit the offense of retaining classified documents without permission if he had not held a top secret security clearance.").

Similarly, no enhancement for obstructing or impending the administration of justice is warranted here.  First, the application notes for § 2J1.2 explicitly say so.  For "offenses covered under this section, § 3C1.1 (Obstructing or Impeding the Administration of Justice) does not apply, unless the defendant obstructed the investigation, prosecution, or sentencing of the obstruction of justice count."  U.S.S.G. § 2J1.2 App. Note 2.  There was no obstruction of justice count in this case, so the plain meaning of the application note is that it is improper for the Court to add a § 3C1.1 enhancement.

Furthermore, across its sentencing memorandum and response, the government alleges, with varying degrees of specificity and factual basis, that Dr. Rogers perjured himself on topics including whether he was paid by SHUFE; whether Hummin Lee was a student or a professor; the nature of his classes with Hummin Lee; the last time he had sex with his wife; and whether he wanted to get his wife pregnant.  We have already explained that Dr. Rogers did not commit perjury and that the government has not proved such by a preponderance of the evidence.  *See* ECF No. 119 at 12-13; 21-23.  But even if Dr. Rogers had, none of the government's alleged lies would warrant an obstruction enhancement because the question under this Guideline is whether Dr. Rogers obstructed Count Two of the indictment, which he did not—in fact, he admitted on the stand that he had provided a restricted Federal Reserve document to his Fudan University co-author.  *See* 1/30/26 AM Trial Tr. 102:23-103:19.

13

d.  <u>Even Under 2J1.2, Dr. Rogers's Guidelines Range Calls for a Time-Served Sentence</u>

While there is no evidence that makes out the elements of obstruction of justice, even if the Court were to sentence Dr. Rogers under § 2J1.2, his advisory Sentencing Guideline range would mean that the appropriate sentence is time served.  Under § 2J1.2, Dr. Rogers's calculation would be as follows:

| | |
|---|---|
| **Base Offense Level (2J1.2):** | **14** |
| **Chapter Four Adjustment (4C1.1(a)(1)-(11)):** | **-2** |
| **Total Offense Level:** | **12** |

With Dr. Rogers's Criminal History Category of I, his Guidelines Range even under the improperly applied obstruction Guideline is 10-16 months—meaning that Dr. Rogers has already been detained for the number of months at the top of his advisory range.  We note that in addition to our previous arguments about the need to avoid an unwarranted, disparate sentence for Dr. Rogers, the defendant in *Nguyen*—a law enforcement officer whom Judge McFadden found to have engaged in bulk cash smuggling, lies to and obstruction of the federal agents investigating his potential crimes, and perjury during his trial testimony—received a sentence of 15 months, *see* Case No. 17-cr-238 (D.D.C. 2017), ECF No. 53, Sent. Hr'g. Tr. at 46:21-23, which is less than Dr. Rogers has already served.

**III.    Conclusion**

The proper Guideline under which to sentence Dr. Rogers is 2B1.1(a)(2), as the government, defense, and Probation Office have all agreed.  The § 2B1.1(c)(3) cross-reference is triggered only when the conduct set forth in the count of conviction establishes an offense specifically covered by another Guideline in Chapter Two—and that is not the case here.  The government has neither alleged nor proven, even by a preponderance, that Dr. Rogers committed an obstruction offense, and it would be unfair and improper to sentence him for one.  Even if

considering the defendant's relevant conduct under § 2J1.2, no enhancements are appropriate, either under that section or Chapter Three, and his advisory Guidelines range would still merit a sentence of time served.

Dr. Rogers's properly calculated advisory Guidelines range under 2B1.1(a)(2) is a sentence of 0-6 months. The only just and proportionate sentence, given that he has now been detained for 16 months, is time served.

March 29, 2026                                   Respectfully submitted,

*/s/ Stephen A. Saltzburg*
Stephen A. Saltzburg (D.C. Bar No. 156844)
2000 H Street, NW
Washington, DC 20052
Tel.: (202) 994-7089
Fax: (202) 994-9811
Email: sasaltz@law.gwu.edu

*/s/ Jonathan K. Gitlen*
Jonathan K. Gitlen (D.C. Bar No. 990918)
Law Office of Jonathan K. Gitlen PLLC
900 19th Street, NW, Suite 500
Washington, DC 20006
Tel.: (202) 568-5788
Fax: (202) 301-8556
Email: jonathan.gitlen@jgitlenlaw.com

*/s/ Molly Gaston*
Molly Gaston (*pro hac vice*)
Gaston & Cooney PLLC
1455 Pennsylvania Ave. NW, Suite 400
Washington, DC 20004
Tel: (202) 657-0012
Email: mollygaston@gastoncooney.com

*Counsel for Defendant*