**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| **v.** | : | **Case No. 25-cr-00033 (DLF)** |
| | : | |
| **JOHN HAROLD ROGERS** | : | |
| | : | |

**DEFENDANT'S MOTION IN RESPONSE TO COURT'S JUNE 19 MINUTE ORDER**

Pursuant to the Court's June 19, 2026 Minute Order, this supplemental briefing sets forth defendant John Rogers's factual objections to the final Presentence Investigation Report (PSR) and identifies relevant circuit and district court case law applying §1B1.3(c) of the Sentencing Guidelines on acquitted conduct. We place these matters within the context of the ongoing sentencing hearing, the various steps the Court must take in arriving at a final sentence, and our position on the pending issues before the Court.

I.      **Factual Errors in the PSR**

In this section, we address remaining factual errors in the PSR. As an initial matter, we note that the Probation Office did not address the defense's objection to Paragraph 7 or respond to our request for notice of the "information provided by the Government as evidence proven at trial." *See* ECF No. 117, Final PSR at ¶ 7. The defense continues to object to the PSR to the extent that it was drafted based on factual and/or argumentative submissions from the government that the defense did not have equal opportunity to make.

Paragraph 10: We object to the inaccurate claim that Dr. "Rogers knew that Mr. Lee and his university colleagues were associated with the Chinese government and wrote reports for the Chinese government using information provided by the defendant." Dr. Rogers did not know that Hummin Lee was associated with the Chinese government. As he explained at trial, he understood

that Hummin Lee's work was reviewed by the provincial government and that the Chinese government reviewed academic reports like Hummin Lee's in the way that the U.S. Government reviews academic work by the Brookings Institution and similar organizations. *See, e.g.*, 1/30/26 PM Trial Tr. 138:17-19; 166:7-11.  Dr. Rogers's lack of understanding that Hummin Lee was associated with the Chinese government is further underscored by the fact that in his efforts to comply with his post-employment restrictions on meeting with individuals associated with the Chinese government, he told Hummin Lee that he could not meet with a government official. 1/30/26 AM Trial Tr. 101:1-11  Overall, the government did not establish even by a preponderance of the evidence that Dr. Rogers knew that Hummin Lee was associated with the Chinese government.

Paragraph 11: We object to the inaccurate claim that Dr. Rogers's relationship with Hummin Lee involved sharing "restricted economic information and trade secrets" with Hummin Lee.   We take the documents cited in the PSR in turn:

- April 2018 DesiGov Book section: Dr. Rogers asked colleagues for documents that he could share with Chinese colleagues and students, and Dr. Rogers shared with Hummin Lee only an attachment that he received in return that did not carry an INTERNAL FR identifier.[1]

---

[1] In its oral ruling on Dr. Rogers's post-trial motions, the Court stated the following:

> The government presented ample evidence of the defendant sharing restricted Federal Reserve documents with both Hummin Lee and individuals at Fudan University, all of whom were in China and outside of the Board. Evidence at trial showed that the defendant e-mailed a DesiGov book section on China marked "internal FR" to Hummin Lee—*see* Government Exhibits 352, 352A—and an analysis on washing machine tariffs marked "internal FR," again to Hummin Lee. *See* Government Exhibits 353, 581, 581A. The defendant printed out sensitive materials in his office at the Federal Reserve before flying to China to meet with Hummin. *See* government's opposition 6 through 7, citing trial exhibits, Docket 103. And the defendant e-mailed restricted documents twice to individuals at Fudan

In Gov. Ex. 351, Dr. Rogers asked colleagues for "something that I can appropriately share" with Chinese academics interested in the Fed.  Colleague Anna Wong replied and attached two documents, including a "desigov note prepared for the nominated Fed governors on China" of which Dr. Wong said she thought "it should be ok to share the views in there."  The attachments to Dr. Wong's response were Gov. Ex. 351A, which bore an "Internal FR" identifier, and Gov. Ex. 351B, which did not contain an "Internal FR" identifier or any other restriction markings.  When Dr. Rogers then sent Hummin Lee an email that included part of what Dr. Wong had sent him, Dr. Rogers sent only the second attachment, which did not contain an internal FR identifier.  *See* Gov. Ex. 352, 352A.  In summary, the DesiGov section that Dr. Rogers sent to Hummin Lee was one that a Federal Reserve colleague had told him was "ok to share" and that was not a restricted Federal Reserve document.

