**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No.:  25-cr-00033 (DLF)** |
| **v.** | : | |
| | : | |
| **JOHN HAROLD ROGERS,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SUPPLEMENTAL SENTENCING BRIEF REGARDING
U.S.S.G. § 2B1.1(b)(1) (LOSS CALCULATION)**

In response to the Court's June 19, 2026 Minute Order requesting supplemental briefing on the amount of loss that resulted from the defendant John Rogers' offense, the Government respectfully submits the following supplemental facts and argument:

1.      As stated in the Government's earlier briefing, the defendant's false statement caused at least three types of actual pecuniary loss: (1) wasted resources spent by OIG to protect the Federal Reserve Board from foreign intelligence services' efforts to target the Federal Reserve; (2) resources and benefits that the Board provided to the defendant after February 4, 2020 which he would not have been given had he told the truth during the OIG interview; and (3) wasted resources spent by OIG to investigate the defendant's improper conduct that did not relate to his activities in China.  *See* Gov. Resp. to Def. Sentencing Memo., ECF No. 120, at 9–12.  As a result of the defendant's offense, the Board has taken numerous steps to protect itself and its employees from malicious activity from foreign governments that it likely would have taken earlier had the defendant told the truth during his February 2020 interview.  *See, e.g.*, Board OIG Evaluation Report, *The Board Can Strengthen Its Process to Monitor and Mitigate International Travel Risks* (June 15, 2026), *available* at https://oig.federalreserve.gov/reports/board-monitor-international-travel-jun2026.htm.   It is difficult, however, to determine with any level of certainty which of

those steps would have been taken earlier, and therefore saved the Board resources, had the defendant not made a material false statement during his February 2020 interview. The most easily discernable loss for the purpose of applying U.S.S.G. § 2B1.1(b)(1), therefore, is the second category described above—the resources and benefits that the Board paid to the defendant which he would not have received had he told the truth about sharing restricted Board information in the February 2020 OIG interview.

2.      The defendant committed his offense on February 4, 2020. For unrelated reasons, he was placed on paid administrative leave on March 15, 2021, and separated from the Board on April 30, 2021. Since leaving the Board in 2021, the defendant has received his pension from the Board, including a supplemental pension payment that the Board is now seeking to terminate and claw back as a result of learning the details of his offense from the trial.

3.      Between February 2020 and the defendant's retirement-in-lieu-of-termination on April 30, 2021, the Board paid the defendant the following approximate amounts:

| Description | Approximate Amount |
|---|---|
| 2020 Salary (post OIG interview) | $246,728 (total annual salary was $271,400) |
| 2020 Bonus (paid in 2021) | $50,674 |
| 2021 Salary | $68,525 |
| 2020 Employment Benefits (health care, pension contributions, etc.) | $66,000 (~27% of annual base salary) |
| 2021 Employment Benefits (health care, pension contributions, etc.) | $18,000 (~27% of annual base salary) |
| **Subtotal:** | **$449,927** |

4.      In addition to these salary and benefits payments, after the defendant left the Board in April 2021, he also received a supplemental pension benefit through 2025. The approximate annual amounts he received are:

| Supplemental Pension Benefit Year | Approximate Amount |
|---|---|
| 2021 | $6,000 |
| 2022 | $10,000 |
| 2023 | $10,000 |
| 2024 | $10,600 |
| 2025 | $10,600 |
| **Subtotal:** | **$47,200** |

5.      According to the Board, had the defendant been truthful to OIG in February 2020, the Board likely would have more quickly developed facts to support his termination from the Board.  It is difficult to determine with certainty how much quicker the Board would have developed the facts warranting the defendant's termination if the Board had known the truth in February 2020, but the Board's best estimate is that if it had known the truth about the defendant's sharing of restricted Board information with others outside the Board, the Board would have been able to terminate the defendant as much as a year earlier than it did.  It also would not have paid him a bonus of $50,674 in January 2021 for the year 2020 or his supplemental pension benefits between 2021 and 2025, which it is currently working to recover.