---

University while he was in China asking them to save the attachments on a thumb drive or convert them to a PDF. *See* government's Exhibits 336, 412, 421.

6/18/26 Hrg. Tr. at 11:20-12:10.

The defense respectfully submits that the record indicates that this is mistaken as to three documents.  First, the DesiGov material that Dr. Rogers sent to Hummin Lee did not contain an "Internal FR" marking.  *See* Gov. Exs. 352, 352A.  Second, the same is true of the Washing Machine Tariff document that Dr. Rogers shared with Hummin Lee—it did not contain any restrictive labeling.  *See* Gov. Exs. 353A, 353B, 582.  Third, one of the two documents that Dr. Rogers shared with an individual at Fudan was the same Washing Machine Tariff document that did not bear any restrictive marking.  *See* Gov. Ex. 581.  Accordingly, the only restricted document that Dr. Rogers sent outside of the Federal Reserve was Gov. Ex. 336, which he admitted to sending to his Fudan co-author during trial.

These facts further support the defense's position that the jury could only have convicted Dr. Rogers of Count Two based on Dr. Rogers's email to his Fudan co-author—because it is the only document that proves that his "never" statement to the Federal Reserve OIG was false. Nonetheless, under the new acquitted conduct Guideline, regardless of what proof the jury considered in reaching its guilty verdict, Dr. Rogers's acquitted conduct cannot be considered in calculating his advisory Guidelines range.

3

- Washing Machine Tariff Analysis: Dr. Rogers asked a colleague for information that could be shared and when the colleague provided the Washing Machine Tariff Analysis and explained that it was publicly available material, he deferred to Dr. Rogers on its sensitivity.

  In Gov. Ex. 353, Dr. Rogers exchanged professional emails with a colleague, Aaron Flaaen, and Dr. Rogers asked Dr. Flaaen for "anything in writing that is allowed to be shared," to which Dr. Flaaen provided charts and a paper. Gov. Exs. 353A, 353B. Regarding them, Dr. Flaaen wrote, "All the material in what I've attached is from publicly available data. From that perspective, there are no constraints on sharing," and Dr. Flaaen then deferred to Dr. Rogers's professional judgment regarding sharing the documents. Gov. Ex. 353. The documents that Dr. Flaeen shared with Dr. Rogers did not contain markings or identifiers indicating that they were restricted. *See* Gov. Ex. 353A, 353B. And as government witness Joshua Gallin testified at trial, subject matter experts like Dr. Rogers could determine a sensitivity designation. *See* 1/22/26 Trial Tr. 53:13-22 ("If they are an expert and they feel comfortable . . . they can change it themselves"). Therefore, given Dr. Flaeen's message informing Dr. Rogers that the document was publicly available information and deferring to Dr. Rogers, the lack of Federal Reserve restrictive markings, and Dr. Rogers's academic expertise and leadership responsibilities over research conducted at the Federal Reserve, Dr. Rogers determined he could share the document with Hummin Lee.

- Otherwise, the PSR's assertions that Dr. Rogers "sent Mr. Lee . . . a November 2018 DesiGov Book with "Nonpublic Information" and "Do Not Disseminate" labels removed by the defendant, a June 2019 Class II FOMC pre-FOMC briefing script and

post-briefing notes, and a March 2019 Class II FOMC staff analysis of the European Central Bank announcement" are inaccurate and unsupported by the evidence. The government's theory at trial was that Dr. Rogers "orally" transmitted the information contained in these documents to Hummin Lee, not that he sent them, because there is no evidence that Dr. Rogers sent them.