6.      Based on the Board's assessment, it is reasonable to conclude that had the defendant not committed his offense, the Board would have terminated him by April 30, 2020, would not have paid him a 2020 bonus, and would not have paid him five years of supplemental pension benefits.  These post-April 2020 expenses and payments, therefore, constitute the Board's loss for the purpose of calculating the Guidelines.

7.      Accordingly, the Board's loss that resulted from the defendant's offense constituted at least the following amounts:

| Description of Loss | Approximate Amount |
|---|---|
| 2020 Salary (May to December) | $180,933 |
| 2020 Bonus (paid in January 2021) | $50,674 |
| 2021 Salary (January to April) | $68,525 |
| 2020 Employment Benefits (health care, pension contributions, etc.) | $48,850 (~27% of 2020 salary amount ($180,933)) |
| 2021 Employment Benefits (health care, pension contributions, etc.) | $18,000 (~27% of 2021 salary amount ($68,525)) |
| Supplemental Pension Benefit (2021 to 2025) | $47,200 |
| **Total Loss Amount:** | **$414,182** |

8.      Courts have considered lost salary payments and other employment related payments when calculating the loss resulting from a defendant's offense under U.S.S.G. § 2B1.1(b)(1).  *See, e.g.*, *United States v. Tadios*, 822 F.3d 501, 503–04 (9th Cir. 2016) (considering salary loss for federal employee who submitted false time sheets even though she was salaried); *United States v. Burns*, 104 F.3d 529, 536 (2d Cir. 1997) (considering lost salary and other employment expenses).[1]

9.      The Guidelines instruct that any loss amount should be reduced by the fair market value of the services rendered by the defendant before the offense was detected.  *See* U.S.S.G. § 2B1.1(b)(1), Application Note 3(D)(i).  "The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the time the defendant knew or reasonably should have known that the offense was detected or about to be

---

[1] At the June 18, 2026 hearing, the defense cited the case *United States v. Guertin*, 67 F.4th 445 (D.C. Cir. 2023), for the proposition that a defendant's salary cannot be used to calculate loss under the Guidelines.  But *Guertin* is inapposite.  It did not concern the Guidelines or even sentencing, but rather whether a defendant's deceit to maintain his security clearance was a scheme to defraud under the wire fraud statute.  *Id.* at 450–51.  Moreover, *Guertin* was abrogated by the Supreme Court's decision in *Kousisis v. United States*, 605 U.S. 114 (2025).

detected by a victim or government agency." *Id.* Here, the Board did not detect the defendant's offense until after he left the Board in April 2021.

10.    Until the defendant was placed on paid administrative leave on March 15, 2021, he continued to work as a Senior Advisor in the International Finance Division of the Board. It is difficult, however, to determine what portion of his work between February 2020 and March 2021, if any, should be credited against the loss the Board suffered because had the defendant not committed the offense, he likely would have been terminated as early as April 2020. Because of this aspect of the defendant's offense, the Government believes that the reasonably calculated loss amount is the salary and benefits that he received between May 2020 and the present, which, as described above, totals approximately $414,182. Even if the Court credits the defendant's entire salary for the period May 2020 until April 2021 (which it should not), the loss that the defendant caused the Board is still approximately $164,724, which would increase his offense level by 10.

11.    Under the Guidelines, the Court need not calculate the loss with precision. "The court need only make a reasonable estimate of the loss." U.S.S.G. § 2B1.1(b)(1), Application Note 3(B). Based on the above, the reasonable estimate of the loss to the Board caused by the defendant's offense is approximately $414,182.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

  /s/ Adam P. Barry
Adam P. Barry
Cal. Bar No. 294449
Assistant United States Attorney
National Security Section
601 D Street, NW
Washington, D.C. 20530
Office: 202-252-7793

Email: adam.barry@usdoj.gov

JOHN A. EISENBERG
Assistant Attorney General
National Security Division

Nicholas O. Hunter
D.C. Bar No. 1022355
Yifei Zheng
N.Y. Bar No. 5424957
Trial Attorneys
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, D.C. 20530
Telephone: (202) 353-3434
E-mail: nicholas.hunter@usdoj.gov
yifei.zheng@usdoj.gov