Furthermore, the government failed to establish its theory of oral transmission even by a preponderance. Several factors make it just as likely as not that Dr. Rogers was printing and sending himself these documents for his own legitimate purposes. First, Dr. Rogers was continuing to do his work at the Federal Reserve while he was traveling back and forth to China and was required to review sensitive Federal Reserve documents in the course of his official responsibilities. Second, the restrictions on accessing Federal Reserve systems while in China prompted Dr. Rogers to print materials and send them to his personal email (an imprudent and regrettable violation of policy) in order to be able to access them in furtherance of his work and professional responsibilities. Third, throughout Dr. Rogers's communications with Hummin Lee, there are multiple instances of Dr. Rogers providing Hummin Lee with open source materials (*see, e.g.*, 1/28/26 AM Trial Tr. at 104:2-14) and informing Hummin Lee that he could not provide non-public documents (*see, e.g.*, 1/28/26 AM Trial Tr. at 71:5-7 (Rogers writing, "I will try to answer but of course cannot state any official Fed policies."). The fact that the only Federal Reserve documents that Dr. Rogers did send Hummin Lee were the April 2018 DesiGov book section and Washing Machine Tariff Analysis, which bore no markings and which Dr. Rogers was told or exercised his professional discretion to determine were not sensitive, strongly supports the equally

likely inference that Dr. Rogers was careful not to provide Hummin Lee with documents that he understood to be restricted.

- Finally, with respect to the document that Dr. Rogers sent to his Fudan co-author, Gov. Ex. 421, the PSR and government's claims that Dr. Rogers was removing or manipulating information for nefarious reasons is unavailing. A comparison of what Dr. Rogers sent to his Fudan co-author (Gov. Ex. 421) and the ECB Class II memo that he received internally at the Federal Reserve (Gov. Ex. 336) makes it just as likely that Dr. Rogers, knowing that the content that he had received internally was public, was attempting to remove what he, as a subject matter expert, considered sensitive before emailing it to himself and outside of the Federal Reserve. Indeed, this is what Dr. Rogers tried to explain during trial that he was doing: trying to use the factual details of the public announcement based on what was already in his inbox. *See* 1/30/26 AM Trial Tr. at 103:16-19.

Paragraph 12: We object to the PSR's inaccurate statement that Dr. Rogers received benefits "in exchange" for the preceding inaccurate description of Dr. Rogers's relationship with Hummin Lee. The government failed to prove even by a preponderance any quid pro quo exchange of Federal Reserve information for benefits, and the jury acquitted Dr. Rogers of a conspiratorial agreement with Hummin Lee.

Paragraphs 15-16: Dr. Rogers did not perjure himself at trial for the reasons set forth in ECF No. 119, Defendant's Response to the Government's Sentencing Memorandum at 12-13. That the government takes semantic issue with Dr. Rogers's answers does not make them lies. Furthermore, Dr. Rogers's contentions on these points were fully fleshed out for the jury—through both direct and cross-examination—and the jury credited Dr. Rogers and acquitted him of the

count to which they related.  The government's continued insistence that Dr. Rogers's truthful testimony was false ignores the jury's verdict and credibility determinations.

## II.    Application of the Guidelines

As the Court noted at the June 18 hearing, the first step in arriving at a sentence is to determine the correct sentencing guideline in Chapter Two.  Because the parties agree that §2B1.1 is the starting point for that determination, the next question is whether the cross-reference at §2B1.1(c)(3), for when "the conduct set forth in the count of conviction establishes an offense specifically covered by another guideline in Chapter Two," triggers application of §2J1.2.  USSG §2B1.1(c)(3).  In Dr. Rogers's case, it does not.

The history of the cross-reference supports the position that it does not apply in Dr. Rogers's case.  The Sentencing Commission adopted §2B1.1(c)(3) in 2001, when it consolidated the fraud and theft guidelines into §2B1.1.  Before that consolidation, §2F1.1 contained this application note:

> Sometimes, offenses involving fraudulent statements are prosecuted under 18 U.S.C. § 1001, or a similarly general statute, although the offense is also covered by a more specific statute . . .  Where the indictment or information setting forth the count of conviction (or a stipulation as described in §1B1.2(a)) establishes an offense more aptly covered by another guideline, apply that guideline rather than §2F1.1. Otherwise, in such cases, §2F1.1 is to be applied, but a departure from the guidelines may be considered.

USSG §2F1.1, App. Note 14 (2000).  The Commission explained in its Reasons for Amendment in 2001 that when it moved the application note to the cross-reference, it intended simply to reflect the general principle—contained in §1B1.2—that the proper Chapter Two guideline is to be determined by the offense of conviction:

> The amendment includes a new cross reference (subsection (c)(3)) that is more generally applicable and intended to apply whenever a broadly applicable fraud statute is used to reach conduct that is addressed more specifically in another Chapter Two guideline.  Prior to this amendment, the fraud guideline contained an

application note that instructed the user to move to another, more appropriate Chapter Two guideline, under specified circumstances. Although this note was not a cross reference, but rather a reminder of the principles enunciated in §1B1.2, it operated like a cross reference in the sense that it required use of a different guideline.

USSG, Appendix B, Amendment 617 (2025). The Commission intended the cross-reference to apply only when, using the principles set out in §1B1.2, "the offense conduct charged in the count of the indictment or information of which the defendant was convicted" establishes some other offense. In this case, the offense conduct charged in the Count Two of the indictment, the charge for which Dr. Rogers was convicted, simply does not make out the elements of obstruction of justice. We continue to believe that §2B1.1 is the proper Chapter Two guideline to apply in this case.

### III.    Relevant Conduct

In applying §2B1.1, its specific offense characteristics, and any Chapter Three adjustment, the Court must make its determination based on relevant conduct. That includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG §1B1.3(a)(1). Relevant conduct does not include conduct "for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction." USSG §1B1.3(c). These principles guide whether to apply any Guidelines enhancements, and in Dr. Rogers's case, make plain that the PSR and government's proposed enhancements do not apply. Below, we briefly address the new arguments that the government raised at the June 18 hearing on loss (and will further respond on July 2 to any additional loss arguments the government makes in the briefing

directed by the Court) and incorporate by reference our prior briefing regarding one Guideline enhancement that we did not address orally at the hearing.

        a.   Loss and Gain (§2B1.1(b)(1))

Regardless of any gain received by Dr. Rogers or anyone else, it is contrary to the Guidelines to consider gain in the absence of any loss. Section 2B1.1(b)(1) is clear that the "court shall use the gain that resulted from the offense as an alternative measure of loss *only if there is a loss but it reasonably cannot be determined*" (emphasis added).

In the presentence report, the Probation Department included no adjustment for loss or gain. *See* PSR at 23. After recognizing that some loss was necessary to consider gain, the government changed its position and suggested that there was loss based on investigative costs and the salary paid to Dr. Rogers during his employment at the Federal Reserve. But the Guidelines are again clear that "[l]oss shall not include . . . [c]osts to the government of . . . the prosecution and criminal investigation of an offense." USSG §2B1.1(b)(1), App. Note 3(C)(ii). It is furthermore contrary to Circuit caselaw to consider an employee's salary for loss purposes—even if the employee was on administrative leave. *See United States v. Guertin*, 67 F.4th 445, 451 (D.C. Cir. 2023) ("If an employee's untruths do not deprive the employer of the benefit of its bargain, the employer is not meaningfully defrauded of 'money or property' when it pays the employee his  . . . salary."); *United States v. Barrow*, 109 F.4th 521, 524-529 (D.C. Cir. 2024) (applying *Guertin* in case of a Treasury Inspector General for Tax Administration employee placed on paid administrative leave).

        b.   Abuse of Position of Trust (§3B1.3)

To the extent that we did not address at the June 18 hearing the PSR and government's arguments for an abuse of position of trust enhancement, we incorporate here the arguments in

ECF No. 123, Defendant's Response to Court's May 26, 2026 Minute Order at 12-13, in support of our position that that enhancement is not appropriate here.

### IV.    Acquitted Conduct and the §3553(a) Factors

In addition to the defense's previous arguments that using Dr. Rogers's acquitted conduct at the §3553(a) stage would violate his constitutional rights in a way that then-Judge Kavanaugh urged judges to avoid, *see United States v. Bell*, 808 F.3d 926, 928 (D.C. Cir. 2015), the defense here briefly addresses why the Court should not consider USSG §2J1.2 at the §3553(a) stage when sentencing Dr. Rogers.

First, the Sentencing Commission has adopted a policy that a false statement, not under oath, to law enforcement officers does not warrant an enhanced sentence. Application Note 5 of §3C1.1 (Obstructing or Impeding the Administration of Justice) includes a non-exhaustive list of examples of the types of potentially obstructive conduct the Commission has determined do not warrant a longer imprisonment sentence outside the otherwise applicable guideline range. That list includes a false statement to law enforcement that does not significantly obstruct or impede an official investigation. That is the essence of the one-word false statement, "never," at issue in this case. Moreover, Application Note 2 adopts the policy that a defendant's denial of guilt is not the basis for application of the obstruction adjustment. This is also what the false statement that Dr. Rogers was convicted of was. It simply does not warrant an enhanced sentence beyond the guideline range.

Second, the D.C. Circuit has recently explored what is obstruction of justice in a number of January 6th cases, citing in one case, for example, to Black's Law Dictionary definition of "obstructing the administration of justice" and "interfering with the administration of justice" as "[t]he skewing of the disposition of legal proceedings, as by fabricating or destroying evidence,

witness-tampering, or threatening or intimidating a judge[.]" *United States v. Brock*, 94 F.4th 39, 52 (D.C. Cir. 2024) (citing *Perverting the Course of Justice*, BLACK'S LAW DICTIONARY 1383 (11th ed. 2019)). The single-word false statement, "never," does not fit the definition of obstruction of justice, for it did not "skew" the disposition of any legal proceeding. To the extent that "never" might fit some definition of obstruction, it clearly is of less significance as other forms of obstruction—fabricating or destroying evidence, witness-tampering, or threatening or intimidating a judge—and does not warrant an upward variance.

Finally, for all of the reasons that the cross-reference to §2J1.2 does not apply—the government did not charge Dr. Rogers with obstruction and the evidence does not establish obstruction—it would cause an unwarranted disparity in Dr. Rogers's sentence to compare him to individuals sentenced to obstruction. Although the Court noted in the June 18 hearing that this is a unique case, it is not; individuals are routinely convicted and sentenced for making false statements, even about serious matters of national security. In this sense, the most analogous case that either party has cited is *United States v. Kokayi*, Case No. 21-cr-308 (D.D.C. Apr. 16, 2021), in which the defendant was sentenced for lying to the FBI about his association with ISIS. The government requested a two-year sentence for Kokayi because it claimed his conduct "materially impacted a counter-terrorism investigation" into ISIS. Dkt. No. 14 at 1-2. The Court sentenced Kokayi to probation. *See* 7/16/21 Minute Entry.

V.     **Cases Involving the New Acquitted Conduct Guideline**

As the defense mentioned at the June 18 hearing, to date, one court of appeals has opined on the new acquitted conduct Guideline in a way that is relevant here. In *United States v. Shafa*, 175 F.4th 1 (1st Cir. 2026), the First Circuit remanded to the district court to clarify the basis of its sentence and whether it had relied on acquitted conduct. In doing so, the Court noted and found

11

compelling the defendant's argument that "establishes" is used elsewhere in the Guidelines to mean satisfying the elements of the offense:

> As Shafa points out, courts have interpreted the Guidelines' use of the word "establish" in the context of another guideline that uses that word -- § 2B1.1(c)(3) -- to direct courts applying that guideline to ensure that the conduct in question satisfies the <u>elements</u> of that offense. <u>See, e.g., United States v. Griego</u>, 837 F.3d 520, 522 (5th Cir. 2016) (noting the cross-reference at issue, which used the word "establishes," is applicable "only if the facts alleged in the indictment establish the <u>elements</u> of another offense for which the other guideline is applicable" (emphasis added) (referencing U.S. Sent'g Guidelines Manual § 2B1.1(c)(3) (U.S. Sent'g Comm'n 2024) ("[T]he conduct set forth in the count of conviction establishes an offense specifically covered by another guideline in Chapter Two . . . ."))).  And, while in those cases courts were addressing an argument that the conduct at issue did not suffice to establish the elements of the offense, we do not see how they can be read to support the conclusion that the word "establishes" sweeps up conduct that would not prove any element of an offense and is merely conduct that is "relevant conduct" for purposes of § 1B1.3.

*Id*. at 29.  In addition, on April 9, 2026, the Second Circuit heard argument[2] in *United States v. Combs*, Case No. 25-2623 (Oct. 22, 2025, 2nd Cir.) but has not yet issued an opinion.  *Combs* concerns, among other questions, whether the district court erred in applying the new acquitted conduct Guideline.  *See* Brief for Defendant-Appellant, Dkt. No. 32.1 at 4.

Other cases that reference the new Guideline, but that do not apply it in a way that is on point for this case, include *United States v. Smith*, 2026 U.S. App. LEXIS 7099, *19 (D.C. Cir. 2026) (noting that "the Guidelines now generally prohibit the use of acquitted conduct in determining the Guidelines range"); *United States v. Texidor*, 164 F.4th 248, 255 (3rd Cir. 2026) (new Guideline does not prohibit consideration of acquitted conduct at the §3553(a) stage); *United States v. Ralston*, 110 F.4th 909, 921 (6th Cir. 2024) (same); *United States v. Ware*, 141 F.4th 970, 974 n.2 (8th Cir. 2025) (same); *United States v. Pharms*, 2026 U.S. App. LEXIS 3593, *11-12 (11th Cir. 2026) (same); *United States v. Schneider*, 2026 U.S. App. LEXIS 16904, *7-8 (8th Cir.

---

[2] Recording available at https://ww3.ca2.uscourts.gov/audio/25-2623.mp3.

2026) (district court's consideration of acquitted conduct in determining Guidelines range was error that affected defendant's substantial rights and required remand); *United States v. Scott*, 779 F. Supp. 3d 937, 942-943 (N.D. Ohio 2025) (where defendant convicted of conspiracy but acquitted of two substantive counts, Court determined that the "establishes" exception to the new Guideline applied); *United States v. Bongiovanni*, 2025 U.S. Dist. LEXIS 201296, *19 (W.D.N.Y. 2025) ("the jury clearly acquitted Bongiovanni of the specific conduct of conspiring to distribute more than 50 kilograms of marijuana, and this Court sees no reason to find that such conduct 'establishes, in whole or in part' the conspiracy to defraud on which Bongiovanni also was convicted"); *United States v. Och*, 2025 U.S. Dist. LEXIS 126924, *13 (D. Mass. 2025) (excluding the weight of drugs related to acquitted conduct in calculating Guidelines range); *United States v. Fordham*, 797 F.Supp.3d 746, 755 (E.D. Mich. 2024) (finding that acquitted conduct included drug quantities that the jury does not determine attributable to defendant, but that the "establishes" exception applied to other overlapping conduct ).

## VI. Conclusion

The defense continues to object to the factual errors in the PSR for the reasons set forth above, and the government has not proven them even by a preponderance of the evidence. The correct Guideline to apply to Dr. Rogers's offense of conviction is §2B1.1, without cross reference, and none of the PSR or government's enhancements are appropriate. Finally, although no Circuit or district court has opined on the new acquitted conduct Guideline in a way that is directly applicable here, the First Circuit in *Shafa*, 175 F.4th at 29, found compelling the defendant's argument that the "establishes" exception must mean something more than relevant.

June 25, 2026                          Respectfully submitted,

                                       */s/ Stephen A. Saltzburg*

13

14

Stephen A. Saltzburg (D.C. Bar No. 156844)
2000 H Street, NW
Washington, DC 20052
Tel.: (202) 994-7089
Fax: (202) 994-9811
Email: sasaltz@law.gwu.edu

*/s/ Jonathan K. Gitlen*
Jonathan K. Gitlen (D.C. Bar No. 990918)
Law Office of Jonathan K. Gitlen PLLC
900 19th Street, NW, Suite 500
Washington, DC 20006
Tel.: (202) 568-5788
Fax: (202) 301-8556
Email: jonathan.gitlen@jgitlenlaw.com

*/s/ Jonathan Wroblewski*
Jonathan J. Wroblewski (*pro hac vice*)
502 N. Hudson Street
Arlington, Virginia 22201
Tel: (703) 623-6824
Email: jwroblewski@law.harvard.edu

*/s/ Molly Gaston*
Molly Gaston (*pro hac vice)*
Gaston & Cooney PLLC
1455 Pennsylvania Ave. NW, Suite 400
Washington, DC 20004
Tel: (202) 657-0012
Email: mollygaston@gastoncooney.com

*Counsel for Defendant*